LATHAM & WATKINS LLP
  Patrick E. Gibbs (Bar No. 183174)
  Ming M. Zhu (Bar No. 291364)
140 Scott Drive
Menlo Park, California 94025
Telephone: +1.650.463.2690
Facsimile: +1.650.463.2600
*patrick.gibbs@lw.com*
*ming.zhu@lw.com*

Attorneys for Defendants
Advanced Micro Devices, Inc.,
Rory P. Read, Thomas J. Seifert,
Richard A. Bergman, and Lisa T. Su

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BABAK HATAMIAN, et al., | CASE NO. 3:14-cv-00226-JD |
| Plaintiffs, | |
| v. | **DEFENDANTS' NOTICE OF MOTION, MOTION TO DISMISS, AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| ADVANCED MICRO DEVICES, INC., et al., | |
| Defendants. | **Date:** September 17, 2014<br>**Time:** 9:30 AM<br>**Place:** Courtroom 11, 19th Floor<br>**Judge:** Honorable James Donato |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
Master File No. 3:14-cv-00226-JD

# TABLE OF CONTENTS

                                                                                                                                    Page

NOTICE OF MOTION AND MOTION .................................................................................... 1

ISSUES TO BE DECIDED ........................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

I.     INTRODUCTION .......................................................................................................... 1

II.    BACKGROUND ............................................................................................................ 2

       A.     AMD And Its Llano Product................................................................................ 2

       B.     The Current Action .............................................................................................. 4

III.   ARGUMENT .................................................................................................................. 5

       A.     2Q11, 3Q11, and 4Q11 – Alleged Failure to Disclose "Yield
              Problems"............................................................................................................. 6

              1.     Forward Looking Statements................................................................... 7

                    a.     Plaintiffs Fail to Allege Falsity ..................................................... 7

                    b.     Safe Harbor ................................................................................... 8

              2.     Statements of Past or Existing Fact ......................................................... 9

                    a.     Plaintiffs Fail to Plead Falsity....................................................... 9

                    b.     Plaintiffs Fail to Plead Scienter................................................... 11

       B.     4Q11 and 1Q12 – Alleged Failure to Disclose Weak Channel
              Adoption ............................................................................................................ 11

              1.     Forward Looking Statements................................................................. 12

              2.     Statements of Past or Existing Fact ....................................................... 13

       C.     2Q12 – Alleged Failure to Disclose Inevitability of Write-Down....................... 14

IV.    CONCLUSION............................................................................................................. 15

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

ii

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
Master File No. 3:14-cv-00226-JD

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alaska Elec. Pens. Fund v. Adecco S.A.*,
   434 F. Supp. 2d 815 (S.D. Cal. 2006) ................................................................................. 14

*Anderson v. Peregrine Pharm., Inc.*,
   2013 WL 4780059 (C.D. Cal. Aug. 23, 2013) ..................................................................... 11

*Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*,
   353 F.3d 1125 (9th Cir. 2004) .............................................................................................. 6

*Glazer Capital Mgmt., LP v. Magistri*,
   549 F.3d 736 (9th Cir. 2008) ......................................................................................... 11, 14

*Glen Holly Ent. Inc. v. Tektronix Inc.*,
   352 F.3d 367 (9th Cir. 2003) ................................................................................................. 9

*In re Am. Apparel, Inc. S'holder Litig.*,
   855 F. Supp. 2d 1043 (C.D. Cal. 2012) ................................................................................. 9

*In re Cisco Sys., Inc. Sec. Litig.*,
   No. C-11-1568, 2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) ............................................. 6

*In re Cooper Mountain Sec. Litig.*,
   311 F. Supp. 2d 857 (N.D. Cal. 2004) ................................................................................... 6

*In re Cutera Sec. Litig.*,
   610 F.3d 1103 (9th Cir. 2010) ........................................................................................passim

*In re Gilat Satellite Networks, Ltd.*,
   2005 U.S. Dist. LEXIS 41996 (E.D.N.Y. Sept. 19, 2005) ..................................................... 6

*In re Impac Mortg. Holdings, Inc.*,
   554 F. Supp. 2d 1083 (C.D. Cal. 2008) ..................................................................... 9, 13, 14

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) .................................................................................. 6, 7, 12, 14

*In re Rigel Pharm., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) .............................................................................................. 5, 6

*In re Verifone Sec. Litig.*,
   11 F.3d 865 (9th Cir. 1993) ............................................................................................. 7, 10

*Kovtun v. VIVUS, Inc.*,
   2012 WL 4477647 (N.D. Cal. Sept. 27, 2012) ...................................................................... 8

*Matrixx Initiatives, Inc. v. Siracusano*,
   131 S.Ct. 1309 (2011) ........................................................................................................... 5

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ........................................................................................ 5, 11

*Rubke v. Capitol Bancorp Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ............................................................................................... 6

*Steckman v. Hart Brewing*,
   143 F.3d 1293 (9th Cir. 1998) ............................................................................................... 7

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ............................................................................................... 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
Master File No. 3:14-cv-00226-JD

**STATUTES**

15 U.S.C. § 77z–2(c)(1)(A)(i) .................................................................................................... 6
15 U.S.C. § 78u–4(b)(1) ............................................................................................................ 5
15 U.S.C. § 78u–4(b)(2)(A) ....................................................................................................... 5
15 U.S.C. § 78u-5(c)(1)(A) ........................................................................................................ 6

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................................................... 5

**REGULATIONS**

17 C.F.R. § 229.303(a)(3)(ii) ..................................................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
Master File No. 3:14-cv-00226-JD

# NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on September 17, 2014, at 9:30 a.m., in the Courtroom of the Honorable James Donato, at 450 Golden Gate Avenue, San Francisco, CA, 19th Floor, Defendants will, and hereby do, move this Court for an order dismissing the Corrected Amended Class Action Complaint ("CAC" or "Complaint") with prejudice under Fed. R. Civ. P. 12(b)(6). This motion is based upon this Notice of Motion and Motion and Memorandum of Points and Authorities, the Request For Judicial Notice, the Declaration of Ming M. Zhu, and any further material as may be submitted to the Court.

## ISSUE TO BE DECIDED

Whether the Complaint states a claim for relief under Section 10(b) and Section 20(a) of the Securities Exchange Act, and Rule 10b-5 promulgated thereunder.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

This case arises out of AMD's launch of its revolutionary Llano microprocessor, which combined a central processing unit ("CPU") and a graphics processing unit ("GPU") on a single chip. When AMD launched Llano in the summer of 2011, demand was high. Indeed, in the third quarter of 2011 (3Q11), demand exceeded AMD's supply, and AMD missed its guidance. The supply problem was solved in 4Q11, and Llano sales grew in both 4Q11 and 1Q12. In 2Q12, however, AMD again missed its guidance, which AMD attributed to several factors, including a global slowdown in PC demand. In 3Q12, AMD again missed guidance and wrote off a large inventory of Llano chips. Plaintiffs claim this was all a scheme to defraud investors. According to Plaintiffs, AMD knew but failed to disclose that its manufacturing partner, GlobalFoundries ("GF"), was unable to generate an acceptable "yield" of Llano chips in 2011, and this, in turn, caused AMD to prioritize shipments to its original equipment manufacturer ("OEM") customers over its channel customers. Plaintiffs claim this supply allocation led to a decrease in channel demand for Llano, which in turn led to the 2Q12 miss and the 3Q12 inventory write off.

Plaintiffs' claims are nothing more than improper "fraud-by-hindsight." Plaintiffs rely

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
Master File No. 3:14-cv-00226-JD

heavily on forward-looking statements that are immune from liability both because they were accompanied by meaningful cautionary language, and because Plaintiffs allege no facts showing "actual knowledge" of falsity. Plaintiffs also rely on inactionable statements of "corporate optimism" or "puffery." As to the few remaining present tense statements of fact, Plaintiffs' claims are based on vague allegations of manufacturing problems and disappointing channel demand, but Plaintiffs do not allege specific facts showing that any such statements were false or misleading when made, much less that defendants acted with scienter. The CAC should be dismissed.

## II.   BACKGROUND

### A.   AMD And Its Llano Product

AMD designs and sells microprocessors for use in computers and mobile devices. CAC ¶ 2. AMD sells its products through direct sales to OEMs and through independent distributors, called the "channel." CAC ¶ 50. Because AMD relies on third-party foundries, like GF, to manufacture its products, CAC ¶¶ 48-49, AMD has warned investors that it has limited control over many aspects of the manufacturing process, including delivery schedules and quality assurance, lack of capacity in periods of excess demand, and the ability to manage inventory and parts. Ex. 1 at 19.[1]

The manufacturing process begins with a silicon wafer, which is eventually cut into hundreds or thousands of individual "chips." CAC ¶¶ 116-18. Two key production metrics in the manufacturing process are wafer capacity, which refers to the number of usable wafers produced within a given time period (Ex. 9 at 12), and chip yield, which refers to the percentage of usable chips on each wafer. CAC ¶¶ 47; 115. Both variables impact chip supply: a high wafer capacity coupled with a low yield could result in the same chip supply as a lower wafer capacity with a higher yield. The fabrication process can take several months and is highly susceptible to errors. CAC ¶¶ 116-18. The likelihood of errors is compounded during transitions to new "process technologies." CAC ¶ 76; Ex. 1 at 20. The term "process technology" refers to a critical

---

[1] All citations to exhibits (cited herein as "Ex.") refer to exhibits attached to the accompanying Declaration of Ming M. Zhu filed contemporaneously herewith.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

2

DEFENDANTS' NOTICE OF MOTION, MOTION TO
DISMISS, AND SUPPORTING MEMORANDUM
Master File No. 3:14-cv-00226-JD

dimension of the manufacturing process that is measured in nanometers ("nm"). Each change in process technology—such as from 45nm to 32nm—is a significant transition. CAC ¶ 76.

In 2011, AMD introduced a revolutionary Accelerated Processing Unit or APU, which combined CPUs and GPUs on a single chip. AMD launched its first APU product, Brazos, a low-end 40nm product, in January of 2011 to overwhelming customer response. Ex. 10 at 3; Ex. 11 at 3; Ex. 12 at 5-6, 12. AMD's next APU product, Llano, a high-end 32nm product, was originally scheduled for launch in the fourth quarter of 2010. CAC ¶ 76. Due to GF's difficulties in transitioning to a 32nm process technology, the Llano launch was delayed to the second quarter of 2011. CAC ¶¶ 9, 76, 78. Once Llano was launched, AMD cautioned investors that further manufacturing problems could arise, and could hamper AMD's business. CAC ¶ 76; Ex. 5 at 39; Ex. 1 at 20.

In the second quarter of 2011, AMD saw strong demand for Llano chips, shipping more than 1 million units. Ex. 10 at 3. On the heels of this strong quarter, AMD projected strong growth in the third quarter. Ex. 13 at 3. AMD was right about continued demand: in 3Q11, demand was strong, but due to a shortage of Llano supply from GF, AMD missed its 3Q11 guidance. CAC ¶ 199. In 4Q11, GF resolved the manufacturing issues, and Llano shipments increased by over 80%. CAC ¶¶ 103, 124, 140. Demand for Llano remained strong in early 2012, and in 1Q12, AMD exceeded its guidance, due in part to unexpectedly high demand for Llano from the channel. Ex. 14 at 4. Following this strong showing, AMD projected continued growth in Llano sales for 2Q12. *Id.* at 5. However, on July 9, 2012, AMD announced that it would miss its 2Q12 guidance, citing "business conditions that materialized late in the second quarter, specifically softer than expected channel sales in China and Europe, and a weaker consumer buying environment impacting the Company's OEM business." CAC ¶ 255; Ex. 19.

During an analyst call to discuss the 2Q12 results, CEO Rory Read attributed the miss to "two key factors – first, weak sales of desktop processors in the channel, primarily in China and Europe; and secondly, a soft consumer PC market that impacted OEM notebook processor sales." Ex. 15 at 3. Read stated that the lower-than-expected channel demand was caused, in part, by a "misalignment" between Llano supply and motherboard availability. *Id.* He noted that when

Llano supply was constrained in 3Q11, AMD had been forced to prioritize shipments to its OEM customers over its channel customers. CAC ¶ 264. Later, when Llano shipments to the channel increased, there was a mismatch between the number of available Llano chips and the number of Llano-compatible motherboards. *Id.*; *see also* Ex. 15 at 14.[2] On October 11, 2012, AMD announced a $100 million inventory write-down, mainly for Llano chips, and a guidance miss for 3Q12. CAC ¶ 273. AMD later explained that "[b]roader macroeconomic issues [we]re impacting consumer PC spend[ing]," such that OEMs were now "taking a cautious approach to managing inventory." Ex. 17 at 3.

### B. The Current Action

Plaintiffs claim that AMD misled investors during three time periods: First, Plaintiffs claim that, after the Llano launch, AMD failed to disclose that "yield problems" at GF would cause AMD to "prioritize[] shipments of Llano to its top tier OEM customers, leaving virtually no Llano product for its important channel customers," and that "the low yield would mean less units for sale," thus precluding any "margin upside . . . due to Llano." CAC ¶¶ 78, 170, 185. Second, Plaintiffs claim that, after the 3Q11 earnings miss, AMD failed to disclose that "AMD's failure to meet their channel demand was continuing to cause weak channel adoption and negatively impacting demand of Llano," which "would negatively and materially affect AMD's margins moving forward," CAC ¶¶ 222, 252. Third, Plaintiffs claim that, after the 2Q12 earnings miss, AMD failed to disclose that "the [demand] problem was not fixable," and that "the channel's failure to adopt Llano[] would continue to adversely affect the Llano inventory and gross margin as a result, ultimately requiring AMD to write-down its entire inventory of Llano." CAC ¶ 21, 272. Plaintiffs claim the market learned the "truth" about all of this when AMD announced that it missed guidance for 3Q11, 2Q12, and 3Q12, and when AMD announced the write-off of Llano inventory at the end of 3Q12. CAC ¶¶ 199, 255, 262-266, 273, 275-78.

Plaintiffs' claims are based largely on information attributed to several "confidential

---

[2] Read elaborated on the "misalignment" problem during a Citi Technology Conference Analyst call on September 4, 2012. CAC ¶ 144 & n.7. He explained that during the delay in volume shipments, AMD's channel partners shifted production to non-Llano motherboards, so the channel's supply of Llano-compatible motherboards did not match the "huge influx of parts" available once yield problems were resolved. Ex. 16 at 4.

witnesses." CAC ¶¶ 92-133. None of the CWs is alleged to have any personal knowledge of specific information that was made available to any of AMD's senior management at any point in time, and none of the information attributed to the CWs suggests that any of AMD's public statements were false or misleading.[3] The seven CWs who allegedly worked for either AMD or GF assert vaguely that GF experienced "problems" with "yield" for Llano during 2011, and that AMD and GF devoted substantial resources to improving the yield. But none of these CWs identifies any specific information, known to any of AMD's executives at the time, that was inconsistent with any of the challenged statements. The two remaining CWs, CW9 and an unidentified "industry expert," never worked for AMD or GF, and are not alleged to have any information about what was going on at AMD during the proposed Class Period, much less what AMD's senior management knew, or when they knew it. CAC ¶¶ 107, 111-33.

### III. ARGUMENT

Plaintiffs in private securities fraud actions face particularly "formidable pleading requirements." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1054-55 (9th Cir. 2008). The complaint must satisfy the heightened pleading requirements of both Federal Rule of Civil Procedure 9(b) and the PSLRA. *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012). This means that, for each alleged misstatement or omission, the complaint must allege, with particularity, "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1318 n. 4 (2011). The complaint also must allege, with particularity, facts giving rise to a "strong inference" of scienter. *In re Rigel,* 697 F.3d at 877 (quoting 15 U.S.C. § 78u–4(b)(2)(A)).

This pleading burden is even higher for forward-looking statements: To plead falsity, the complaint must allege that the speaker (1) did not believe the statement; (2) did not have a

---

[3] Plaintiffs' Amended Complaint previously included allegations from a CW1, who allegedly had information about what AMD's senior executives knew. *See* Stipulation and [Proposed[ Order Regarding Lead Plaintiffs' Filing A Corrected Amended Class Action Complaint, Ex. A, p. 28, 31-32, 34. But Plaintiffs have withdrawn those allegations. *Id.* CW7, the only remaining CW who allegedly referred to one or more individual defendants, has disavowed the statements attributed to him, and AMD has moved to strike those allegations. *See* Defendants' Motion to Strike, at pp. 7-8. Whether stricken or not, Plaintiffs' allegations regarding CW7 do not identify any specific information known to any of AMD's senior management at any particular point in time. CAC ¶¶ 102, 109.

reasonable basis for the statement, or (3) was aware of facts "tending seriously to undermine the statement's accuracy." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 388 (9th Cir. 2010). A forward-looking statement is immune from liability if either (a) it was accompanied by meaningful cautionary language,[4] or (b) plaintiffs have failed to allege that defendants had "actual knowledge" that it was false or misleading. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010); 15 U.S.C. § 78u-5(c)(1)(A).[5]

The CAC fails all of these tests because it amounts to improper "puzzle pleading": Plaintiffs simply block-quote lengthy passages from AMD's public statements, and then allege a series of contrary facts, leaving the Court to guess which pieces of the quoted statements are being challenged, and which reasons correspond to which statements.[6] Courts have held repeatedly that such "puzzle pleading" requires dismissal. *See In re Cisco Sys., Inc. Sec. Litig.*, No. C-11-1568, 2013 WL 1402788, at *5 (N.D. Cal. Mar. 29, 2013). But even setting that issue aside, the CAC should be dismissed for failure to meet the relevant pleading standards.[7]

### A.  2Q11, 3Q11, and 4Q11 – Alleged Failure to Disclose "Yield Problems"

Plaintiffs claim that a series of statements made after Llano was launched were false or misleading because AMD was experiencing significant yield problems, such that Llano was not

---

[4] "Meaningful cautionary language" means "factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 77z–2(c)(1)(A)(i). The warning need only mention 'important' factors of similar significance to those actually realized," *In re Cooper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 882 (N.D. Cal. 2004), and need not directly accompany the alleged misstatement, *Emp. Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1133 (9th Cir. 2004). The Court must consider "whether *any* cautionary language provided by the defendants *at any time* sufficiently warned of the risk of which plaintiffs complain." *In re Gilat Satellite Networks, Ltd.*, 2005 U.S. Dist. LEXIS 41996, at *39 (E.D.N.Y. Sept. 19, 2005) (emphasis added) (quotation omitted).

[5] Certain of the alleged misstatements are statements of opinion. *See* Appendix 1; CAC ¶¶ 168, 183, 195, 210, 211. These statements do not support a claim absent allegations that the statements were "both objectively and subjectively false or misleading." *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009). Here, Plaintiffs have alleged neither objective nor subjective falsity as to these statements.

[6] In fact, several alleged "misstatements" are supported by the facts as pled in the CAC. *See* Appendix 1; CAC ¶¶ 177, 192, 236, 245.

[7] Plaintiffs' failure to state a claim under Section 10(b) means their Section 20(a) claim also fails. *Rigel*, 697 F.3d at 886.

being shipped to the channel until December of 2011. But Plaintiffs have failed to state a claim for relief with respect to any of these statements.

### 1. Forward Looking Statements

Many of these statements were forward-looking.[8] But Plaintiffs have alleged no facts suggesting that the speakers did not believe the statements; lacked a reasonable basis for the statements; or were aware of facts tending seriously to undermine the statements. *Oracle*, 627 F.3d at 388. Furthermore, these statements are immune under the Safe Harbor because they were accompanied by "meaningful cautionary language" and because Plaintiffs fail to plead that they were made with "actual knowledge" that they were false. *Cutera*, 610 F.3d at 1112.

#### a. Plaintiffs Fail to Allege Falsity

Plaintiffs claim that AMD's guidance for 3Q11 was false or misleading (CAC ¶ 172) because AMD was aware of yield problems with Llano. CAC ¶ 175. But Plaintiffs do not explain why the yield issue would have undermined AMD's guidance. A poor yield, by itself, does not necessarily mean a supply constraint, as an increase in wafer capacity could offset the low yield. Indeed, Plaintiffs claim the yield problems persisted throughout 2011 (CAC ¶ 92), but do not allege any supply constraints in either 2Q11 or 4Q11. Moreover, Plaintiffs do not allege facts showing *when* AMD realized that its 3Q11 supply would not meet demand. Without showing that AMD knew its 3Q11 guidance was false when made, Plaintiffs fail to plead falsity.[9]

A similar analysis applies to statements projecting increased Llano shipments, supply, demand, and market share in the second half of 2011. *See* CAC ¶¶ 155, 162-63, 174, 177-83, 195, 199, 208-09, 211-12. Although Plaintiffs claim these statements were false or misleading in

---

[8] *See* Appendix 1; CAC ¶¶ 162-63, 165, 168, 170, 172, 174-75, 177-83, 185, 195-96, 208-09, 211-13. Many of these statements are also inactionable "puffery." *See, infra*, Section III.A.2.

[9] Plaintiffs also claim that Defendants failed to disclose information as required under Item 303 of Regulation S-K, *see* CAC ¶¶ 191, 220, 235, 254. But Item 303 is triggered only where the defendant knows of an adverse trend, its material impact, and that the future material impact is reasonably likely to occur. 17 C.F.R. § 229.303(a)(3)(ii); *Steckman v. Hart Brewing*, 143 F.3d 1293, 1296-98 (9th Cir.1998). Here, Plaintiffs have alleged no facts indicating that AMD had specific and concrete information contradicting its optimistic or positive statements, much less that AMD knew any future adverse impact was "reasonably likely to occur." *In re Verifone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993). Since information not required to be disclosed under Item 303 cannot constitute a violation of Section 10(b), *Steckman*, 143 F.3d at 1298, Plaintiffs' corresponding 10(b) claims also fail. CAC ¶¶ 188-90, 217-19, 231-34, 250-53.

light of "yield problems," Plaintiffs allege no specific facts about what the yield was when these statements were made, and Plaintiffs allege no facts suggesting that the yield issues at the time made it impossible for AMD to increase supply and shipments in future periods. Although AMD missed its 3Q11 guidance, AMD still saw large sales increase in both 4Q11 and 1Q12. CAC ¶¶ 140, 245. Simply put, the fact that AMD missed its 3Q11 guidance does not mean that all of AMD's projections for increased Llano shipments, supply, demand, and market share in the second half of 2011 were false or misleading when made.

### b.  Safe Harbor

These statements are also immune under the Safe Harbor because AMD disclosed the very risks that resulted in AMD missing guidance. AMD warned investors that production at GF was particularly unpredictable "[d]uring periods when foundries are implementing new process technologies" (as it was doing with the Llano launch), Ex. 3 at 15; Ex. 2 at 39-40, and that "[i]f GF continue[d] to experience delays or difficulties transitioning to 32nm . . . , [AMD's] business would be materially adversely affected," Ex. 1 at 20. It added that any associated "manufacturing inefficiencies" could result in AMD "fail[ing] to achieve acceptable yields," and that such "decrease[s] in manufacturing yields could . . . force [AMD] to allocate our reduced product supply amongst our customers, which could harm our relationships with our customers and reputation and materially adversely affect our business." *Id.* This cautionary language warned of precisely the risks that Plaintiffs claim materialized, placing the challenged statements squarely in the Safe Harbor. *Cutera*, 610 F.3d at 1112; *see also Kovtun v. VIVUS, Inc.*, 2012 WL 4477647, at *12 (N.D. Cal. Sept. 27, 2012).

Moreover, Plaintiffs have alleged no facts suggesting that any individual defendant had "actual knowledge" that any of these statements were false. There are no allegations, for example, that any Defendant received a copy of any report containing any specific information, or that any Defendant attended any particular meeting in which a specific piece of information was discussed. Instead, Plaintiffs' allegations do little more than suggest that the individual defendants were responsible or active managers, which is nowhere near enough to show "actual knowledge." *See also supra* Section III.A.2.b; *In re Am. Apparel, Inc. S'holder Litig.*, 855 F.

Supp. 2d 1043, 1078-79 (C.D. Cal. 2012) (collecting Ninth Circuit cases on inadequacy of such allegations to plead scienter under PSLRA).

### 2. Statements of Past or Existing Fact

Plaintiffs attack a number of statements that are not forward looking. Many of these are "vague, generalized assertions of corporate optimism or statements of 'mere puffing.'"[10] *In re Impac Mortg. Holdings, Inc.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) (citing *Glen Holly Ent. Inc. v. Tektronix Inc*., 352 F.3d 367, 379 (9th Cir. 2003)). These statements, which are not "capable of objective verification," are immaterial as a matter of law. *Impac,* 352 F.3d at 1096. To the extent that Plaintiffs challenge any present tense statements of fact (as opposed to puffery), Plaintiffs have failed to allege falsity or scienter.

#### a. Plaintiffs Fail to Plead Falsity

Plaintiffs claim that, during 2Q11, AMD misled the market into believing that AMD had "overcome" its "yield problem."[11] But AMD did not say it had overcome its "yield problem." Rather, AMD said that Llano yield was "on target" and "in line with our expectations" (and "on expectations"), such that AMD was able to begin shipping Llano "for revenue." CAC ¶ 154-55. Plaintiffs allege no contrary facts. They do not deny that AMD was shipping Llano "for revenue," and while the CAC claims that GF still had yield "problems," Plaintiffs do not say what AMD's yield expectations were, and so have alleged no facts undercutting statements that "yield" was "on target" or "in line with" AMD's expectations.[12]

Nor do Plaintiffs allege any facts undermining AMD's May 17, 2011 statements that AMD was not having any problems with "wafer supply" and that there were "no signs today that we are going to be constrained from a pure wafer capacity point of view at this point in time." CAC ¶ 168. Plaintiffs have alleged no facts suggesting that "wafer capacity" for Llano was

---

[10] *See* Appendix 1; CAC ¶¶ 162, 165, 168, 170, 173-75, 177-78, 184-85, 192-93, 195-98, 205-07, 210-11, 213, 221-22; 229-30, 245, 247-49.

[11] *See* Appendix 1; CAC ¶¶ 154-56, 168, 170.

[12] For a similar reason, Plaintiffs have failed to allege facts contradicting statements that AMD was not "currently expecting any . . . lower than [] anticipated yield scenario[s] ." CAC ¶ 155-56. Plaintiffs do not say what AMD's "anticipated yield scenario" was, and Plaintiffs' general allegations about a low yield do not render this statement false. *See also* CAC ¶¶ 183-85.

constrained at any time, much less as of May 17, 2011; Plaintiffs' allegations about chip yield are irrelevant to the question of whether AMD had adequate wafer supply.[13]

Plaintiffs claim that, because AMD did not ship Llano to the channel until December 2011, statements concerning (1) AMD's initiation of Llano shipments, CAC ¶¶ 154, 156, 158-62, 165, 167-70, 188, 190, 192-93; (2) the volume of Llano shipments or "success" of the launch, CAC ¶¶ 158-59, 161, 173, 175, 197-98; and (3) the positive impact of Llano shipments on margins, revenues, average selling prices, and pricing mix, CAC ¶¶ 169-70, 173, 175, 204, 206, 209, 213, were all misleading. But there are several problems with this claim. To begin, Plaintiffs allege no facts supporting their conclusion that the channel did not receive *any* Llano shipments until December 2011. Plaintiffs base this on a statement made by CEO Rory Read. CAC ¶ 144, n.7. But Read did not say that the channel received no shipments of Llano until December of 2011. In fact, Read made clear that Llano was "introduced" into the channel in the summer of 2011, but noted that when supply was constrained, AMD prioritized shipments to OEMs, and this meant that the channel did not get any "real" shipments until December. Ex. 16 at 4.

In any event, Plaintiffs do not say when AMD realized that Llano supply was constrained (that is, when AMD realized that demand was outstripping supply), nor do they say when AMD decided to prioritize OEM shipments over shipments to the channel. Without explaining when those alleged "facts" existed, Plaintiffs cannot allege, with particularity, that these "facts" made any statement by AMD false or misleading **when made**. *See In re VeriFone Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993). And in any event, the alleged "fact" that AMD prioritized OEM shipments over channel shipments is not inconsistent with any of the challenged statements. For example, statements reporting large volumes of shipments referred to *all* APU products, which includes both Brazos and Llano (CAC ¶¶ 158-59, 195, 197), or to all Llano products, which would include both OEM and channel shipments (CAC ¶ 173). Similarly, statements about the positive margin impacts of Llano sales were not rendered misleading by the alleged "fact" that

---

[13] Plaintiffs also challenge statements regarding the April 2011 Wafer Supply Agreement ("WSA") as being entered into for "downside protection," and to obtain "forecastable" costs. CAC ¶¶ 155-56, 168, 170. But these statements are also not inconsistent with any alleged facts.

AMD was prioritizing OEM shipments: because it was a high margin product, any sales of Llano (to OEMs or to the channel) would have had a positive impact on margins.[14]

### b. Plaintiffs Fail to Plead Scienter

Even setting aside Plaintiffs' failure to plead falsity, the CAC alleges no particularized facts supporting the required "strong inference" of scienter.[15] In the Ninth Circuit, pleading scienter requires "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Metzler*, 540 F.3d at 1066 (quotation omitted). Plaintiffs' allegations here do not come close to meeting this standard. In fact, the CAC alleges only that Llano was an important product launch, and asserts that the individual defendants "must have known" their statements were false given their managerial positions. But neither is sufficient to plead scienter. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001 (9th Cir. 2009); *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 746 (9th Cir. 2008). In the absence of any specific facts supporting an inference of fraudulent intent, the more cogent and compelling inference "is that Defendants' conduct was the result of honest optimism followed by disappointment[.]" *Anderson v. Peregrine Pharm., Inc.*, 2013 WL 4780059, at *14 (C.D. Cal. Aug. 23, 2013).

### B. 4Q11 and 1Q12 – Alleged Failure to Disclose Weak Channel Adoption

Plaintiffs next allege that, after the yield problems were resolved in 4Q11, AMD misled investors by failing to disclose that the delay in shipping to the channel was causing "weak channel adoption and negatively impacting demand of Llano," which then had a negative and

---

[14] The CAC also alleges that certain statements referencing high demand levels in 2011, *see, e.g.*, CAC ¶¶ 164-65, 188, 190, 199, 202, 204-06, 211, 213, 217, 219, 221-22, 224, 226, were false or misleading because they failed to disclose that supply limitations through 4Q11 would prevent AMD from capturing the high demand from the channel, and "led the market to believe that Llano was shipping to all of its customers, including the channel." *See, e.g.*, CAC ¶ 190. But the referenced statements very clearly reference only high levels of *demand* for Llano. In any event, Plaintiffs allege no specific facts showing how yield "problems" necessarily meant that AMD would not be able to capture demand from the channel. And as to statements that AMD was meeting customer demand by the middle of 4Q11, CAC ¶ 221, the CAC alleges no contrary facts.

[15] The CAC's failure to raise a strong inference of scienter as to any individual defendant precludes any such inference as to AMD, as the Ninth Circuit requires any finding of corporate scienter to arise from "the awareness of the directors and officers." *Glazer Capital Mgmt. v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008).

material adverse impact on AMD's margins. *See* CAC ¶¶ 222, 252. Again, however, none of these statements give rise to liability for a claim under Section 10(b).

### 1. Forward Looking Statements

Several of these statements are forward-looking.[16] As to those, Plaintiffs have failed to allege falsity, and in any event, the statements are all immune under the Safe Harbor. *Oracle*, 627 F.3d at 388; *Cutera*, 610 F.3d at 1112.

Plaintiffs claim that statements regarding future demand for Llano were false or misleading because AMD knew the supply constraints in 3Q11 would lead to depressed channel demand. But Plaintiffs' theory is undermined by their own allegations: in 4Q11, after AMD had prioritized shipments to OEMs, AMD shipped massive amounts of Llano chips to the channel. In 1Q12, AMD actually exceeded its guidance because of an unexpected increase in channel demand. Ex. 14 at 4. Plaintiffs allege no facts suggesting that AMD's allocation of Llano products in 3Q11 necessarily meant that channel demand in future quarters would be weak. At bottom, this claim is based entirely on AMD's explanation for the 2Q12 miss, made with the benefit of hindsight, to the effect that the lack of volume shipments to the channel in 3Q11 had resulted in a "misalignment." CAC ¶ 264. Plaintiffs allege no facts showing that, when the challenged statements were made, AMD was aware that this "misalignment" had occurred or would occur in future quarters.

These forward-looking statements are also immune from liability under the Safe Harbor because AMD warned investors of the precise risks that resulted in the guidance misses. Specifically, AMD cautioned that "[d]elays in developing or qualifying new products can also cause us to miss our customers' product design windows. If our customers do not include our products in the initial design of their computer systems, they will typically not use our products in their systems until at least the next design configuration. The process of being qualified for inclusion in a customer's system can be lengthy and could cause us to further miss a cycle in the demand of end-users, which also could result in a loss of market share and harm our business."

---

[16] *See* Appendix 1; CAC ¶¶ 244, 245, 247. Even if taken as a statement of past or existing fact, these statements are inactionable "puffery." *See infra* Section III.B.2.

Ex. 1 at 18. AMD added that since its microprocessors were not designed to "function with motherboards and chipsets designed to work with [non-AMD] microprocessors," any decrease in support from designers, manufacturers, and suppliers of motherboards for AMD's product offerings could have a "materially adverse" effect on AMD's channel business. *Id.* And in any event, these statements are protected due to the CAC's failure to allege any individual defendant's "actual knowledge." *See supra* Section III.A.1.b.

### 2.   Statements of Past or Existing Fact

To the extent that Plaintiffs have challenged some statements on these subjects that were not forward-looking, many of them are again nothing more than inactionable "puffery."[17] *Impac*, 554 F. Supp. 2d at 1096. As to the few remaining present tense statements of fact,[18] Plaintiffs again fail to plead falsity or scienter.

Several of the challenged statements reference demand or shipments for Llano generally (which would include OEM customers), while others refer to channel demand or shipments for the entire Fusion APU line (which would include Brazos as well as Llano chips). *See* CAC ¶ 224, 231, 241, 243, 250. Plaintiffs allege no facts suggesting that these statements were false. Instead, Plaintiffs mischaracterize them as statements about channel demand for Llano.

Even as to statements made regarding the channel's demand for Llano chips, Plaintiffs do not allege any facts showing that, when the statements were made, AMD was seeing any weakening in demand for Llano from the channel. In fact, AMD noted in its 1Q12 Earnings Call that the margins for 1Q12 had *beat* guidance as a direct result of "higher than anticipated demand for certain 32-nanometer Llano products, particularly in emerging markets." CAC ¶ 243. Similarly, the public statements cited in Plaintiffs' own CAC describe a "very strong spike" of channel shipments in both 4Q11 and 1Q12, which are again flatly inconsistent with AMD's alleged "knowledge" that channel adoption was weak. Ex. 16 at 4. Simply put, Plaintiffs allege no specific facts showing that AMD was aware of weaker channel demand at the time when any of the challenged statements were made. Nor have Plaintiffs alleged any facts supporting a

---

[17] Appendix 1; CAC ¶¶ 221-22, 228-30, 236-239, 244, 246-47, 253.
[18] Appendix 1; CAC ¶¶ 217, 219, 224-26, 228, 230-231, 234, 241-243, 246-n47, 250, 253.

"strong inference" of scienter with regard to statements about demand. *See supra* Section III.A.2.b. Plaintiffs' allegations—which at most amount to a claim that Defendants "must have known," based on their role as officers and managers of the company, that channel shipments would not occur until December of 2011 and that channel adoption would be weak going forward—are not enough. *Glazer*, 549 F.3d at 746.

### C. 2Q12 – Alleged Failure to Disclose Inevitability of Write-Down

Finally, Plaintiffs claim that AMD's executives misled the market when they said, after 2Q12, that AMD was "taking definitive steps to improve [its] performance" and would "focus on sellout velocity" to continue pushing sales of Llano "throughout the balance of [2012] and into 2013." CAC ¶¶ 260, 267, 272. Plaintiffs claim these statements were false or misleading because they failed to disclose that the "botched roll-out had more serious implications than the Company had previously stated, resulting in the channel's failure to adopt Llano, and would continue to adversely affect the Llano inventory and gross margin as a result, ultimately requiring AMD to write-down its entire inventory of Llano." CAC ¶ 272. Again, these allegations do not meet the relevant pleading standards. First, these statements are forward-looking, but Plaintiffs have failed to allege falsity, and the statements are protected by the Safe Harbor.[19] *Oracle*, 627 F.3d at 388; *Cutera*, 610 F.3d at 1112. Plaintiffs allege no facts showing that, when these statements were made, the speakers did not believe them; had no reasonable basis for them; or were aware of facts tending seriously to undermine them. *Oracle*, 627 F.3d at 388. Instead, Plaintiffs rely on pure hindsight, noting that AMD ended up writing off a large part of its Llano inventory in the following quarter. But a write-off taken in 3Q12 does not show what any of the defendants knew or believed at the time of the 2Q12 call. *See Alaska Elec. Pens. Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 832-33 (S.D. Cal. 2006) ("[S]ubsequent write-offs . . . are not corroborative of anything" and "reliance on [such] write-offs constitutes impermissible 'fraud by hindsight.'").[20]

---

[19] *See* Appendix 1; CAC ¶¶ 260, 267. To the extent that Plaintiffs argue that these statements are not, in fact, forward-looking, but rather relate to "historical or current fact," they remain inactionable "puffery." *Impac,* 352 F.3d at 1096.

[20] Indeed, despite the write-off, these statements turned out to be true: Defendants *did* make "substantial progress" in reducing its channel inventory in 3Q12 through sales and noted that it would be continuing to push Llano inventory to the channel "in the coming quarters." Ex. 17 at

In any event, these statements are protected by the Safe Harbor because AMD warned investors that "as a result of lower sales during the second quarter of 2012 and in preparation for previously anticipated demand, [AMD's] inventory increased during the second quarter of 2012" and such a build-up "could result in excess or obsolete inventory, which could result in write-downs of inventory and an adverse effect on gross margins." Ex. 4 at 46. AMD also warned investors that "the overall weakness in the global economy and weaker consumer spending, which impacted sales of our microprocessors for mobile devices to our OEM customers [in 2Q12]," was "expect[ed] . . . to continue during the third quarter of 2012." *Id.* at 44. And Plaintiffs allege no facts supporting a "strong inference" that anyone at AMD had "actual knowledge" that these statements were false when made. *Cutera*, 610 F.3d at 1112.

Second, even if these statements were deemed present tense statements of fact, Plaintiffs do not allege any facts, known to AMD's executives when these statements were made, that were inconsistent with them. *See supra,* Section III.A.2.b. Specifically, the need for a write-down in 3Q12, which was caused in large part by weaker *OEM* sales, does not conflict with AMD's stated intent and ability to continue pushing for *channel* sales and a correction of the *channel* misalignment. *See* Ex. 20 at 2 (noting that write-down was due to a "weaker consumer buying environment impacting sales *to OEMs* as well as lower [average selling prices] across all geographies"). Simply put, Plaintiffs allege no facts showing that, when they made the challenged statements, Defendants already knew that AMD would end up writing off a large amount of Llano inventory.

## IV.   CONCLUSION

Plaintiffs' claims should be dismissed with prejudice.

---

5, 16. In fact, AMD was later able to sell a considerable portion of this written-down inventory in future quarters. *See* Ex. 6 at 22; Ex. 7 at p. 23; Ex. 8 at 21.

Dated: July 7, 2014

Respectfully submitted,

LATHAM & WATKINS LLP

By: _____*/s/ Patrick E. Gibbs*_____
Patrick E. Gibbs
Ming M. Zhu

Attorneys for Defendants ADVANCED MICRO DEVICES, INC., RORY P. READ, THOMAS J. SEIFERT, RICHARD A. BERGMAN, AND LISA T. SU