UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BABAK HATAMIAN, ET AL.,

        Plaintiffs,

    v.

ADVANCED MICRO DEVICES, INC., ET AL.,

        Defendants.

Case No.  14-cv-00226-YGR

ORDER DENYING DEFENDANTS' MOTION TO STRIKE

Presently before the Court is defendants' Motion to Strike certain paragraphs from plaintiffs Consolidated Class Action Complaint (Dkt. No. 61 ("CCAC")), on the basis that such paragraphs are attributed to two confidential witnesses ("CWs") who have since recanted.  (Dkt. No. 70.)  In support thereof, defendant have filed declarations from the two CWs.  (Dkt. Nos. 71, 72.)  Plaintiffs oppose the motion.  For the reasons set forth below, the motion is **DENIED**.

**1.  BACKGROUND**

The facts relevant to this motion are well-known to the parties and set forth here only briefly.  In the instant motion, defendants move to strike three paragraphs from the CCAC on the basis that the CWs, to whom the facts alleged in these paragraphs are attributed, have either recanted or stated that they never made such statements in the first place.  In the process of investigating the alleged securities fraud claim before filing suit, lead plaintiffs' counsel worked with an investigator who conducted interviews of former employees of AMD, AMD's channel customers, and GlobalFoundries, the producer of the Llano chip.  A primary investigator in the case interviewed both CW6 and CW7.  Statements attributed to these CWs appear at paragraphs 99, 102, and 109 of the CCAC.  Plaintiffs rely on these allegations considerably for their contention that the named defendants in this action possessed scienter, an element of their underlying securities fraud claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

After the complaint was filed, defendants identified and contacted CW6 and CW7. Defendants have filed declarations from both CWs in which the CWs either recant and/or disclaim that they made the statements attributed to them in the above-mentioned paragraphs. On this record, defendants move to strike the subject paragraphs in the CCAC on the basis that they are, essentially, untrue and false.

### 2. LEGAL STANDARD FOR MOTION TO STRIKE PURSUANT TO RULE 12(F)

Federal Rule of Civil Procedure 12(f) provides that a court may "[strike] from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1152 (C.D. Cal. 2003). Accordingly, such motions should be denied unless the matter has no logical connection to the controversy at issue *and* may prejudice one or more of the parties to the suit. *See* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* ("Wright & Miller") § 1382 (1990) (citations omitted). In the absence of such prejudice, courts have denied Rule 12(f) motions "even though the offending matter literally [was] within one or more of the categories set forth in Rule 12(f)." Wright & Miller § 1382 (quoted in *Rawson v. Sears Roebuck & Co.*, 585 F.Supp. 1393, 1397 (D. Colo. 1984)).

### 3. ANALYSIS

Defendants move to strike all of the allegations attributed to two confidential witnesses, CW6 and CW7, as immaterial or impertinent. Fed. R. Civ. P. 12(f). The Court is not persuaded. As an initial matter, it cannot be said that the subjects sought to be stricken "do not pertain ... to the issues in question," as the allegations at issue pertain directly to the issue of defendants' scienter of the underlying securities fraud claim. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (rev'd on other grounds). Nor can it be said that the material sought to be stricken has "no essential or important relationship to the claim for relief or the defenses being pleaded." *Id.* (citing Wright & Miller, *Federal Practice and Procedure* § 1382). Thus, the allegations at issue do not fall within these categories for which striking is permissible under Rule 12(f).

2

Second, defendants' assertion that paragraphs 99, 102, and 109 are false or "sham" allegations, and that therefore they may be stricken under Rule 12(f), is similarly without merit. (Reply at 4.)  The cases cited by defendants in support of the principle that sham allegations may be stricken do not compel the granting of defendants' motion to strike in this context.  In all of the cited cases, where the courts granted the motion to strike, the question of whether the allegation was fraudulent or a sham was not subject to reasonable dispute.  *See Marvel Enterprises, Inc. v. NCSoft Corp.*, No. CV 04-9253, 2005 WL 878090, at *2 (C.D. Cal. Mar. 9, 2005) (plaintiffs had either proposed removal of pages or not opposed motion to strike others); *Harbridge v. Schwarzenegger*, No. CV 07-4486, 2011 WL 6960830, at *8 (C.D. Cal. Aug. 31, 2011) (striking new allegations appropriate where plaintiff omitted material, previously-alleged facts that undermined his retaliation claims);  *Rampersad v. Deutsche Bank Sec., Inc.*, No. 02-CIV-7311, 2004 WL 616132, at *4 (S.D.N.Y. Mar. 30, 2004) (declining to find that plaintiff's allegations lacked any factual basis beyond doubt and declining to strike allegations under Rule 12(f)); *Weiss v. La Suisse*, 131 F. Supp. 2d 446, 451 (S.D.N.Y. 2001) (finding allegations relevant to claim; declining to strike); *Salzmann v. Prudential Sec. Inc.*, No. 91-CIV-4253, 1994 WL 191855, at *13 (S.D.N.Y. May 16, 1994) (finding that plaintiffs' account statement established that certain allegation had no basis in fact; striking relevant allegations).

In contrast, here the evidence underlying defendants' contention that paragraphs 99, 109, and 109 are "without basis in fact" is not so conclusive.  While the declarations provided by the CWs disclaiming allegations attributed to them raise critical questions concerning the factual strength and accuracy of the CCAC, the declaration provided by plaintiff sets forth bases to doubt the weight of those declarations.  (Dkt. No. 75.)  Specifically, that declaration establishes that the investigator who spoke with the CWs followed a protocol designed to prevent misattributions of the nature claimed by defendants here.  That protocol requires that at the outset of a conversation with a potential CW, the investigator clearly identify him or herself as working for plaintiffs' counsel in a class action securities lawsuit and disclose the purpose of the conversation.  (*Id.* at ¶ 5.) Along with other measures to ensure accuracy, the protocol requires that if information provided by a former employee is used in the complaint, that the CW receive a copy of the

United States District Court
Northern District of California

3

1   complaint.  (*Id*. at ¶ 10.)  The investigator followed these protocols.  (*Id*. at ¶ 12, 22, 27.)  Neither

2   CW contacted the investigator to explain that what was included in the complaint and attributed to

3   them was inaccurate or false.  (*Id*. at ¶ 20, 24.)

4       Further details provided in plaintiffs' submission further undermine the probative value of

5   the declarations offered by defendants.  For example, after the complaint was filed in this action,

6   CW6 himself sent the investigator a letter he had received from defendant's Senior Vice President,

7   General Counsel and Secretary, which requested that CW6 contact AMD per the terms of his

8   severance agreement.  In a call with the investigator, CW6 expressed concerns regarding his

9   severance, given his reliance on the severance to supplement his income.  (*Id*. at ¶ 20.)

10      Finally, the Court notes that both CWs had received copies of the complaint ***a month***

11  ***before*** the claims of inaccuracy or misattribution surfaced – and then, only after defendants had

12  contacted the CWs.

13      The above details counsel against finding, at this early stage of litigation, that the evidence

14  conclusively establishes that the allegations in the CCAC are without merit.  It can hardly be said

15  that the facts establish "beyond peradventure that [the allegations at issue are] sham and false" or

16  "devoid of factual basis." *Murchinson v. Kirby*, 27 F.R.D. 14, 19 (S.D.N.Y. 1961).  The most that

17  can be said about defendants' proffer is that the declarations submitted raise questions requiring

18  further development and analysis.  Resolution of these questions at this juncture would be

19  premature; such questions are more appropriately raised in the context of summary judgment after

20  the benefit of full discovery, or for consideration by a jury.

21      In so holding, the Court is guided by Judge Rakoff's recent order in *City of Pontiac Gen.*

22  *Employees' Ret. Sys. v. Lockheed Martin Corp.*, 952 F. Supp. 2d 633 (S.D.N.Y. 2013).  There, in

23  the context of summary judgment, Judge Rakoff had occasion to consider a circumstance similar

24  to that presented here.  After the court denied defendant's motion to dismiss, relying in part on

25  statements attributed to CWs, discovery commenced and several CWs were deposed.  They then

26  "recanted" statements attributed to them in the Amended Complaint and/or denied making such

27  statements in the first place.  Defendants moved for summary judgment, arguing that there was no

28  longer competent evidence supporting plaintiffs' claims.  Plaintiffs contended that the CWs had

United States District Court
Northern District of California

1    recanted or changed their stories because of pressures from Lockheed – financial, etc. – and that

2    the complaint accurately reflected the substance of the original CW statements.

3          Judge Rakoff noted that plaintiff's response "might arguably have been sufficient" to

4    defeat summary judgment.  The plaintiffs counter-contention raised a substantial question of

5    disputed material fact.  Nonetheless, because the parties' positions raised serious questions "that

6    implicated the integrity of the adversarial process itself," Judge Rakoff undertook *sua sponte* to

7    conduct an evidentiary hearing directed to the CWs whose statements were the subject of

8    defendants' summary judgment motion.  The findings from that hearing are illustrative of the

9    broader systemic issues that arise in cases such as this:

> With some exceptions, the testimony presented at the October 1 hearing bore witness to the competing pressures this process had placed on the confidential witnesses and the impact such pressures had had on their ability to tell the truth. In a nutshell, it appeared to the Court that some, though not all, of the CWs had been lured by the investigator into stating as "facts" what were often mere surmises, but then, when their indiscretions were revealed, felt pressured into denying outright statements they had actually made.

*Lockheed Martin Corp.*, 952 F. Supp. 2d at 636-37.  Ultimately, defendants' motion for summary

judgment was denied, and the case settled shortly thereafter.  Judge Rakoff nonetheless published

an order on the question of CWs who recant or disclaim, "to focus attention on the way in which

the PSLRA and decisions like *Tellabs* have led plaintiffs' counsel to rely heavily on private

inquiries of confidential witnesses, and the problems this approach tends to generate for both

plaintiffs and defendants."  *Id.*

          The Court acknowledges that the PSLRA, with its requirement of specific evidentiary

detail in cases such as this, has put a significant burden on plaintiffs' counsel to undertake pre-

litigation discovery in order to marshal allegations sufficient to survive a PSLRA motion to

dismiss.  As in the instant case, the advent of such practices has been shown to put the integrity of

the adversarial process, and the confidential witnesses themselves, in the cross-hairs.  However, in

United States District Court
Northern District of California

*Lockheed*, these problems arose in the context of summary judgment, and the court was thus permitted to consider, and collect, evidence on questions similar to those presented here.  The context of the instant motion contrasts markedly from that in *Lockeed*:  here, the record has not been developed, no discovery other than informal, one-sided investigations has occurred, and a motion to dismiss remains pending.  As stated above, the parties' declarations do not establish that the statements in the CCAC are irrefutably false.  The most that can be said is that serious questions have been raised.  Should plaintiffs defeat defendants' motion to dismiss, discovery will provide the parties an opportunity to explore these questions further, specifically in depositions at which both parties – and a court reporter – may be present.

### 4.   CONCLUSION

For the reasons stated above, defendants' motion to strike is **DENIED**.  If, after discovery commences, evidence is discovered that undermines fatally plaintiffs' contention that defendants possessed scienter, defendants may then put forth such evidence in the context of a summary judgment motion.

This terminates Docket Number 70.

**IT IS SO ORDERED.**

Dated:  February 6, 2015

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California