UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BABAK HATAMIAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ADVANCED MICRO DEVICES, INC., et al.,<br><br>　　　　Defendants. | Case No. 14-cv-00226-YGR   (JSC)<br><br>**ORDER RE: DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 157 |

In this securities fraud putative class action, Plaintiffs contend that defendant Advanced Microdevices, Inc. ("AMD") made misrepresentations regarding the launch of its "Llano" microprocessor, and in particular, misstatements regarding the Llano manufacturing plant's chip yield.  Now pending before the Court is the parties' joint letter brief regarding a discovery dispute.  Specifically, Plaintiffs seek an order compelling Defendant to (1) expand the temporal scope of discovery, (2) identify and provide contact information for its customer, and (3) produce all human resources documents for certain current and former employees.  (Dkt. No. 157.)  Having reviewed the parties submissions, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 701(b), and GRANTS IN PART Plaintiffs' request for an order compelling AMD to respond to certain discovery requests as set forth below.

**LEGAL STANDARD**

A party can discover any nonprivileged information which is relevant to the claims or defenses of any other party. Fed. R. Civ. P. 26(b)(1).  Relevant information does not have to be admissible; relevance is construed broadly, and litigants may obtain discovery so long as it is "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (internal quotation marks and citation omitted).

Pursuant to Rule 26(b)(2), the court must limit the extent of discovery if it determines that: (1) the discovery sought is unreasonably cumulative; (2) the party seeking discovery has already had ample opportunity to obtain the information; or (3) the burden or expense of the proposed discovery outweighs it likely benefit. Fed. R. Civ. P. 26(b)(2). "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 655-56 (C.D. Cal. 2005) (citation omitted); *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

## DISCUSSION

**A.     Temporal Scope of Discovery**

The temporal scope of Plaintiffs' First Set of Requests for Production of Documents ("RFPs") is January 1, 2010 through October 2013. (Dkt. No. 157-1 at 7 (defining the "Relevant Period" for the purposes of the RFPs).) Plaintiffs are presently seeking documents from April 1, 2010 through April 1, 2013. (Dkt. No. 157 at 1.) AMD objects to this time period, arguing that the relevant time period should be limited to 2011 and 2012. (Dkt. No. 157 at 4.)

The putative Class Period in this securities litigation action is April 4, 2011 through October 18, 2012. (Dkt. No. 61 ¶ 1.) In the amended complaint, Plaintiffs allege that AMD made actionable misleading statements about the Llano microprocessing chip as early as April 4, 2011 when it falsely represented that the Llano's production yield problems had been resolved and it was set to launch on time, and that the truth of the statements were revealed to the public by October 18, 2012. (*Id.* ¶¶ 1, 8, 22; *see also* Dkt. No. 110 at 3-4.) At bottom, Plaintiffs allege that AMD concealed that yield problems still existed and had persisted since 2010, and that AMD's Llano production was significantly supply-constrained, and that AMD continued to mislead the market about the status of the Llano through October 2012. (Dkt. No. 110 at 4.) The amended complaint details AMD's statements about the status of Llano production as early as July 2010, which indicated that the Llano was initially scheduled to launch in the fourth quarter of 2010, but was delayed due to production issues. (Dkt. No. 61 ¶¶ 76, 123, 124.) Plaintiffs' expert alleges

that the typical supply chain timeline indicates that good production yields take six to nine months before the product can reach consumers, so a launch in the fourth quarter of 2010 would start the relevant time period in April 2010.  (*Id.* ¶ 126.)

"In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context." *In re New Century*, No. CV 07-0931 DDP (FMOx), 2009 WL 9568860, at *2 (C.D. Cal. July 8, 2009) (citations omitted); *see, e.g.*, *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 655 (D. Kan. 2004) ("[D]iscovery of information both before and after the liability period . . . may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonably number of years both prior to and following such period."); *Empire Volkswagen, Inc. v. World-Wide Volkswagen Corp.*, 95 F.R.D. 398, 399 (S.D.N.Y. 1982) (discovery "routinely goes beyond the statutory period" and plaintiffs are generally entitled to discovery "for a reasonable period of time antedating the earliest possible date of the actionable wrong") (quotation marks and citation omitted).

Plaintiffs rely on *In re New Century* for the proposition that there is a presumptive five-year discovery period regardless of the scope of the Class Period or timing of the events giving rise to liability.  Not so.  First, *In re New Century* is a non-precedential opinion not intended for publication.  2009 WL 9568860, at *7.  Moreover, the case itself does not provide the support that Plaintiffs urge.  While the *In re New Century* court indicated that its review of case law "suggest[s] a presumptive five-year discovery period[,]" 2009 WL 9568860, at *2 (citation omitted), the court relied on *Miller v. Hygrade Food Prods. Corp.*, 89 F. Supp. 2d 643, 657 (E.D. Pa. 2000)), which discussed the scope of discovery in Title VII employment discrimination cases, not civil cases in general.  89 F. Supp. 2d at 657 ("The scope of discovery through interrogatories and requests for production of documents is particularly broad in a Title VII case.") (citations omitted); *see also, e.g.*, *Adams v. Pinole Point Steel Co.*, No. C 92-1962, 1995 WL 73088, at *8 (N.D. Cal. Feb. 10, 1995) (allowing interrogatories to request information from five years prior to class period in employment discrimination case).  Plaintiffs' reliance on *Calix Networks, Inc. v. Wi-Lan, Inc.*, No. 09-cv-06038-CRB DMR, 2010 WL 3515759, at *7 (N.D. Cal. Sept. 8, 2010),

3

fares no better.  In *Calix Networks*, the court also permitted a five-year discovery period, citing other cases that did the same.  *Id.* at *7.  But both *Calix* and the authorities on which it relies pertain to jurisdictional discovery into whether the defendant had sufficient minimum contacts in the forum state, not merits discovery as here.  Thus, the "presumptive 5-year discovery period" that Plaintiffs cite is not applicable to the instant securities litigation action.  Instead, without applying such a presumption, the Court must balance the information's relevance against the burden on the defendant.  *See* Fed. R. Civ. P. 26(b)(2).

      Here, some discovery before and after the putative Class Period is relevant to give context to the misrepresentations alleged.  Indeed, the amended complaint references AMD's comments about its Llano production slowdown beginning in July of 2010.  While the actionable statements post-date these initial comments, under the broad definition of relevance, Plaintiffs are entitled to documents from this time period to give context to the company's later statements about the status of the Llano chip's production.  As for the period following the putative Class Period, Plaintiffs have not explained why discovery through April 1, 2013 is relevant, given that the putative Class Period ended on October 18, 2012—more than five months earlier.  Without further explanation, the Court cannot conclude that half a year's worth of post-Class Period discovery is relevant.  Instead, the Court will order AMD to produce documents for the rest of 2012, but not thereafter.  These additional two and a half months should be sufficient to give context to the allegations made during the putative Class Period.

      While AMD may well have produced already an "enormous production" of over 330,000 documents from the time period between March 1, 2011 and October 18, 2012 (*id.* at 157), the scope of the existing production alone does not bar Plaintiffs from discovery of other relevant documents.  AMD has not met its burden of demonstrating that the burden or expense of this relevant discovery outweighs its likely use, instead offering only the conclusory assertion that it does so.  (Dkt. No. 157 at 3.)  This is not enough to demonstrate that the requested discovery should not be granted.

      During the course of the parties' negotiations, Plaintiffs also offered the concession that AMD need not produce documents from the extended discovery period for those custodians

4

exclusively relevant to the Llano inventory write-down that occurred during the second half of the putative Class period. (*See* Dkt. No. 157 at 1-2.) This concession is a reasonable limit on the requested production. In addition, the pre-Class Period discovery shall not include any documents concerning Plaintiffs' allegations that AMD made false and misleading misrepresentations about its 2012 guidance and performance in the second and third quarters of 2012, as 2010 discovery is not reasonably calculated to lead to discovery of admissible evidence about 2012 forecasting. Accordingly, Plaintiff is entitled to discovery from April 2010 through December 31, 2012, excluding custodians relevant only to the Llano inventory write-down or documents responsive to the 2012 forecasting allegations. The parties shall meet and confer to determine the identities of the relevant custodians for these requests.

**B.     Customer Information**

Next, Plaintiffs seek an order compelling AMD to identify its customers and other third parties in response to Plaintiffs' First Set of Interrogatories. Specifically, the interrogatories at issue ask AMD to identify all of AMD's original equipment manufacturers, all third party distributors that sell AMD's products, all original design manufacturers, and all motherboard manufacturers who manufactured or intended to manufacture motherboards containing AMD's accelerated processing units—including but not limited to the Llano microprocessing chip—by name, address, website, email, and phone number. (Dkt. No. 157-2 at 5.) Plaintiffs allege that AMD prioritized its Llano shipments to original equipment manufacturers over third-party channel distributors, which left little to no Llano product for the channel customers, and that AMD did not disclose that strategy, which was misleading. (*See* Dkt. No. 110 at 12.) Thus, Plaintiffs seek discovery from these third parties "to provide context and unbiased testimony on these issues." (Dkt. No. 157 at 5.)

Notably, AMD does not contend that its customers' identities are irrelevant. Nor does AMD argue that its customer information is confidential proprietary business information that must be kept secret. Instead, its objection centers on the potential burden to the third parties themselves, arguing that the third-party subpoenas Plaintiffs have issued to date have been overly broad, as they were not limited to customers for the Llano chip at issue in this litigation, and that

5

answering the Interrogatories at issue will result in even more broad and improperly premature third-party discovery. (*See* Dkt. No. 157 at 5.) And indeed, Plaintiffs appear to concede that the purpose of the Interrogatories is to obtain the information they need to serve third-party discovery requests on these customers. (*See* Dkt. No. 157 at 4-5 (arguing that Plaintiffs "have a fundamental right to secure testimony from third parties unhindered by Defendants' sequencing preferences").)

But the particular discovery sought is not, in and of itself, third-party discovery. There are no Rule 45 subpoenas before the Court. The identities of AMD's customers that sell the Llano microprocessing chip—not all of its customers, as the Interrogatories are written, rather only those who purchased the chip at issue in this litigation—are relevant to Plaintiffs' claims. If Plaintiffs decide to move ahead with third-party discovery using that customer information, it is the customers themselves, not AMD, that will have standing to challenge the resulting third-party subpoenas as overly broad or unduly burdensome. *See* Fed. R. Civ. P. 45(c)(2)(B), 45(c)(3). Indeed, the adversary of the party seeking the information cannot move to quash or otherwise challenge a third-party subpoena, nor can the adversary advise third parties to object to the subpoena or ignore its production command. *See Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 794 (E.D. Pa. 2012) ("Nowhere in the Rule is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's commands."); *see also Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 290 (N.D. Cal. 2015) (collecting cases).

Accordingly, the Court orders AMD to respond to Interrogatories Nos. 1 through 4 by providing the identity and requested contact information for its customers and motherboard manufacturers involved with the Llano microprocessing chip at issue in this litigation. While the Court declines AMD's invitation to restrict Plaintiffs from sending any further third-party subpoenas until after party discovery is substantially complete (Dkt. No. 157 at 6), Plaintiffs are cautioned that when considering motions to quash subpoenas courts generally consider whether the information sought could be obtained from a party.

**C.   Human Resources Documents**

Finally, the parties dispute RFP Nos. 73 and 74 in Plaintiffs' Second Set of RFPs, which

6

1  request "[human resources ("HR")]-related documents and HR files for any former or current
2  AMD employee referenced in the Complaint, including but not limited to Dan Jensen, David
3  Tidwell, Kursad Albayraktaroglu, Mike Lowe, and the Individual Defendants, including any
4  employment agreement entered into between AMD and those persons" and "any former or current
5  AMD employee deposed in this action[.]" (Dkt. No. 157-3 at 8.) AMD objects to this discovery
6  on the grounds that Plaintiffs have not met their burden of overcoming the employees' right to
7  privacy in their HR files.

8  Under California's constitutional right to privacy, the personnel records of employees are
9  confidential and thus protected from discovery "unless the litigant can show a compelling need for
10  the particular documents and that the information cannot reasonably be obtained through
11  depositions or from nonconfidential sources." *Foster v. ScentAir Techs., Inc.*, No. 13-cv-05772-
12  TEH (MEJ), 2014 WL 4063160, at *2 (N.D. Cal. Aug. 15, 2014) (citing *Harding Lawson Assocs.
13  v. Super. Ct.*, 10 Cal. App. 4th 7, 10 (1992)). Thus, it is insufficient for a party to state only that
14  discovery of an employee's personnel record is necessary to facilitate the prosecution of the
15  action. *El Dorado Sav. & Loan Ass'n v. Super. Ct. of Sacramento Cnty.*, 190 Cal. App. 3d 342,
16  345-46 (1987). The party must also show that there are no less intrusive means to "satisfy [the
17  party's] legitimate need for relevant information." *Id.* at 346.

18  Plaintiffs' broad requests for "HR related documents and HR files" including employment
19  agreements are the type of "personnel files" subject to the California right of privacy. The
20  California legislature has defined "personnel records" as those files "that the employer maintains
21  relating to the employee's performance or to grievances concerning the employee." Cal. Labor
22  Code § 1198.5(a); *see also Teamsters Local 856 v. Priceless, LLC*, 112 Cal. App. 4th 1500, 1515
23  (2003) (noting that the U.S. Supreme Court has stated that an individual's personnel file usually
24  contains personal data including "where he was born, the names of his parents, where he has lived
25  from time to time, his high school or other school records, results of examinations, evaluations of
26  his work performance"), *disagreed with on other grounds by Int'l Fed'n of Prof. & Tech. Eng'rs,
27  Local 21, AFL-CIO v. Super. Ct.*, 42 Cal. 4th 319, 335-36 (2007). Employment agreements
28  contain the type of "sensitive" information subject to privacy concerns that the California

constitution protects. *See Alch v. Super. Ct.*, 165 Cal. App. 4th 1412, 1433 (2008); *Kolker v. VNUS Med. Techs., Inc.*, No. C 10-0900 SBA (PSG), 2011 WL 5057094, at *4-5 (N.D. Cal. Oct. 24, 2011).

Plaintiffs first urge that any information relevant to the employees' credibility is relevant, and these records—inasmuch as they evidence promotions or demotions, disciplinary proceedings, work reviews or evaluations, and complaints—are discoverable as they reflect on the employees' credibility. (Dkt. No. 157 at 6.) This credibility argument is not enough to overcome the employees' privacy interest in their HR files; to conclude otherwise would eviscerate the protections that the California constitution provides by mandating discovery of confidential personnel files for every witness in every case. *Ragge v. MCA/Universal Studios*, 165 F.R.D. 601 (C.D. Cal. 1995), does not hold otherwise. *Ragge* is an employment discrimination case in which the court noted that the sought-after personnel records were relevant to the employer's knowledge of a hostile work environment. *Id.* at 604. The court also found that the documents were relevant to the credibility of the named defendants as they "provide a means to compare statements made during depositions to documents maintained by the employer." *Id.* No such showing has been made here.

Plaintiffs also argue that the employees' HR files are relevant inasmuch as they may contain responsive documents concerning Llano and the fraud alleged in this action. (*See* Dkt. No. 157 at 7.) That may be so. But the RFPs as written are much broader than that: they do not request documents contained in employees' personnel files describing any job responsibilities pertaining to the Llano product or referencing any disciplinary action taken with respect to such duties. And to the extent that this limited category of information contained in employees' personnel files may be relevant, Plaintiffs have not established that there is no less intrusive source of this information. *See El Dorado Sav. & Loan Ass'n*, 190 Cal. App. 3d at 346.

Balancing the employees' significant interest in their human resources files with Plaintiffs' interest in the documents, the Court concludes that Plaintiffs have not met their burden of demonstrating a compelling need for the information that could not be obtained through other sources.

8

**CONCLUSION**

For the reasons described above, the Court ORDERS AMD to (1) produce relevant documents from the time period of April 2010 through December 31, 2012, excluding custodians relevant only to the Llano inventory write-down and documents responsive to the 2012 forecasting allegations; and (2) respond to Interrogatories Nos. 1 through 4 by providing the identity and requested contact information for its customers and motherboard manufacturers involved with the Llano microprocessing chip at issue in this litigation.  Plaintiffs' request for the human resources-related documents requested in RFP Nos. 73 and 74 is DENIED.

This Order disposes of Docket No. 157.

**IT IS SO ORDERED.**

Dated: November 16, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge