**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BABAK HATAMIAN**, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> **ADVANCED MICRO DEVICES, INC.,** *et al*., <br><br> Defendants. | Case No.: 14-cv-00226 YGR <br><br> **ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Re: Dkt. No. 143 |

Lead plaintiffs Arkansas Teacher Retirement System and KBC Asset Management NV (collectively, "Plaintiffs") bring this putative securities fraud class action pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder. Specifically, Plaintiffs allege that defendants Advanced Micro Devices ("AMD") and several individuals (collectively, "Defendants") made over one hundred material misrepresentations and omissions concerning the launch of its "Llano" microprocessor. Plaintiffs further allege that Defendants' later disclosures of the ongoing problems with Llano caused AMD's stock price to drop.

Currently before the Court is Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23. (Dkt. No. 143, "Mtn.") Having carefully considered the papers submitted, the admissible evidence, oral argument held February 2, 2016, and for the reasons set forth below, the Court hereby **GRANTS** Plaintiffs' motion for class certification.

**I.   FACTUAL BACKGROUND**

The facts at issue in this case are well-known to the parties and were summarized previously by the Court in its order on Defendants' motion to dismiss. (*See* Dkt. No. 110.) The Court recounts the factual allegations pertinent to the instant motion below:

AMD is a semiconductor company whose main products include microprocessors and other computer parts. (Dkt. No. 61, Corrected Class Action Complaint, "CCAC," ¶ 43.) In particular,

AMD designs and sells microprocessors for use in computers and tablets.  AMD sells its microprocessors to original equipment manufacturers ("OEM") and through authorized third-party distributor channel partners, commonly referred to as the "channel."  (*Id*. ¶ 3; Dkt. No. 156, Exh. A.)

This case arises out of alleged misrepresentations and omissions of material fact that Defendants made concerning AMD's launch of its "Llano" microprocessor.  Llano was a revolutionary product that combined a central processing unit ("CPU") and a graphics processing unit ("GPU") on a single chip.  The Llano was set to launch, initially, in the fourth quarter of 2010.  (CCAC ¶ 7.)  The launch was delayed until the second quarter of 2011 because the foundry set to manufacture Llano for AMD, GlobalFoundries ("GF"), had difficulty transitioning to Llano's new process technology.  (*Id*.)  Specifically, AMD announced that GF had been having problems producing sufficient quantities of Llano chips given lower than desired chip "yield."  (*Id*.)

On April 4, 2011, the start of the proposed class period, Defendants announced that the Llano yield problems had been resolved and were in the past, and that Llano was set to launch on time in the second quarter.  (*Id*. ¶ 8.)  Thereafter, Defendants claimed that "ample product" was available for the launch, and that it was "well positioned" to take advantage of the high back-to-school selling cycle, thereby allegedly bolstering the market's expectations for Llano.  (*Id*. ¶ 9.)  In general, Plaintiffs claim Defendants made affirmative misrepresentations and omissions to conceal the facts that (i) yield problems still existed and had persisted since 2010, and (ii) AMD was significantly supply-constrained.  (*Id*. ¶ 10.)  Plaintiffs claim that despite the critical decision not to supply channel customers with Llanos, Defendants continually represented Llano devices were faring well in the market.

Plaintiffs allege that in a series of disclosures, starting in September 2011, AMD began to inform the market of the Llano yield problem and its effects.  On September 28, 2011, Defendants admitted that AMD would miss its revenue guidance by four to six percent due to "less than expected supply."  (*Id*. ¶ 13.)  Defendants nonetheless touted "strong" customer demand despite the fact that supply could not meet the demand due to the compromising yield problem.  (*Id*.)  Defendants continued to downplay the existence and effects of the yield problem during a subsequent earnings call with analysts in October of 2011, although they admitted there had been some issues with yield

2

impacting revenues to that point, maintained AMD was working with its foundry partner, GF, to solve the yield problems, and continued to state they were expecting increasing shipments of the Llano. (*Id*. ¶¶ 14; 207-16.) Defendants made similar statements in the months the followed.

Defendants made additional public disclosures starting in mid-2012.  In July 2012, AMD announced it would miss second quarter revenue guidance by 14% due to softer than anticipated channel sales in China and Europe and the impact of weaker than expected consumer buying in AMD's OEM business. (*Id*. ¶ 18.) Ten days later, on an earnings call, Defendants admitted that the "soft" channel sales were due to Llano supply chain problems, which was "largely in AMD's control." (*Id*. ¶ 19.) AMD nonetheless maintained that Llano was a good product, and that it would sell well in the coming quarters. (*Id*. ¶ 20.)

Finally, in October 2012, AMD revealed it was writing down $100 million of Llano inventory because it was not salable. (*Id*. ¶ 22.) This would account for 8% of a 15% quarter over quarter decline in gross margin. (*Id*.) The stock price fell accordingly. In total, AMD's stock price dropped $6.17 (nearly 74%) during the class period. (*Id*. ¶ 24.) Plaintiffs attribute this decline to Defendants' allegedly false and misleading statements. (*Id*.)

In total, throughout the proposed class period, Plaintiffs claim that Defendants: (a) made 125 separate misrepresentations regarding the Llano processor launch on 20 dates; and (b) later corrected these misrepresentations via disclosures made on 5 dates.[1] (*See* CACC; Dkt. No. 144-2, "Coffman Report" ¶¶ 12-14; Dkt. No. 156-9, "Gompers Report" ¶¶ 21-27.)

## II. PLAINTIFFS' PROPOSED CLASS DEFINITION

Plaintiffs move to certify the following class as a damages class pursuant to Rule 23(b)(3):

> all persons and entities that, during the period from April 4, 2011 through October 18, 2012, inclusive (the "Class Period"), purchased or otherwise acquired shares of the publicly traded common stock of Advanced Micro Devices, Inc. ("AMD"), and were damaged thereby (the "Class"). Excluded from the Class are AMD and Rory P. Read ("Read"), Thomas J. Seifert ("Seifert"), Richard A. Bergman ("Bergman") and Dr. Lisa T. Su ("Su"), (collectively, the "Individual

---

[1] On two dates – September 28, 2011 and July 19, 2012 – Defendants made statements that Plaintiffs construe as misrepresentations, as well as statements Plaintiffs construe as corrective disclosures. (Coffman Report ¶ 14; Gompers Report ¶ 26.)

> Defendants" and with AMD, the "Defendants"); members of the immediate families of the Individual Defendants; AMD's subsidiaries and affiliates; any person who was an officer or director of AMD or any of AMD's subsidiaries or affiliates during the Class Period; any entity in which any Defendant has a controlling interest; AMD's employee retirement and benefit plan(s); and the legal representatives, heirs, successors and assigns of any such excluded person or entity.

(*See* Mtn. at 2; Dkt. No. 143-1 at 2.)

### III.   CLASS CERTIFICATION STANDARD

Rule 23, which governs class certification, contains two sets of distinct requirements Plaintiffs must meet before the Court may certify the proposed class. First, Plaintiffs must meet all of the requirements under Rule 23(a). Second, the class must meet one of the prongs of Rule 23(b).

Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). Courts refer to these four requirements as "numerosity, commonality, typicality and adequacy of representation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).

Once Plaintiffs establish that the threshold requirements of Rule 23(a) are met, Plaintiffs must then show "through evidentiary proof" that a class is appropriate for certification under one of the provisions in Rule 23(b). *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013). Here, Plaintiffs seek certification under Rule 23(b)(3). Rule 23(b)(3) requires Plaintiffs to establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The shared legal or factual issues must be of sufficient importance to the case that the Court is convinced that the most efficient, fair, and sensible method of adjudication is through a class action. CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL Ch. 10-C § 10:274 (citing *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). Therefore, the predominance inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon. v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). Where questions

4

common to class members represent significant issues that can be resolved in a single adjudication, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id*. (internal quotation marks and citation omitted).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)); *see also Mazza*, 666 F.3d at 588. The Court considers the merits to the extent they overlap with the Rule 23 requirements. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011). The Court must resolve factual disputes as "necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Id*. (emphasis in original). "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" *Aburto v. Verizon Cal., Inc.*, 2012 WL 10381, at *2 (C.D. Cal. Jan. 3, 2012) (quoting *Ellis*, 657 F.3d at 982). Ultimately, the Court exercises its discretion to determine whether a class should be certified. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

**IV.    DISCUSSION**

Defendants oppose class certification on two grounds, both of which concern predominance under Rule 23(b)(3). The Court addresses each element of Rule 23 in turn, albeit most are unopposed.

**A.  Rule 23(a) Requirements**

Defendants do not contest, and the Court agrees, that Plaintiffs have met their burden with respect to Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements.

**1.  Numerosity**

The first requirement for class certification demands that the class be "so numerous that joinder of all members is impractical." Fed.R.Civ.P. 23(a)(1). While no specific minimum number of potential class members exists, a "proposed class of at least forty members presumptively satisfies the numerosity requirement." *Nguyen v. Radient Pharmaceuticals Corp.*, 287 F.R.D. 563, 569 (C.D.Cal. 2012) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

Here, Plaintiffs unquestionably meet the numerosity standard. Defendants admitted the putative class contains more than 1,000 members. (Dkt. No. 144-1, "Responses to RFAs," No. 3.)

5

Additionally, AMD had approximately 700 million shares outstanding during the proposed class period. (*Id.*, No. 10; Coffman Report ¶ 66.) "The Court certainly may infer that, when a corporation has millions of shares trading on a national exchange, more than 40 individuals purchased stock over the course of more than a year." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D.Cal. 2009). And, the average daily trading volume for AMD common stock was over 19.6 million shares (Responses to RFAs, No. 9) further supporting an inference that numerosity is satisfied. *See Dean v. China Agritech*, 2012 WL 1835708, at *4 (C.D.Cal. May 3, 2012). Plaintiffs satisfy this element.

### 2. Commonality

Rule 23(a)(2) requires that the party seeking certification show that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). To satisfy this requirement, a common question "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S.Ct. at 2551. The existence of common questions itself will not satisfy the commonality requirement, and instead, "[w]hat matters to class certification… is… the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id*. (emphasis in original). Under the commonality inquiry, "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc*., 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Dukes*, 131 S.Ct. at 2556).

The Ninth Circuit recognizes that public disclosures alleged to contain material misrepresentations and omissions, like those at issue here, present common questions of law and fact: "Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable….and that the issue may profitably be tried in one suit." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) (citing cases). Indeed, Plaintiffs point to a litany of questions common to the class, including whether Defendants: (1) violated the Securities Exchange Act of 1934; (2)

6

misrepresented or omitted material facts; (3) knowingly or recklessly disregarded that their statements were false and misleading; and, if so, whether Defendants' (4) false statements artificially inflated the price of AMD's stock; and (5) disclosure of their misstatements caused economic damage to Plaintiffs.  (Mtn. at 8.)  Consequently, the Court finds commonality is met here.

### 3. Typicality

To satisfy typicality, Plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*.  "[T]ypicality is a 'permissive' standard and 'the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff.'" *In re First American Corp. ERISA Litig.*, 258 F.R.D. 610, 618 (C.D.Cal. 2009) (quoting Simpson v. Fireman's Fund. Ins. Co., 231 F.R.D. 391, 396 (N.D.Cal. 2005)).

Plaintiffs contend that typicality is met here because Plaintiffs, like class members, were all similarly injured by Defendants' public misrepresentations and omissions.  The Court agrees.  Plaintiffs' claims are "reasonably co-extensive with those of absent class members" and Defendants have not raised any reason that typicality is not met here. *Hanlon*, 150 F.3d at 1020.  Especially given the permissive nature of the typicality requirement, the Court finds that the interests of Plaintiffs are typical of the interests of the class. *See Wolin*, 617 F.3d at 1175.

### 4. Adequacy

The final hurdle to certification under Rule 23(a) requires Plaintiffs to demonstrate they will fairly and adequately protect the interests of the class.  Fed.R.Civ.P. 23(a)(4).  In this regard, the Court must consider "(1)[whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if]the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th

7

Cir. 2003). Here, Defendants do not raise any potential conflicts of interest, and the Court cannot discern any in this case. Defendants likewise do not doubt that Plaintiffs' counsel has and will continue to prosecute this action vigorously. Accordingly, the Court finds that Plaintiffs are adequate class representatives.

### B. Rule 23(b)(3) Requirements

#### 1. Predominance

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011) ("*Halliburton I*") (quoting Fed.R.Civ.P. 23(b)(3)). Plaintiffs assert claims under Section 10(b) of the Securities Exchange Act of 1934 (the "Act") and Rule 10b-5 promulgated thereunder.[2] To establish liability on their Section 10(b) private actions, Plaintiffs must show: (1) Defendants made a material misrepresentation or omission of fact; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) Plaintiffs' reliance on the misrepresentation or omission; (5) economic loss (damages); and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008); *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

Here, Defendants urge that individual inquiry is necessary to prove the fourth and fifth elements of Plaintiffs' Section 10(b) claims, *i.e.* reliance and damages. Specifically, Defendants contend that individual issues will predominate because Plaintiffs: (a) are not entitled to invoke a presumption of reliance under the "fraud-on-market" theory to show reliance classwide; and (b) have not shown they can measure damages classwide. The court addresses Defendants' arguments in turn.

///

///

---

[2] Plaintiffs also assert claims against the individually named defendants for violations of Section 20(a) of the Act, which requires Plaintiffs to prove: (1) a primary violation of federal securities law; and (2) Defendants exercised power or control over the primary violator. *Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Defendants do not raise, and the Court cannot discern, any reason the Section 20(a) claims would raise any distinct issues of predominance outside of those discussed with respect to the underlying Section 10(b) claims. The Court therefore will not separately address the Section 20(a) claims against the individually named defendants.

### a. Presumption of Reliance

First, Defendants contend that reliance is not a common fact issue across the class because Plaintiffs are not entitled to a presumption of reliance. Without a classwide presumption of reliance, Defendants correctly argue that individual issues of reliance would vary among all class members such that individual issues would predominate over common ones:

> Rule 23(b) (3)'s requirement that "questions of law or fact common to class members predominate over any questions affecting only individual members" would often be an insuperable barrier to class certification, since each of the individual investors would have to prove reliance on the alleged misrepresentation. But the problem dissipates if the plaintiffs can establish the applicability of the so-called "fraud on the market" presumption, which says that all traders who purchase stock in an efficient market are presumed to have relied on the accuracy of a company's public statements. To invoke this presumption, the plaintiffs seeking 23(b)(3) certification must prove that their shares were traded on an efficient market….

*Dukes*, 131 S.Ct. at 2552 n. 6. Thus, the Court must determine whether Plaintiffs are entitled to a presumption of reliance under a fraud-on-the-market theory.[3]

Plaintiffs claim they meet the requirements for a rebuttable presumption of classwide reliance as set forth by the Supreme Court in *Basic, Inc. v. Levinson*, 485 U.S. 224, 246-47 (1988). *See also Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S.Ct. 2398, 2408 (2014) ("*Halliburton II*") (affirming the presumption of reliance as set forth in *Basic*). To invoke the presumption, Plaintiffs must show that: (1) the alleged misrepresentations were publicly known; (2) AMD's stock traded on an efficient market; and (3) the relevant transaction took place between the time the misrepresentations were made and when the truthful disclosures were made. *Halliburton I*, 131 S.Ct. at 2185. Here, Plaintiffs meet the *Basic* requirements, and Defendants do not contend otherwise.[4]

---

[3] Plaintiffs also seek to invoke a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). Because the Court finds, *infra*, Plaintiffs can invoke a presumption of reliance under a fraud-on-the-market theory, the Court need not address whether they may also do so under *Affiliated Ute*. Plaintiffs' ability to prove reliance classwide under a fraud-on-the-market theory obviates any need for class members to prove reliance individually – the relevant concern at this juncture under Rule 23(b)(3).

[4] Defendants, in fact, concede the most commonly litigated issue: that AMD stock traded on an efficient market (second element). (Dkt. No. 155, "Oppo.," at 14:3.)

But the inquiry does not end there. As Defendants contend, the *Basic* presumption of reliance is rebuttable, not absolute. *Halliburton II*, 134 S.Ct. at 2415-16. Because the presumption's efficient market analysis is only an "indirect proxy for price impact," it must give way to direct "evidence showing that the alleged misrepresentation did not actually affect the stock's market price…." *Id*. If Defendants show that the alleged misrepresentations did not in fact affect the stock's price, then the *Basic* presumption will not apply. *Id*. at 2416. Critically, the Supreme Court's recent *Halliburton II* decision held that Defendants are entitled to introduce evidence to rebut the presumption of reliance at the class certification stage to defeat Plaintiffs' efforts to certify a class. *Id*.

To rebut the *Basic* presumption of reliance, Defendants must introduce evidence showing the alleged "misrepresentation[s] in fact did not lead to a distortion of price or that an individual plaintiff traded or would have traded despite his knowing the statement was false." *Basic*, 485 U.S. at 248. Defendants argue they can establish no actual price impact to rebut the presumption. In this context, Defendants bear the burden of proving no price impact. *See Halliburton II*, 134 S.Ct. at 2416-17; *see also In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2015 WL 5613150, at *4 (S.D.N.Y. Sept. 24, 2015).

In support of their argument, Defendants present the report of their purported expert Paul Gompers, Ph.D., who in turn relies on the report of Plaintiffs' purported expert Professor Chad Coffman, CFA. (*See* Gompers Report; Coffman Report.) Specifically, Dr. Gompers opines that his analysis – using data generated by Professor Coffman – shows no statistically significant increase in the price of AMD's stock on a majority of the 20 dates Defendants allegedly made material misrepresentations. (Gompers Report ¶¶ 39-40, Ex. 6.) Defendants argue that because "there was no statistically significant movement in the price of AMD's stock on" a majority of the misstatement dates, "Plaintiffs have not met their burden of proving that reliance can be established on a class-wide basis as to the majority of the alleged false statements." (Oppo. at 14:18-20; *id*. at 15:2-4.)

Defendants' argument fails for two key reasons. First, Defendants misconstrue the burden to show no price impact and erroneously place it with Plaintiffs. The burden is on Defendants.[5] Second,

---

[5] At oral argument, Defendants proposed a burden shifting analysis under which plaintiffs should assume the burden after a defendant's showing of no statistically significant price impact. The Court need not reach this issue because there is a showing of a statistically price impact here: Defendants' own expert report reflects statistically significant price decreases on the disclosure dates.

10

1 Defendants essentially invite the Court to focus exclusively on price impact at the time of a
2 misrepresentation, ignoring price impact at the time of a corrective disclosure.  Price impact in
3 securities fraud cases is not measured solely by price increase on the date of a misstatement; it can be
4 quantified by decline in price when the truth is revealed.  *See Halliburton II*, 134 S.Ct. at 2414 (the
5 *Basic* presumption of reliance may be rebutted by "evidence that the asserted misrepresentation (*or its*
6 *correction*) did not affect the market price of the defendant's stock") (emphasis supplied).  This is
7 because lack of a statistically significant price increase does not necessarily equate to lack of price
8 impact.  As Professor Coffman explains, a misrepresentation may not cause a statistically significant
9 change in price because misstatements are not made in a vacuum and other information can offset or
10 confound the effects of a particular misrepresentation. (Dkt. No. 165-2, "Coffman Rebuttal Report,"
11 ¶¶ 20-21.)  It is also possible that "a misstatement could serve to maintain the stock price at an
12 artificially inflated level without also causing the price to increase further."  *City of Livonia Emps.'*
13 *Ret. Sys. v. Wyeth*, 284 F.R.D. 173, 182 (S.D.N.Y. 2012) (quoting *In re Bristol-Myers Squibb Sec.*
14 *Litig.*, 2005 WL 2007004, at *17 (D.N.J. Aug. 17, 2005); *see In re Pfizer Inc. Sec. Litig.*, 936
15 F.Supp.2d 252, 264 (S.D.N.Y. 2013) ("a misstatement may cause inflation simply by maintaining
16 existing market expectations, even if it does not actually cause the inflation in the stock price to
17 increase on the day the statement is made"); *In re HealthSouth Corp. Sec. Litig.*, 257 F.R.D. 260, 282-
18 83 (N.D.Ala. 2009) (rejecting defendants' attempt to rebut *Basic* presumption because "[e]ven
19 without a demonstrated increase in share price directly related to the fraudulent statements, Plaintiffs
20 can travel on the fraud-on-the-market theory by showing that the negative truthful information that
21 caused the share price to drop was related to the prior false positive statements").  Thus, Defendants'
22 evidence that there was no statistically significant price impact on certain misstatement dates cannot
23 alone persuade where, as here, expert reports show statistically significant price impacts on each
24 disclosure date.  (Coffman Report ¶ 54; Gompers Report, Exh. 6; Coffman Rebuttal Report ¶ 17.)

25 Accordingly, Defendants have not introduced evidence that "severs the link between the
26 alleged misrepresentation and … the price received (or paid) by [Plaintiffs]," and their showing is
27 therefore not "sufficient to rebut the presumption of reliance."  *Basic*, 485 U.S. at 248.  The principal
28 case relied on by Defendants, *In re Moody's Corp. Securities Litig.*, proves the point.  274 F.R.D. 480

(S.D.N.Y. 2011). In *Moody's*, the district court found that defendants' rebuttal evidence showed "no period within the proposed class period where the alleged misrepresentation caused a statistically significant increase in the price or where a corrective disclosure caused a statistically significant decline in the price." *Id*. at 493. By contrast, here, Defendants' own expert acknowledges that: (1) AMD's stock price experienced statistically significant price increases on four days on which Defendants are alleged to have made 43 misstatements and/or omissions, and (2) AMD's stock price experienced a statistically significant price decrease on every one of the five days Defendants are alleged to have made corrective disclosures. Thus, *Moody's* highlights how Defendants fail to establish no price impact to rebut the *Basic* presumption of reliance.

Because Defendants have not rebutted the presumption of reliance under *Basic*, reliance is a question of law or fact "common to all class members" and introduces no "questions affecting only individual members." Fed.R.Civ.P. 23(b)(3).

### b. Damages Model

Next, Defendants rely on *Comcast* to suggest that Plaintiffs must provide proof of a classwide damages methodology to demonstrate predominance under Rule 23(b)(3). *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013). Defendants seem to interpret *Comcast* to preclude class certification simply because Plaintiffs do not show that damages can be measured on a classwide basis. The Court agrees that *Comcast* supports the general notion that damages questions should be considered when weighing issues of predominance. However, Defendants construe *Comcast* too broadly. The Ninth Circuit reads *Comcast* to demand only that plaintiffs "be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Levya v. Medline Industries, Inc*., 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast*, 133 S.Ct. at 1435); *accord Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 407 (2d Cir. 2015) ("the Court did not hold that proponents of class certification must rely upon a classwide damages model to demonstrate predominance"); *In re Deepwater Horizon*, 739 F.3d 790, 817 (5th Cir. 2014) (labeling Defendants' suggestion "a significant distortion of *Comcast*," which had already been rejected by several circuits, including the Ninth Circuit). Moreover, courts in this District have declined to adopt Defendants' suggested interpretation. *See, e.g., In re Diamond Foods, Inc., Sec. Litig*., 295 F.R.D. 240, 251 (N.D.Cal. 2013) (declining to "decide whether, as

12

1 defendant claims, *Comcast* requires that class certification be denied absent affirmative evidence that
2 damages are susceptible of measurement across the entire class") (internal quotations omitted). The
3 ultimate question, then, is not as Defendants suggest, but rather is whether "damages could feasibly
4 and efficiently be calculated once the common liability questions are adjudicated." *Levya*, 716 F.3d at
5 514.

6 To satisfy this requirement, Plaintiffs submit they will use the standard measurement of
7 damages in Section 10(b) securities cases – the "out-of-pocket" or "event study" method. (Coffman
8 Report ¶ 77.) As Plaintiffs argue, "[t]he event study method is an accepted method for the evaluation
9 of materiality damages to a class of stockholders in a defendant corporation." *Diamond Foods*, 295
10 F.R.D. at 251 (quoting *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F.Supp.2d 1005, 1014
11 (C.D.Cal. 2003)). This method first involves an event study that would measure the price reactions
12 upon the alleged corrective disclosures. (Coffman Report ¶ 77.) Second, it "measures damages as the
13 artificial inflation per share at the time of purchase less the artificial at the time of sale…." (*Id*.) Once
14 the artificial inflation is established through the two-step methodology, "[d]amages for any individual
15 class member could then be calculated formulaically" using objective data. (*Id*. ¶ 78.) Professor
16 Coffman opines that this method shows damages may be calculated on a classwide basis utilizing
17 standard methodology. (*Id*.)

18 In opposition, Defendants principally rely on *In re BP P.L.C. Sec. Litig.* ("*BP I*") for the
19 proposition that Plaintiffs' proposed methodology is too crude to account for the complex theories of
20 liability at issue in this case. 2013 WL 6388408 (S.D.Tex. Dec. 6, 2013). In *BP I* the district court
21 noted that "[s]imply invoking the event study methodology….[does] not assuage the Court that he
22 class-wide damages methodology proposed will track Plaintiffs' theories of liability," as required by
23 *Comcast*. *Id*. at *17. The district court's statement must be examined in light of the circumstances of
24 that case. Notably, the district court there identified concerns with plaintiffs' proposed methodology
25 in the context of plaintiffs' class claims. Namely, the district court found the proposed methodology
26 did not take into account two differing theories of fraud liability plaintiffs were pursuing: pre-
27 explosion and post-explosion. Upon a renewed motion for class certification, the district court found
28 plaintiffs' proposed methodology was only appropriate to use with respect to the post-explosion

subclass. *In re BP P.L.C. Sec. Litig.,* 2014 WL 2112823, at *12 (S.D.Tex. May 20, 2014) ("*BP II*"). On the other hand, the pre-explosion theory of liability concerned the court because it was "non-traditional" and "antithetical to the 'fraud-on-the-market' theory." *Id.*, at *4, *12. Thus, the district court concluded that the plaintiffs' proposed damages model with respect to the pre-spill subclass would involve an examination of every class members' "subjective motivations" – injecting individualized issues that would predominate over issues common to the class. *Id.* at *12.

Not so here. By contrast to the proposed classes in *BP I* and *BP II*, all of Plaintiffs' theories of liability rest upon a fraud-on-the-market theory of reliance. *See* Section IV.B.1.a, *supra*. Moreover, Plaintiffs propose the event study methodology for calculating damages – the very same methodology that the *BP* defendants argued was "the proper type of damages to be recovered by investors in securities fraud cases…." *BP II*, 2014 WL 2112823, at *10. Defendants do not "identify any specific complications that would make such a calculation impossible or ill-advised in this case." *Diamond Foods*, 295 F.R.D. at 252. Rather, Defendants point to potential flaws in Plaintiffs' theories that are ultimately immaterial to class certification.

More specifically, Defendants argue that Plaintiffs' simplistic damages model is insufficient because it reflects a misalignment between certain misrepresentations and later corrective disclosures. In other words, Defendants attack the "fit" between an alleged corrective disclosure and a prior alleged fraudulent statement. This is nothing more than an attack on loss causation, or Plaintiffs' ability to "show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss." *Halliburton I*, 131 S.Ct. at 2186 (emphasis in original). So too is Defendants' argument that Professor Coffman's methodology would not be able to "disaggregate the price inflation" attributable to particular theories of liability. (Oppo. at 24:16-21.) As explained by Professor Coffman, this inquiry is appropriately understood as a loss causation analysis. (Coffman Rebuttal ¶ 56.) *See, e.g., In re SLM Corp. Sec. Litig.*, 2012 WL 209095, at *5 (S.D.N.Y. Jan. 24, 2012) ("evaluating potentially confounding information on the disclosure dates, and determining whether it was material, is tantamount to a loss causation analysis"). These sorts of inquiries into loss causation are properly addressed by a fact-finder on the merits; Plaintiffs need not show loss causation

as a condition of class certification. *See Halliburton I*, 131 S.Ct. at 2186. Defendants' arguments are therefore misplaced.

Accordingly, Plaintiffs have shown not only that "damages could be feasibly and efficiently calculated once the common liability questions are adjudicated," but also that they are sufficiently capable of measurement on a classwide basis based on a common methodology.

\*\*\*

Because Plaintiffs are entitled to a presumption of reliance under *Basic* and they have adequately tied their damages model to their theories of recovery, the Court finds that Plaintiffs have demonstrated that "questions of law or fact [including reliance and damages] common to class members predominate over any questions affecting only individual members." Fed.R.Civ.P. 23(b)(3).

### 2. Superiority

The Court may certify a damages class under Rule 23(b)(3) only upon a finding that a class action is superior to individual suits. To make this determination, the Court considers the following four non-exhaustive factors: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3)(A)–(D). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1235 (9th Cir. 1996).

Here, the Court finds that each factor weighs in favor of class certification. First, individual class members do not have a great interest in controlling the litigation because the individual damages are likely small enough to be economically prohibitive as individual claims. *See Zinser v. Accufix Research Institute, Inc*., 253 F.3d 1180, 1190 (9th Cir. 2001), *am. on. den. reh'g,* 273 F.3d 1266 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action"). Second, Plaintiffs represent they are not aware of any litigation that concerns the allegations set forth in this case. Third, concentrating the litigation in this Court is

adequately justified because AMD maintains its headquarters in this District. *Cf. Zinser*, 253 F.3d at 1191-92 (finding superiority not satisfied where plaintiffs provided no adequate justification to concentrate the litigation in the proposed forum). Finally, with respect to difficulties in managing a class action, this factor involves the same considerations as Rule 23(b)(3)'s predominance requirement. *See Id*. at 1192 (finding the fourth superiority factor weighed against certification because each class member would have to "litigate numerous and substantial separate issues to establish his or her right to recover individually"). For the reasons discussed in Section IV.B.1, *supra*, there are no substantial individual issues to be litigated in this case. *See Nguyen v. Radient Pharm. Corp.*, 287 F.R.D. 563, 575 (C.D.Cal. 2012) ("If united by a common core of facts, and a presumption of reliance on an efficient market, class actions are the superior way to litigate a case alleging violations of securities fraud").

Accordingly, the Court is satisfied that a class action is superior to individual adjudication of the class members' claims.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification is **GRANTED**. The Court finds the following class appropriate for class treatment under Rule 23:

> all persons and entities that, during the period from April 4, 2011 through October 18, 2012, inclusive (the "Class Period"), purchased or otherwise acquired shares of the publicly traded common stock of Advanced Micro Devices, Inc. ("AMD") (collectively, the "Class"). Excluded from the Class are AMD and Rory P. Read ("Read"), Thomas J. Seifert ("Seifert"), Richard A. Bergman ("Bergman") and Dr. Lisa T. Su ("Su"), (collectively, the "Individual Defendants" and with AMD, the "Defendants"); members of the immediate families of the Individual Defendants; AMD's subsidiaries and affiliates; any person who was an officer or director of AMD or any of AMD's subsidiaries or affiliates during the Class Period; any entity in which any Defendant has a controlling interest; AMD's employee retirement and benefit plan(s); and the legal representatives, heirs, successors and assigns of any such excluded person or entity.

///

///

///

It is further **ORDERED** that lead plaintiffs Arkansas Teacher Retirement System and KBC Asset Management NV are appointed as representatives of the class and that the law firms of Labaton Sucharow LLP and Motley Rice LLC are appointed as class counsel.

This Order terminates Docket Number 143.

**IT IS SO ORDERED**.

Dated: March 16, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**