UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BABAK HATAMIAN, et al.,

    Plaintiffs,

    v.

ADVANCED MICRO DEVICES, INC., et al.,

    Defendants.

Case No. 14-cv-00226-YGR (JSC)

**ORDER RE: DISCOVERY DISPUTE**

Re: Dkt. Nos. 182, 190

In this securities fraud class action, Plaintiffs contend that defendant Advanced Microdevices, Inc. ("AMD") made misrepresentations regarding the launch of its "Llano" microprocessor, and in particular, misstatements regarding the Llano manufacturing plant's chip yield. As is the practice in such actions in which the plaintiffs must satisfy the heightened pleading standard of the PSLRA, the operative complaint relies upon statements from "confidential witnesses" who are generally identified by job title, employer, and dates of employment, but are not named. The confidential witnesses are mostly former employees of AMD and of the entity that produces the Llano chip at issue. Plaintiffs filed an amended complaint after one confidential witness (CW1) recanted his earlier statements.

Defendants subsequently moved to strike certain complaint allegations based on evidence that other confidential witnesses had recanted their earlier statements. In their opposition to Defendants' motion to strike, Plaintiffs referenced, among other things, Plaintiffs' counsel's investigator's notes and interview reports of confidential witnesses in support of their argument that they had a good faith basis to make the complaint allegations. (*See* Dkt. No. 74 at 18.)[1] The

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

district court denied the motion to strike. (Dkt. No. 107 at 4.)

Now pending before the Court is the parties' joint letter brief regarding a discovery dispute pertaining to three categories of documents. (Dkt. No. 190.)[2] Defendants seek an order compelling Plaintiffs to produce (1) communications with the confidential witnesses referenced in Plaintiffs' complaints; (2) contemporaneous notes of interviews with the confidential witnesses, including "Interview Reports"; and (3) Plaintiffs' policies and procedures governing such interviews. (*Id.* at 1.) Plaintiffs' written response does not dispute the relevance of the documents or contend that proportionality considerations render the discovery inappropriate. Instead, they contend that the documents at issue are shielded from disclosure as attorney work product. Having considered the parties' submissions, and having had the benefit of oral argument on May 5, 2016, the Court declines to compel production of the witness interview notes, reports and communications as they are protected work product, Plaintiffs have not waived the protection, and Defendants have not demonstrated substantial need for the documents. The Court also declines to compel production of the policies and procedures because, while not work product, they are not relevant to the merits of the case.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering a number of factors. Fed. R. Civ. P. 26(b)(1). However, the broad scope of permissible discovery is limited by, among other things, the attorney work product doctrine. *See* Fed. R. Civ. P. 26(b)(3). "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). "The work-product rule is . . . a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of*

---

[2] The parties initially filed their joint discovery letter at Docket Number 182, then filed a "corrected letter" at Docket Number 190. The content appears to be identical.

1  *Ariz.*, 881 F.2d 1486, 1494 (9th Cir. 1989) (citing Fed. R. Civ. P. 26(b)(3).).

2  Specifically, Rule 26(b)(3) states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, or agent")." Fed. R. Civ. P. 26(b)(3)(A). To qualify for protection against discovery under this doctrine, the documents or information must: (1) "be prepared in anticipation of litigation or for trial," and (2) "be prepared by or for another party or by or for that other party's representative." *In re Grand Jury Subpoena (Mark Torf/Torf Envt'l Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (internal quotation marks and citation omitted). The work product doctrine "shields both opinion and factual work product from discovery." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008).

Attorney work product may nonetheless be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). Even when the court finds disclosure warranted due to substantial need, it still must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). However, even "opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling." *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (citations omitted).

"[C]ourts are in accord that the attorney work-product privilege . . . may be waived, for example, when an attorney attempts to use the work product as testimony or evidence, or reveals it to an adversary to gain an advantage in litigation." *United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2005) (citing *United States v. Nobles*, 422 U.S. 225, 239-40 (1974)); *see also Pecover v. Elec. Arts Inc.*, No. 08-2820, 2011 WL 6020412, at *1 (N.D. Cal. Dec. 2, 2011) (noting that a party may waive work product protection where it discloses otherwise protected information to a third party and thereby enables an adversary to gain access to the information). The waiver

3

determination "requires a court to balance competing interests: the need for discovery with the right of an attorney to retain the benefits of his own research." *SNK Corp. of Am. v. Atius Dream Entm't Co.*, 188 F.R.D. 566, 571 (N.D. Cal. 1999) (internal quotation marks and citation omitted). Courts must base their waiver determinations on principles of fairness. *See id.* ("Like with waiver of the attorney-client privilege . . . fairness principles should be applied in considering whether work product immunity has been waived.").

The party asserting immunity from production bears the burden of establishing that the work product doctrine applies and has not been waived. *See United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002).

**DISCUSSION**

**II.     Communications with Confidential Witnesses and Contemporaneous Interview Notes**

A.     *Whether the Materials are Attorney Work Product*

The bulk of the materials at issue are communications with the confidential witnesses and the investigator's contemporaneous notes from those witness interviews, including interview reports. Plaintiffs contend that this type of information is "classic work product." Defendants insist that the documents contain a "verbatim recitation of each witness's factual statement, not any attorney's mental impressions[,]" and that courts routinely order such documents produced. (Dkt. No. 190 at 2 (citing *Johnson v. Bryco Arms*, No. 03 CV 2582, 02 CV 3029, 2005 WL 469612, at *5 (E.D.N.Y. Mar. 1, 2005), and *SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, No. 01 CIV. 9291 (JSM), 2002 WL 1455346, at *7 (S.D.N.Y. July 3, 2002)).) The truth lies somewhere in the middle, depending on the exact nature of the documents at issue.

Interview notes and witness summaries drafted by counsel are subject to attorney work product protection. *See Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981) (attorney memoranda based on witnesses' oral statements are protected by the work product doctrine); *see, e.g.*, *SEC v. Berry*, No. C07-04431 RMW (HRL), 2011 WL 825742, at *8-9 (N.D. Cal. Mar. 7, 2011) (finding witness interview notes and memoranda opinion work product); *SEC v. Roberts*, 254 F.R.D. 371, 375 (N.D. Cal. 2008) ("There is no dispute that the interview notes in question here are classic attorney work product—they comprise handwritten notes that include the

4

attorney's mental impressions, conclusions and opinions."); *SEC v. Schroeder*, No. C07-03798 JW (HRL), 2009 WL 1125579, at *7 (N.D. Cal. Apr. 27, 2009) (finding that notes and draft memoranda of witness interviews "fall within the ambit of the work product doctrine" where the attorneys submitted declarations supporting their contention that they were not "mere scriveners"); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL) 2005 WL 6296194, at *1 (N.D. Cal. Sep. 23, 2005) (attorney memoranda containing statements by confidential witnesses with very few quoted phrases or sentences is protected work product). Work product protection is not limited to attorneys, either; as long as the documents were created in anticipation of litigation, the doctrine applies to investigators and consultants working for attorneys. *See Torf*, 357 F.3d at 907 (citing *United States v. Nobles*, 422 U.S. 225, 239 (1975)); *see also Schoenmann v. FDIC*, 7 F. Supp. 3d 1009, 1013 (N.D. Cal. 2014) (noting that attorney work product includes the work of those employed by an attorney in investigating the case as reflected in interviews, statements, memoranda, and correspondence) (citation omitted). "[V]erbatim witness statements are generally considered ordinary work product, *see In re Convergent Techs. Second Half 1984 Sec. Litig.*, 122 F.R.D. 555, 559 (N.D. Cal. 1988), an attorney's notes and memoranda of statements are protected as opinion work product because they reveal the attorney's mental processes and show what facts the attorney deems legally significant." *Tierno v. Rite Aid Corp.*, No. C 05-02520, 2008 WL 2705089, at *4 (N.D. Cal. July 8, 2008). Thus, the witness statements at issue here are protected work product.

The cases Defendants cite do not persuade this Court otherwise. In *Johnson v. Bryco Arms*, No. 03 CV 2582, 02 CV 3029, 2005 WL 469612, at *5 (E.D.N.Y. Mar. 1, 2005), the court held that the witness statement was not work product because it was taken by an investigator "employed by an investigative agency, not the attorneys." *Id.* The statements at issue here, in contrast, were taken by Plaintiffs' counsel's investigator. *SR International Business Insurance* is equally unavailing. There, the court concluded that notes taken by non-lawyer representatives at a meeting before there was any foreseeable threat of litigation involving those entities were not protected work product. 2002 WL 1455346, at *8. Here, in contrast, an investigator at Plaintiffs' counsel's law firm conducted the interviews as part of the effort to draft the complaint in this

1  action—that is, in anticipation of litigation. In short, the interview materials are protected work
2  product.

3        B.    *Waiver*

4  The next question is whether Plaintiffs waived the work product privilege for the notes and
5  reports. "Disclosing a privileged communication or raising a claim that requires disclosure of a
6  protected communication results in waiver as to all other communications on the same subject."
7  *Hernandez v. Tannien,* 604 F.3d 1095, 1100 (9th Cir. 2010). Defendants' argument is based to
8  some extent on both theories: they contend that Plaintiffs' opposition to the motion to strike both
9  disclosed the sought-after material and raised a defense that requires disclosure of the work
10 product documents. The Court disagrees.

11       a.    Waiver by Disclosure

12 Plaintiffs did not disclose the confidential witness interview notes and reports in their
13 opposition to the motion to strike. The opposition described the investigatory interviews of CWs
14 6 and 7, quoting one of these CW's interview statements that is included in the complaint, and
15 more generally describing the content of communications between the investigator and CWs 6 and
16 7. (Dkt. No. 74 at 8-11.) For example, Plaintiffs' opposition represents that CW7 "discussed
17 various aspects of his employment, including the statements that are attributed to him in the
18 Complaint" and never contacted the investigator to assert that the statements were not accurate.
19 (Dkt. No. 74 at 10.) Plaintiffs did not disclose actual statements or communications beyond the
20 statements included in the complaint; including the statements in the complaint cannot be deemed
21 waiver or there would be no point to using confidential witnesses.

22 Nor did Plaintiffs disclose the protected information during depositions. Defendants
23 contend that Plaintiffs waived work-product protection by attempting to refresh CW2's
24 recollection during his deposition by "reading to him from internal call logs" and "showing CW
25 his correspondence with Plaintiffs' investigators." (Dkt. No. 190 at 2.) Plaintiffs counter that they
26 never revealed their protected notes to CW2 during that deposition, and instead simply asked CW2
27 if he had a basis to dispute counsel's representation that CW2's initial interview was 43 minutes
28 long and showed him the delivery slip evidencing his receipt of the Complaint after he stated he

1  had never received it. (*Id.* at 4.) At oral argument Defendants agreed that Plaintiffs never showed
2  the witnesses the notes or reports during the depositions. Thus Plaintiffs have not waived the
3  work product protection of the interview materials through disclosure.

4        b.   Waiver by Raising a Defense

5    Plaintiffs' opposition to the motion to strike also did not raise a defense "which in fairness
6  requires disclosure of the protected communication." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d
7  1156, 1162 (9th Cir. 1992). Defendants moved to strike complaint allegations regarding
8  statements of two confidential witnesses on the grounds that such statements were shams. As
9  support for their argument, they submitted declarations from the two witnesses essentially
10 disagreeing with what the Complaint alleges they said. In response, Plaintiffs submitted a
11 declaration from their investigator. The investigator declared that she "re-reviewed [her] notes
12 and the Interview Reports that I prepared" and that the accounts set forth in the Complaint "reflect
13 what is in the respective Interview Reports for these witnesses." (Dkt. No. 75 at 4 ¶ 12.) The
14 investigator also described Plaintiffs' counsel's policies and procedures concerning confidential
15 witness investigations as well as the steps she took in her investigation of this case, and attached to
16 the declaration her non-work product communications with the witnesses at issue. (*Id.* at ¶¶ 4-27;
17 Dkt. No. 75-1.) The district court denied the motion to strike. (Dkt. No. 107.) The court held that
18 it is only proper to strike allegations on the grounds that they are a sham when it is undisputed that
19 they are not true. (*Id.* at 3.)

20   Fairness to Defendants does not require finding that Plaintiffs' defense to the motion to
21 strike waived the work product protection of the witness notes and reports. This Court reads the
22 district court order denying the motion to strike as essentially holding:

23     Defendants contend that these witnesses say X and Plaintiffs insist
24     that the witnesses told them Y. On a motion to strike the court
cannot determine what the witnesses will say. The parties should
25     therefore conduct discovery, and take the witnesses' depositions,
and then the parties (and the court) will know whether their
26     testimony supports a finding of liability.

27 The parties are, in fact, now in the deposition and dispositive motion stage of the litigation. The
28 interview notes and reports are not relevant to whether it is more likely than not that Defendants

engaged in securities fraud. In other words, what matters is not what the witnesses told Plaintiffs' investigator, but what they said under oath when deposed by the parties. The Court cannot imagine how Plaintiffs can use their investigator's notes and reports as evidence to meet their burden of proof on summary judgment and Defendants have not explained otherwise. To the extent Plaintiffs attempt to do so, the Court will of course revisit the waiver argument. But they have not waived their work product going forward by merely defending Defendants' motion to strike.[3]

To find a waiver under the circumstances here would mean that any time a defendant challenges the accuracy of a complaint's allegations, and a plaintiff responds to that challenge by defending the good faith basis for making the claims, the plaintiff will be deemed to have waived work product. Such a holding would encourage more motions to strike as a means for obtaining an opponents' work product. It would encourage defendants to obtain declarations from witnesses that in any way contradict a complaint's allegations so the defendant can move to strike those allegations as a sham and then later argue work product waiver when the plaintiff defends the allegations. While the Court does not believe that such a strategy motivated Defendants' motion to strike here, it is the logical result of adopting their argument.

At oral argument Defendants advocated that fairness requires a waiver finding because the notes and reports are relevant to the "integrity of the process." Under this theory, however, it can reasonably be argued that Defendants too waived their work product with respect to *their* interview notes of these witnesses. Their "sham" argument is premised on the assumption that the declarations they obtained are accurate while the statements Plaintiff obtained were not or that Plaintiff made false statements in the complaint. But it is also possible that Defendants' declarations are not accurate, that the witnesses felt pressured to change their statements. Thus, the integrity of the process *on both sides* is potentially at issue. Why should Plaintiffs have to produce their interview notes but not Defendants if what we are concerned about is the integrity of the process? The answer is that neither party should have to produce their work product and

---

[3] Defendants might have a stronger argument for waiver if they sought these materials during the motion to strike proceedings; in other words, if they had objected that they could not fairly respond to Plaintiffs' motion to strike opposition without the referenced work product. But they did not. It is too late to make that argument now.

8

instead, as happened in this case and happens all the time when the parties disagree as to the facts, the parties should proceed to take depositions of the witnesses under oath with all parties present.

Although they have not said so in as many words, Defendants are really arguing that they need Plaintiffs' work product to determine whether counsel had a good faith basis for bringing the lawsuit in the first place. To the extent the good faith basis for the complaint's allegations becomes at issue in this action, through a Rule 11 or similar motion, Plaintiffs' counsel may very well have to waive the work product privilege to defend themselves. But the work product privilege would be meaningless if every time a witness testifies differently from what was alleged in a complaint, and the defendant raises that issue with the court, the party for whom the witness testifies is deemed to have waived the protection by responding that the party had a good faith basis for making the allegations in the first instance.

C.      *Substantial Need*

Even with no waiver, ordinary factual work product is discoverable when the moving party has a substantial need for the documents. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). Opinion work product, in contrast, "receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances." *Tennison v. City & Cnty. of San Francisco*, 226 F.R.D. 615, 623 (N.D. Cal. 2005) (citation omitted); *see also Holmgren*, 976 F.,2d at 577 ("A party seeking opinion work product must make a showing beyond the substantial need/undue hardship test required under Rule 26(b)(3) for non-opinion work product.").

Interview notes can be either factual work product, opinion work product, or both. *See In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 11-12 (D.D.C. 2008). To the extent that the investigator's contemporaneous notes and interview reports reflect only verbatim witness statements, they are only factual work product. *See In re Convergent Techs.*, 122 F.R.D. at 559. The Court need not conclude whether the materials are factual or opinion work product, as Defendants fail to establish need for the materials under either test.

Defendants argue only that "where courts find 'critical questions' about the accuracy of CW statements (as here), courts routinely order production of 'fact work product' like contemporaneous notes and communications." (Dkt. No. 190 at 3.) But Defendants have still not

explained why they need the notes and reports to defend the securities fraud allegations, especially since they have or will question the witnesses at issue under oath.  Courts often find no substantial need for otherwise protected materials where the requesting party has the opportunity to depose the witness about his earlier statements.  *See, e.g.*, *Schoenmann*, 7 F. Supp. 3d at 1014 (no substantial need to vitiate work product protection where the defendant had the opportunity to depose the witness to investigate relevant information); *Roberts*, 254 F.R.D. at 382 (no substantial need to vitiate work product protection where the defendant could depose the witnesses and ask them what they knew and when they knew it); *In re Grand Jury Proceedings*, 473 F.2d 840, 849 (8th Cir. 1973) ("Generally, if a witness is available to the party seeking discovery of his statement to opposing counsel, such discovery should not be allowed.") (quotation marks and citation omitted).

Defendants' cited cases do not persuade this Court otherwise.  *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. at 13-14, the moving party demonstrated that particular information it needed could only be gleaned from the sought after statements.  Here, Defendants have not even explained why they need the statements, let alone that they cannot obtain the sought-after information from other sources—including the witnesses themselves.  And in *Doubleday v. Ruh*, 149 F.R.D. 601, 608 (E.D. Cal. 1993), a malicious prosecution action, the court held that the defendants had made a showing of a substantial need for the charging district attorney's mental impressions.  Nothing even close to that showing has been made here.

**II.     Communications between Confidential Witnesses and Counsel**

Apart from statements made during the witness interviews, Defendants also seek communications between the confidential witnesses and Plaintiffs' counsel.  E-mails or letters from counsel to the witness are protected by the work product doctrine.  *See Schoenmann*, 7 F. Supp. 3d at 1014; *In re JDS Uniphase Corp. Sec. Litig.*, 2005 WL 6296194, at *2.  With respect to messages from the witness to counsel, some courts have concluded that they are protected work product, while others have not.  *Compare Schoenmann*, 7 F. Supp. 3d at 1014 ("[E]mail communications between [the third-party witness] and [counsel] . . . constitute work product and are protected from disclosure.") (citations omitted), *with In re JDS Uniphase Corp. Sec. Litig.*,

10

2005 WL 6296194, at *2 (concluding that messages from the witness to counsel are "verbatim statements by the witness that reflect the witnesses', not counsel's, mental impressions" and must therefore be produced). The touchstone appears to be whether the communications at issue constituted interview correspondence for the purposes of witness development. Such appears to be the case here: the communications were between Plaintiffs' counsel's investigators and confidential witnesses who were being contacted for the purposes of investigating claims to draft the Complaint. Accordingly, the communications are protected work product. Defendants have not argued that Plaintiffs waived work product protection as to these communications, nor have they demonstrated substantial need for them. Accordingly, the Court declines to order Plaintiffs to produce the communications.

### III.    Interview Policies and Procedures

As for the policies and procedures governing interviews with confidential witnesses, Plaintiffs have not met their burden of proving that these materials are protected work product. According to Plaintiffs' counsel, the policies and procedures apply generally to the law firm's investigation of confidential witnesses. (*See* Dkt. No. 75 ¶ 4.) Plaintiffs contend that because the policies were meant to be used when litigation is contemplated and imminent, the policies are subject to work-product protection. (Dkt. No. 190 at 4.)

"The phrase in anticipation of litigation extends beyond an attorney's preparation for a case in *existing* litigation, and includes documents prepared in anticipation of *foreseeable litigation*, even if no specific claim is contemplated." *ACLU of N. Cal. v. Dep't of Justice*, 70 F. Supp. 3d 1018, 1029-30 (N.D. Cal. 2014) (emphasis added) (internal quotation marks and citation omitted). However, there must be some identifiable prospect of litigation that led to the documents' creation. *Id.* at 1031-32. In contrast, documents that merely set forth a general strategy or template that might relate to or be relevant to future litigation are not prepared in anticipation of a particular trial. For example, in *ACLU of Northern California*, a court in this District concluded that Department of Justice guidelines "for obtaining location tracking orders from a court, or [that] discuss strategies, defenses, risks, and arguments that may arise in litigation" were not protected work product. 70 F. Supp. 3d at 1028, 1032. A template that does

11

1    not pertain "to a specific claim or consist[ ] of more than general instructions to its attorneys" is
2    not work product. *Id.* at 1032.
3         Policies and procedures describing interviews with confidential witnesses constitute such
4    general instructions to attorneys and investigators at Plaintiff's counsel's firm. Plaintiffs have not
5    offered any evidence that demonstrates that these policies and procedures were developed in
6    anticipation of specific litigation. Instead, they appear to concede that the policies were created
7    for litigation generally, without reference to any particular claim. The mere possibility of future
8    litigation is not enough. Nor is the fact that the policies were eventually applied to specific,
9    anticipated or actual litigation. Accordingly, the policies themselves are not subject to work
10   product protection.
11        The Court will nonetheless not compel their production because they are presently not
12   relevant to this case. As explained above, what is relevant now is what the witnesses testify to in
13   deposition and in declarations. Again, if Plaintiffs' counsel's good faith basis for making the
14   complaint allegations later becomes at issue, then the policy and procedures may be discoverable.
15   But as of now, they are not.

## CONCLUSION

17        Plaintiffs have met their burden of showing that the witness interview notes and reports
18   and communications are attorney work product and that the immunity has not been waived.
19   Defendants have not shown that they have a substantial need to the work product. Accordingly,
20   the Court DENIES the motion to compel the interview notes and reports and witness
21   communications.
22        Plaintiffs have not met their burden, however, of showing that their counsel's confidential
23   witness interview policies and procedures are protected work product. The Court nonetheless
24   declines to order their production as they are not presently relevant. While there may arrive a time
25   to litigate Plaintiffs' good faith basis for bringing this suit, that time is not now. The parties
26   should instead focus on litigating the merits of the case based on admissible evidence.
27        This Order disposes of Docket Nos. 182 and 190.
28        **IT IS SO ORDERED.**

Dated: May 6, 2016

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

13