1

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Katherine C. Lubin (State Bar No. 259826)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Liaison Counsel*

2

3

4

5

6

7

**LABATON SUCHAROW LLP**
Jonathan Gardner (*pro hac vice*)
Carol C. Villegas (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
140 Broadway
New York, NY  10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Co-Lead Counsel for the Class*

**MOTLEY RICE LLC**
James M. Hughes (*pro hac vice*)
William S. Norton (*pro hac vice*)
Max N. Gruetzmacher (*pro hac vice*)
Michael J. Pendell (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450

*Co-Lead Counsel for the Class*

8

9

10

11

12

13

14

15

16

17

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| BABAK HATAMIAN and LUSSA DENNJ SALVATORE, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>ADVANCED MICRO DEVICES, INC., RORY P. READ, THOMAS J. SEIFERT, RICHARD A. BERGMAN, AND LISA T. SU,<br><br>                  Defendants. | **CASE NO. 4:14-cv-00226-YGR (JSC)**<br><br>**CLASS ACTION**<br><br>**CLASS REPRESENTATIVES' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:   February 27, 2018<br>Time:  2:00 p.m.<br>Place:  Courtroom 1, 4th Floor<br>Judge:  The Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ...................................................................................................... 1

PRELIMINARY STATEMENT ........................................................................................ 2

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM ..................................... 4

ARGUMENT ..................................................................................................................... 5

I.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
UNDER THE APPLICABLE STANDARDS AND SHOULD BE APPROVED ............ 5

     A.    The Standards for Final Approval of Class Action Settlements .............................. 5

     B.    Application of the Ninth Circuit's Criteria Supports Final Approval
of the Settlement ................................................................................................... 7

          1.    The Strength of the Class Representatives' Case and the Risks
Associated with Continued Litigation ................................................. 7

               (a)    Falsity and Materiality Defenses ........................................ 8

               (b)    Scienter Defenses ................................................................ 9

               (c)    Loss Causation and Damages Challenges ........................ 10

          2.    The Complexity, Expense, and Likely Duration of Further Litigation ........ 12

          3.    The Risk of Maintaining Class-Action Status Through Trial ..................... 13

          4.    The Amount Offered in the Settlement ........................................................ 13

          5.    The Extent of Discovery Completed and the Stage of the Proceedings ....... 15

          6.    The Experience and Views of Counsel ....................................................... 16

          7.    The Presence of a Governmental Participant .............................................. 17

          8.    Reaction of the Class to Date ...................................................................... 17

               (a)    The Lackey Objection ....................................................... 18

               (b)    The Hutcheson Objection .................................................. 19

II.    THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR,
ADEQUATE, AND REASONABLE AND SHOULD BE APPROVED ...................... 20

CONCLUSION ................................................................................................................ 22

CASE NO. 4:14-CV-00226-YGR (JSC)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

i

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Churchill Vill. L.L.C. v. Gen. Elec.,*

5     361 F.3d 566 (9th Cir. 2004) ...........................................................................................6

6

*Class Plaintiffs v. City of Seattle,*

    955 F.2d 1268 (9th Cir. 1992) ...........................................................................5, 7, 20

7

*In re Cutera Sec. Litig.,*

8     610 F.3d 1103 (9th Cir. 2010) .........................................................................................8

9

*In re Delphi Corp. Sec. Derivative & ERISA Litig.,*

10     248 F.R.D. 483 (E.D. Mich. 2008) .................................................................................3

11

*Destefano v. Zynga Inc.,*

    No. 12-04007-JSC, 2016 WL 537946

12     (N.D. Cal. Feb. 11, 2016)....................................................................................13, 17

13

*Dura Pharms., Inc. v. Broudo,*

14     544 U.S. 336 (2005).......................................................................................................10

15

*Eisen v. Porsche Cars N. Am., Inc.,*

    No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006

16     (C.D. Cal. Jan. 30, 2014) ..............................................................................................16

17

*Garner v. State Farm Mut. Auto Ins. Co.,*

    No. CV-08-1365 CW (EMC), 2010 WL 1687832

18     (N.D. Cal. Apr. 22, 2010) ...............................................................................................6

19

*Glickenhaus & Co., v. Household Int'l, Inc.,*

20     787 F.3d 408 (7th Cir. 2015) .......................................................................................13

21

*In re Heritage Bond Litig.,*

    No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)...........................20

22

*Int'l Bd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.,*

23     No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)....................14

24

*Janus Capital Grp. Inc. v. First Derivative Traders,*

    564 U.S. 135 (2011)........................................................................................................13

25

*In re LeapFrog Enters., Inc. Sec. Litig.,*

26     527 F. Supp. 2d 1033 (N.D. Cal. 2007) ........................................................................8

27

*In re Linkedin User Privacy Litig.,*

28     309 F.R.D. 573 (N.D. Cal. 2015) ................................................................................12

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ................................................................................7

*McPhail v. First Command Fin. Planning, Inc.,*
    No. 05cv179-IEG- JMA, 2009 WL 839841
    (S.D. Cal. Mar. 30, 2009)......................................................................................14

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F. 3d 454 (9th Cir. 2000) ..................................................................6, 7, 13, 15

*Mendoza v. Tucson Sch. Dist. No. 1,*
    623 F.2d 1338 (9th Cir. 1980) ...............................................................................4

*In re Mercury Interactive Corp. Sec. Litig.,*
    618 F.3d 988 (9th Cir. 2010) ............................................................................5, 19

*Nat'l Rural Telecomm. Coop. v. DirectTV Inc,*
    221 F.R.D. 523 (C.D. Cal. 2004) ..........................................................................17

*Nguyen v. Radient Pharms. Corp.,*
    No. SACV 11-00406, 2014 WL 1802293
    (C.D. Cal. May 6, 2014) ........................................................................................12

*Officers for Justice v. Civil Serv. Commc'r,*
    688 F.2d 615 (9th Cir. 1982) .........................................................................5, 6, 7

*In re Omnivision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................13, 14, 17, 20

*In re Portal Software, Inc. Sec. Litig.,*
    No. C-03-5138 VRW, 2007 WL 4171201
    (N.D. Cal. Nov. 26, 2007)................................................................................6, 16

*Redwen v. Sino Clean Energy, Inc.,*
    No. 11-3936, 2013 U.S. Dist. LEXIS 100275
    (C.D. Cal. July 9, 2013) ........................................................................................20

*Rodriquez v. W. Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) .........................................................................16, 17

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ...........................................................................6, 12

*In re TracFone Unlimited Serv. Plan Litig.,*
    112 F. Supp. 3d 993 (N.D. Cal. 2015) ....................................................................6

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976) ..................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)..................................................................................................14

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).....................................12

**Statutes**

 15 U.S.C. §78u-4(a)(4) ..........................................................................................................19


**Rules**

Fed. R. Civ. P. 23 ..............................................................................................................1, 20

Fed. R. Civ. P. 23(e) ...........................................................................................................2, 6

Fed. R. Civ. P. 23(c)(1)(C) ....................................................................................................13

CASE NO. 4:14-CV-00226-YGR (JSC)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

iv

1

**NOTICE OF MOTION**

2

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that on February 27, 2018, at 2:00 p.m., or as soon thereafter

4

as they may be heard, Class Representatives Arkansas Teacher Retirement System ("ATRS")

5

and KBC Asset Management NV ("KBC"), on behalf of themselves and all members of the

6

certified Class, will move this Court for orders, pursuant to Rule 23 of the Federal Rules of Civil

7

Procedure: (1) granting final approval of the proposed Settlement of the Action; and (2)

8

approving the proposed Plan of Allocation for the net proceeds of the Settlement.

9

This motion is supported by the following memorandum of points and authorities and the

10

accompanying Joint Declaration of Jonathan Gardner and James M. Hughes in Support of Class

11

Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation

12

and Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, dated

13

January 23, 2018 ("Joint Declaration" or "Joint Decl."), and the exhibits attached thereto.[1]

14

Proposed orders will be submitted with the Class Representatives' reply submission on

15

February 13, 2018, after the February 6, 2018 deadline for requesting exclusion or objecting has

16

passed.

17

**STATEMENT OF ISSUES TO BE DECIDED**

18

19

(1) Whether the Court should grant final approval to the proposed class action

20

Settlement; and

21

(2) Whether the Court should approve the proposed Plan of Allocation.

22

23

24

25

---

[1] The Joint Declaration contains a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by the Class in pursuing litigation, the negotiations that led to a settlement, among other matters. All exhibits referenced herein are annexed to the Joint Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___-___." The first numerical reference is to the designation of the entire exhibit attached to the Joint Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

ATRS and KBC ("Lead Plaintiffs" or "Class Representatives") through their counsel Labaton Sucharow LLP ("Labaton Sucharow") and Motley Rice LLC ("Motley Rice," and collectively with Labaton Sucharow, "Class Counsel"), respectfully submit this memorandum of points and authorities in support of their motion, pursuant to Federal Rule of Civil Procedure 23(e), requesting (i) final approval of the proposed settlement of the above-captioned class action (the "Settlement"); and (ii) approval of the proposed Plan of Allocation.[2]

## PRELIMINARY STATEMENT

As detailed in the Stipulation, Advanced Micro Devices, Inc. ("AMD" or the "Company"), and Rory P. Read, Thomas J. Seifert, Richard A. Bergman, and Lisa T. Su (the "Individual Defendants" and with AMD, the "Defendants") have agreed to the payment of $29,500,000 in cash, which has been paid by Defendants' insurers, to secure a settlement of the claims in the Action and all Released Claims.  The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court.  ECF No. 333-1.  This recovery is a very favorable result for the Class and avoids the risks and expenses of continued litigation, including the risk of recovering less than the Settlement Amount, or no recovery at all.

AMD is a multinational semiconductor company.  The Class Representatives' claims center on the launch of AMD's "Llano" microprocessor, a processor that combined a Central Processing Unit with a Graphics Processing Unit onto a single computer chip.  As detailed in the operative complaint, the Class Representatives alleged that Defendants made materially false and misleading statements and omissions concerning Llano's production, launch, demand, margins, and sales, among other things, allegedly in violation of the Securities and Exchange Act of 1934.  The Class Representatives further alleged that when certain disclosures pertaining to Llano's production and supply, and the related impact on AMD's financial results and inventories, were

---

[2]     All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and Agreement of Settlement, dated as of October 9, 2017 (the "Stipulation," ECF No. 333-1).

CASE NO. 4:14-CV-00226-YGR (JSC)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

2

1   made, AMD's stock price fell, allegedly damaging Class Members.  Defendants have vigorously

2   denied the allegations and are not admitting any wrongdoing in the Settlement.

3          As described below and in the accompanying Joint Declaration, the decision to settle was

4   informed by four years of hard-fought litigation involving a comprehensive investigation;

5   extensive fact and expert discovery (involving the production of approximately 2.5 million pages

6   of documents, 18 merits depositions, seven confidential witness depositions, seven expert

7   depositions, and 11 expert reports); certification of a class; intensive summary judgment and

8   *Daubert* motion practice; and two rounds of mediated full-day, in-person, and arm's-length

9   negotiations.  The first mediation session was conducted by the Honorable Judge Layn R.

10   Phillips (Ret.), a former United States Attorney and United States District Judge who is one of

11   the most well respected mediators in the country for securities fraud class actions.[3]  The second

12   mediation session, which ultimately resulted in the Settlement, was conducted by both Judge

13   Phillips and the Honorable Gary A. Feess (Ret.), a former United States District Judge in the

14   Central District of California.

15          The $29.5 million recovery represents approximately 7% of the maximum damages

16   estimated by the Class Representatives' damages expert, assuming the Class prevailed in all

17   respects through summary judgment and trial.  *See* Joint Decl. ¶¶5, 82.  Class Counsel, who have

18   extensive experience and expertise in prosecuting securities class actions, believe that the

19   Settlement represents a very favorable resolution of this complex litigation in light of the specific

20   risks of continued litigation.  The Class Representatives, who were actively involved in the

21   Action, have approved the Settlement.  *See* Declaration of George Hopkins on Behalf of ATRS

22   (Ex. 1) and Declaration of Bart Elst on Behalf of KBC (Ex. 2).

23          Accordingly, the Class Representatives respectfully request that the Court grant final

24   approval of the Settlement.  In addition, the Plan of Allocation, which was developed with the

25

26

---

[3]       *See, e.g.*, *In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D.

27   Mich. 2008) (speaking of Judge Phillips, "the Court and the parties have had the added benefit of the insight and considerable talents of a former federal judge who is one of the most prominent

28   and highly skilled mediators of complex actions").

1    assistance of the Class Representatives' damages expert, is a fair and reasonable method for

2    distributing the Net Settlement Fund and should also be approved by the Court.

3    <u>**PRELIMINARY APPROVAL AND THE NOTICE PROGRAM**</u>

4        On October 25, 2017, the Court entered an order preliminarily approving the Settlement

5    and approving the proposed forms of notice, after giving the relief requested careful

6    consideration (the "Preliminary Approval Order") (ECF No. 339).  Pursuant to and in

7    compliance with the Preliminary Approval Order, through records maintained by AMD's

8    transfer agent, information gathered from the previous mailing of the notice of pendency of the

9    Action (the "Class Notice"), and information from brokerage firms, beginning on November 8,

10    2017, Epiq Systems, Inc. ("Epiq"), the Court-appointed Claims Administrator, caused the

11    Settlement Notice and Proof of Claim and Release form (together, the "Claim Packet") to be

12    mailed to potential Class Members.  *See* Declaration of Alexander Villanova of Epiq, Ex. 3 ¶¶3-

13    8.  A total of 222,130 Claim Packets have been mailed as of January 22, 2018.  *Id*. ¶9. On

14    November 20, 2017, the Summary Notice was published in *Investor's Business Daily* and was

15    issued over *PR Newswire*.  *Id*. ¶11 and Exhibit C attached thereto.  The Settlement Notice and

16    Proof of Claim were posted on the case-dedicated website established by Epiq for purposes of

17    this Action.  *Id*. ¶17.

18        The Settlement Notice described, *inter alia*, the claims asserted in the Action, the

19    contentions of the Parties, the course of the litigation, the terms of the Settlement, the maximum

20    amounts that would be sought in attorneys' fees and expenses, the Plan of Allocation, the right to

21    object to the Settlement, the right to seek to be excluded from the Class, and the right to opt-back

22    into the Class (for those who previously requested exclusion in connection with the Class

23    Notice).  *See generally* Ex. 3-A.  The Settlement Notice also gave the deadlines for objecting,

24    seeking exclusion, or opting back into the Class, and advised potential Class Members of the

25    scheduled Settlement Hearing before this Court.  *Id*.

26        The Ninth Circuit has held that notice must be "reasonably calculated, under all the

27    circumstances, to apprise interested parties of the pendency of the action and afford them an

28    opportunity to present their objections."  *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338,

CASE NO. 4:14-CV-00226-YGR (JSC)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

4

1   1351 (9th Cir. 1980) (citation omitted).  The Ninth Circuit has also ruled that the objection

2   deadline should fall after motions in support of approval and attorneys' fees and expenses have

3   been filed.  *See, e.g., In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)

4   (requiring that fee motion be made available to the class before the deadline for objecting to the

5   fee).  The Class Representatives respectfully submit that the notice program utilized here readily

6   meets these standards.

7     To date, the Class's reaction to the proposed Settlement has been positive.  While the

8   deadline (February 6, 2018) for requesting exclusion or objecting to the Settlement has not yet

9   passed, to date there have only been six new requests for exclusion (some of which are

10   duplicates of requests submitted in connection with the Class Notice and none of which are from

11   an institution or pension fund), two objections to the proposed Settlement, and no objections to

12   the Plan of Allocation.[4]

## ARGUMENT

13

14   **I.** **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER THE APPLICABLE STANDARDS AND SHOULD BE APPROVED**

15

16     **A.** **The Standards for Final Approval of Class Action Settlements**

17     Strong judicial policy favors settlement of class actions.  *Class Plaintiffs v. City of*

18   *Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  It is well established in the Ninth Circuit that

19   "voluntary conciliation and settlement are the preferred means of dispute resolution."  *Officers*

20   *for Justice v. Civil Serv. Comm'r*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "there is an

21   overriding public interest in settling and quieting litigations," and this is "particularly true in

22   class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Class-

23   action suits readily lend themselves to compromise because of the difficulties of proof, the

24   uncertainties of the outcome, and the typical length of the litigation.  Settlements of complex

25   cases such as this one greatly contribute to the efficient utilization of scarce judicial resources

26   _____

[4] The objections are discussed below.  A full report on the requests for exclusion submitted in response to the Settlement Notice will be provided with the Class Representatives' reply papers on February 13, 2018.  The "nutritional" tables requested by the Court during the October 24, 2017 preliminary approval hearing will also be provided with the reply papers.  On February 20, 2018, the Class Representatives will submit a report on the claims submitted to date.

27

28

1  and achieve the speedy resolution of claims.  *See, e.g.*, *Garner v. State Farm Mut. Auto Ins. Co.*,

2  No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement

3  avoids the complexity, delay, risk and expense of continuing with the litigation and will produce

4  a prompt, certain and substantial recovery for the Plaintiff class.") (citation and internal

5  quotation marks omitted).

6       Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the

7  compromise of claims brought on a class basis.  The standard for determining whether to grant

8  final approval to a class action settlement is whether the proposed settlement is "fundamentally

9  fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 458 (9th Cir.

10  2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *In re TracFone*

11  *Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 997 (N.D. Cal. 2015).  In making this

12  determination, courts in the Ninth Circuit consider and balance a number of factors, including:

13  (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
duration of further litigation; (3) the risk of maintaining class action status throughout the
14  trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the
stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a
15  governmental participant; and (8) the reaction of the class members of the proposed
settlement.

16  *See Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*,

17  150 F.3d at 1026); *Officers for Justice,* 688 F.2d at 625 (same).  Courts have also considered "the

18  role taken by the lead plaintiff in [the settlement] process, a factor somewhat unique to the

19  PSLRA."  *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *3

20  (N.D. Cal. Nov. 26, 2007) (internal citation omitted).  Not all of these factors will apply to every

21  class action settlement and, under certain circumstances, one factor alone may prove

22  determinative in finding sufficient grounds for court approval.  *See Torrisi v. Tucson Elec.*

23  *Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

24       The determination of whether a settlement is fair, adequate, and reasonable is committed

25  to the Court's sound discretion.  *See Mego*, 213 F.3d at 458 ("Review of the district court's

26  decision to approve a class action settlement is extremely limited.") (citing *Linney v. Cellular*

27  *Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)).  In applying the pertinent factors, the Court

28

1   need not reach conclusions about the merits of the case, in part because the Court will be called

2   upon to decide the merits if the action proceeds. *See Officers for Justice*, 688 F.2d at 625

3   ("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the

4   merits. . . .   [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and

5   expensive litigation that induce consensual settlements."). The Court's discretion in assessing

6   the fairness of the settlement is also circumscribed by "the strong judicial policy that favors

7   settlements, particularly where complex class action litigation is concerned." *Linney*, 151 F.3d at

8   1238 (quoting *Officers for Justice*, 688 F.2d at 626); *Class Plaintiffs*, 955 F.2d at 1276 (same).

     **B.**    **Application of the Ninth Circuit's Criteria Supports
Final Approval of the Settlement**

          **1.**    **The Strength of the Class Representatives' Case and
the Risks Associated with Continued Litigation**

12         To determine whether the proposed Settlement is fair, reasonable, and adequate, the

13   Court must balance the risks of continued litigation against the benefits afforded to class

14   members and the certainty of a recovery. *See Mego*, 213 F.3d at 458. Although the Class

15   Representatives believe that the case against Defendants is strong, that confidence must be

16   tempered by the fact that the Settlement is beneficial and that every case involves significant risk

17   of no recovery, particularly in a complex case such as the one at bar. However, here, there was

18   no restatement, parallel governmental investigation, or criminal indictment of AMD or any of the

19   Individual Defendants, which would have aided the Class Representatives in proving certain

20   elements of the case, like materiality, falsity, and scienter. There is no question that to prevail

21   here, the Class Representatives would have confronted a number of challenges. The Class

22   Representatives would have had to argue, and the Court would rule on, the pending *Daubert* and

23   summary judgment motions. Defendants' *Daubert* motions sought the exclusion of each of the

24   Class Representatives' experts. Their summary judgment motion sought judgment as a matter of

25   law on each element of the Class Representatives' case, *i.e.*, falsity, materiality, scienter, and loss

26   causation. There was no guarantee that the claims would survive these challenges, and, even if

27   they did, how the Court's rulings would affect the future prosecution of the claims.

28

1

### (a)  Falsity and Materiality Defenses

2          The Class Representatives faced substantial risks in proving that Defendants' statements

3   and alleged omissions were false and misleading at the time that they were made or occurred.

4   *See* Joint Decl. ¶¶71-73.  In their summary judgment motion, Defendants argued, principally,

5   that plaintiffs cannot prove material falsity because, as discussed below, many of the challenged

6   statements are inactionable puffery, forward-looking, or are indisputably accurate.  *Id*. ¶59.  If

7   Defendants' motion were successful, the Class Representatives' case would have been severely

8   curtailed, if not over.

9          For instance, Defendants have contended that at least 27 of the at-issue misstatements

10  include non-actionable puffery.  Defendants would argue that there is no objective standard by

11  which to measure whether Llano yield was "good" and whether demand for Llano was "strong"

12  and that courts have consistently rejected claims based on similar statements.  *See, e.g., In re*

13  *Cutera Sec. Litig*., 610 F.3d 1103, 1111 (9th Cir. 2010) (affirming dismissal of claims based on

14  "mildly optimistic, subjective assessment[s]"); *In re LeapFrog Enters., Inc. Sec. Litig*., 527 F.

15  Supp. 2d 1033, 1050 (N.D. Cal. 2007) (statements including "consumer demand for our . . .

16  products is more vibrant than ever" and "we continue to make strong growth in supply chain" are

17  "soft statements or loose predictions that do not give rise to a securities fraud claim").

18  Defendants would also point the jury to "cautionary language" in AMD's public statements that

19  warned of the risks associated with AMD's financial projections.  For example, as they argued

20  on summary judgment, the Company highlighted that difficulty in achieving "anticipated

21  manufacturing yields" could cause "supply shortages" that could "have a material adverse

22  impact" on "revenue or gross margins."  Joint Decl. ¶71.

23         Defendants would also contend that plaintiffs could not show that any of the supply,

24  demand, and margin statements were materially false given AMD's earnings guidance, which

25  was not challenged by plaintiffs, and other facts known to AMD when the statements were made.

26  For example, Defendants would likely argue, with respect to supply statements made on April 4,

27  2011 (the first day of the Class Period), that the evidence shows that Llano yields were precisely

28  "at target" and that GlobalFoundries' yield projections were increasing.  As to the demand

1    statements, Defendants would argue that the plaintiffs' failure to challenge AMD's revenue

2    guidance is a concession that Defendants' statements regarding demand for Llano were accurate

3    when made.  *Id.* ¶72.

4    The Class Representatives would contend that Defendants' materiality and falsity

5    defenses, among other things, ignore evidence that relevant industry standards exist and that

6    other equally key manufacturing metrics had been deteriorating during the Class Period.  Piecing

7    this information together for a jury would have been a substantial undertaking and there were no

8    guarantees that the jury would credit the Class Representatives' interpretation of the evidence

9    over that of Defendants.  *Id.*

10                            **(b)      Scienter Defenses**

11   Defendants cannot be liable under the Securities Exchange Act of 1934 unless they acted

12   with scienter – *i.e.*, knowledge of falsity, or reckless disregard for whether their statements were

13   true or false.  Here, Defendants have strongly contested that the Class Representatives would be

14   able to prove that Defendants knew or recklessly disregarded facts indicating that their public

15   statements about Llano yield, manufacture, supply, demand, sales, and margins were false when

16   made.  Joint Decl. ¶¶74-76.

17   For example, Defendants would argue that the evidence shows that on April 4, 2011, the

18   first day of the Class Period, they did not know what would ultimately occur later that year

19   regarding Llano supply and, in particular, about the supply shortage that would emerge in 3Q11.

20   Defendants would also offer evidence that AMD did not begin to learn until September 2011 that

21   GlobalFoundries would not be able to supply sufficient units of Llano for AMD to meet its

22   financial guidance.  Defendants would also argue that they were reasonable in their belief that

23   AMD would have sufficient Llano supply in 2011 and demand would carry into 2012.  *Id.* ¶74.

24   Another challenge would have been the fact that the Individual Defendants accumulated

25   AMD stock during the Class Period, and that none stood to personally profit from the alleged

26   wrongdoing – leaving a jury to question their motive for violating the Exchange Act.  *Id.* ¶75.

27   In response, the Class Representatives would seek to present evidence that the

28   Defendants had substantial information concerning the Llano issues, through the receipt of

1   reports and attending meetings, sufficient to survive summary judgment. *Id*. ¶76.  Nonetheless,

2   even if the Court finds that there is a genuine issue of material fact as to Defendants' scienter,

3   there remains significant uncertainty as to how a jury would ultimately resolve such factual

4   issues if the claims proceeded to trial.

5                        **(c)      Loss Causation and Damages Challenges**

6          Another risk in continuing the litigation is the difficulty of proving loss causation and

7   damages, which were hotly contested by Defendants at summary judgment and in their *Daubert*

8   motions, and would continue to be challenged at trial and post-trial proceedings and appeals. *See*

9   Joint Decl. ¶¶77- 83.  To succeed at trial "a plaintiff [must] prove that the defendant's

10  misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic

11  loss." *Dura Pharms*., *Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  If a jury were to find that any of

12  the five alleged corrective disclosures were not truly corrective, the potential recovery for the

13  Class would be significantly diminished.

14         Principally, Defendants have argued that the "corrective" disclosures do not correct the

15  allegedly false statements.  For example, Defendants have argued that the only information

16  "corrected" by the announcement on September 28, 2011 – the first alleged disclosure that AMD

17  would fall short of its previously issued guidance and listing a limited supply of Llano as one of

18  the reasons for the miss – is AMD's 3Q11 earnings guidance, which plaintiffs do not challenge.

19  In fact, Defendants have argued that since each alleged corrective disclosure, particularly those

20  in the later part of the Class Period, occurred when the Company announced quarterly financial

21  results, including that AMD missed its earnings guidance, and that plaintiffs never challenged

22  AMD's earnings guidance as false, there can be no loss causation.  Joint Decl. ¶¶78.  This was a

23  centerpiece of Defendants' summary judgment motion.  *Id*. ¶¶59, 61.

24         Defendants would also argue that even if guidance miss announcements could be broadly

25  corrective of misstatements ***unrelated*** to guidance, the Class Representatives cannot show that

26  the facts that caused the stock price to drop after the alleged disclosures were the very facts that

27  were concealed at the time of the challenged statements.  *Id*. ¶78.

28

1    Relatedly, the Class Representatives bear the burden of separating the effect of non-fraud

2    factors from the revelation of the alleged fraud.  Each of the alleged corrective disclosures

3    included multiple pieces of information that admittedly were not related to the alleged fraud.

4    The Class Representatives believe that they would be able to adequately disentangle those

5    unrelated factors and that the methodology of their expert, Chad Coffman, is proper given that

6    Mr. Coffman's event study controls for market and industry wide effects and identifies the

7    relevant percentage of each revenue miss attributable to Llano for each corrective disclosure.  *Id*.

8    ¶80.  However, Defendants have contended that Mr. Coffman's event study is flawed and should

9    be excluded before trial.  *Id*. ¶¶64, 81.

10   Defendants have also argued that the Class Representatives failed to account for July 22,

11   2011 and October 28, 2011 as inflation causing dates, which they argue should offset the price

12   effect of the alleged corrective disclosures and reduce Class wide damages from the beginning of

13   the Class Period.  *Id*. ¶79.

14   Defendants would also dispute the Class Representatives' expert's damages

15   methodology.  Defendants would continue to challenge Mr. Coffman's analyses, arguing, among

16   other things, that he failed to conduct an adequate analysis to determine which of the challenged

17   statements were material to the market and did not determine which corrective disclosures

18   corrected any particular prior statements.  *Id*. ¶81.

19   The Class Representatives' expert has estimated maximum aggregate damages to be

20   approximately $430 million, if the Class Representatives were to prevail on all of their claims,

21   including all five alleged corrective disclosures.  Accordingly, the proposed Settlement

22   represents a recovery of approximately 7% of that maximum amount.  Of course if Defendants

23   prevailed at summary judgment on their argument that there is no loss causation, then the Class

24   would recover nothing at all.  If, alternatively, Defendants prevailed at summary judgment on

25   their argument that the disclosures in the later part of the Class Period (*i.e*., in connection with

26   claims related to the weak demand for Llano in 2012) must be eliminated, the Class

27   Representatives would be left with only one corrective disclosure (September 28, 2011), and

28

1    maximum aggregate damages of approximately $210 million, in which case the proposed

2    Settlement would represent a recovery of approximately 14%. *Id*. ¶82.

3         Resolution of these loss causation and damages issues would involve dense and complex

4    testimony of expert witnesses and the Parties would end up in a "battle of the experts" where it

5    would be impossible to predict with any certainty which arguments would find favor with a jury.

6    *See, e.g.*, *Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL

7    1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where

8    "[p]roving and calculating damages required a complex analysis, requiring the jury to parse

9    divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that

10   analysis is inherently difficult to predict and risky") (citation omitted); *In re Warner Commc'ns*

11   *Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y 1985) (approving settlement where "it is virtually

12   impossible to predict with any certainty which testimony would be credited, and ultimately,

13   which damages would be found to have been caused by actionable, rather than the myriad

14   nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

15   The outcome could well have depended on whose testifying expert the jury believed or even

16   whether the jury was able to follow the economic theories used by the experts.

17        In sum, as a result of the various defenses described above and in the Joint Declaration, it

18   is possible that, even if the Court or a jury were to find that Defendants knowingly made

19   misleading statements, in the end Class Members could recover nothing.

20              **2.      The Complexity, Expense, and Likely Duration of Further Litigation**

21        Final approval is also supported by the complexity, expense, and likely duration of

22   continued litigation. *See Torrisi*, 8 F.3d at 1376 ("the cost, complexity and time of fully

23   litigating the case all suggest that this settlement was fair"). "Generally, unless the settlement is

24   clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation

25   with uncertain results." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal.

26   2015) (citation omitted).

27        Here, the complexity, expense, and duration of preparing and trying the case before a

28   jury, subsequent post-trial motion practice, and a likely appeal of the Court's rulings on class

1   certification, summary judgment, post-trial motions, and a jury verdict would be significant.

2   Barring a settlement, there is no question that this case would be litigated for years, taking a

3   considerable amount of court time and costing millions of additional dollars, with the possibility

4   that the end result would be no better for the class, and might be worse.  *See Destefano v. Zynga*

5   *Inc.,* No. 12-04007-JSC, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("continuing

6   litigation would not only be costly – representing expenses that would take away from any

7   ultimate classwide recovery – but would also delay resolution and recovery for Settlement Class

8   Members"); *cf. Glickenhaus & Co., v. Household Int'l, Inc.,* 787 F.3d 408 (7th Cir. 2015)

9   (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss

10   causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative*

11   *Traders*, 564 U.S. 135 (2011)).

12       The Settlement, therefore, provides sizeable and tangible relief to the Class now, without

13   subjecting Class Members to the risks, duration, and expense of continuing litigation.  This

14   factor weighs strongly in favor of final approval of the Settlement.

15                   **3.    The Risk of Maintaining Class-Action Status Through Trial**

16       While the Class Representatives are confident that the certification of the Class would

17   have remained intact, under Rule 23(c)(1)(C), a Court's prior grant of certification "may be

18   altered or amended before final judgment."  It is possible, therefore, that the Class could be

19   decertified or modified if the litigation were to continue.  *See In re Omnivision Techs., Inc.*, 559

20   F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (noting that even if a class is certified, "there is no

21   guarantee the certification would survive through trial, as Defendants might have sought

22   decertification or modification of the class").

23                   **4.    The Amount Offered in the Settlement**

24       In evaluating the fairness of a settlement, a fundamental question is how the value of the

25   settlement compares to the amount the class potentially could recover at trial, discounted for risk,

26   delay, and expense.  Thus, "[i]t is well-settled law that a cash settlement amounting to only a

27   fraction of the potential recovery does not per se render the settlement inadequate or unfair."

28   *Mego*, 213 F.3d at 459 (citation omitted).  Indeed, "[t]here is a range of reasonableness with

1    respect to a settlement – a range which recognizes the uncertainties of law and fact in any

2    particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

3    completion[.]"  *Wal-Mart Stores*, *Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

4        The proposed $29.5 million Settlement is well within the range of reasonableness in light

5    of the potential recovery at trial and the risks of continued litigation.  As noted above, the Class

6    Representatives' damages expert has estimated that if liability were to be established with

7    respect to all of the claims, including all five alleged corrective disclosures, the maximum

8    aggregate damages recoverable at trial would be approximately $430 million.  As a percentage of

9    this maximum estimate of damages, the $29.5 million Settlement represents a recovery of

10   approximately 7%.  Joint Decl. ¶¶5, 82.  Of course this estimated recovery assumes that the

11   Class Representatives were able to establish damages based on all alleged corrective disclosures,

12   which was vigorously contested by Defendants in connection with summary judgment and would

13   be contested at trial and beyond.

14       Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"),

15   courts have approved settlements that recovered a similar, or smaller, percentage of maximum

16   damages.  *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG- JMA,

17   2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering

18   7% of estimated damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at 1042

19   ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was

20   "higher than the median percentage of investor losses recovered in recent shareholder class

21   action settlements") (citation omitted); *Int'l Bd. of Elec. Workers Local 697 Pension Fund v.*

22   *Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct.

23   19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages

24   that plaintiffs believe could be recovered at trial and noting that the amount is within the median

25   recovery in securities class actions settled in the last few years).  The Settlement also presents a

26   superior recovery when compared to the median percentage of estimated damages recovered in

27   securities class action settlements in 2016, as calculated by Cornerstone Research, which was

28   reported to be 2.5% in 2016.  *See* Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons,

1  *Securities Class Action Settlements: 2016 Review and Analysis*, at 7, Figure 6 (Cornerstone

2  Research 2017), Ex. 10.

3      Moreover, the $29.5 million Settlement in the aggregate is significantly above the median

4  reported settlement amount in 2016, which was $8.6 million in 2016 and $8.3 million from 1996

5  to 2015.  *Id.* at 1.

6      Accordingly, it is respectfully submitted that the Settlement is a favorable result that falls

7  well within the range of reasonableness.

8      **5.      The Extent of Discovery Completed and the Stage of the Proceedings**

9      The stage of the proceedings and the amount of discovery completed are also factors

10  courts consider in determining the fairness, reasonableness, and adequacy of a settlement.  *See*

11  *Mego*, 213 F.3d at 459.  This factor strongly weighs in favor of approval of the Settlement.

12      At the time the Parties agreed to settle, the Class Representatives and Class Counsel had a

13  thorough understanding of the strengths and weaknesses of the claims and defenses asserted.

14  The Action has been hotly contested from its inception, four years ago.  As a result, the Class

15  Representatives' and Class Counsel's knowledge of the strengths and weaknesses of the claims

16  alleged and the stage of the proceedings are more than adequate to support the Settlement.  This

17  knowledge is based on, among other things, Class Counsel's thorough investigation before filing

18  the Corrected Amended Class Action Complaint for Violations of the Federal Securities Laws;

19  ("CAC"); the briefing and order on Defendants' motion to dismiss the CAC; Class Counsel's

20  extensive class, fact, and expert discovery; as well as the briefing on class certification, the cross-

21  motions for summary judgment, and the competing *Daubert* motions.

22      In particular, Class Counsel's investigation in connection with the preparation of the

23  CAC was comprehensive, involving in-house investigator interviews with 64 former employees

24  of AMD, GlobalFoundries, and AMD's customers, on a confidential basis (nine of whom were

25  cited in the CAC as confidential witnesses).  Joint Decl. ¶13.  Additionally, Class Counsel

26  conducted an extensive review of publicly available information before filing the CAC,

27  including documents filed publicly by the Company with the U.S. Securities and Exchange

28  Commission; press releases, news articles, analyst reports, and other public statements

1   concerning AMD's business; information provided by a consultant with expertise in

2   microprocessor fabrication, and the microprocessor market; media reports concerning the

3   microprocessor technology industry and markets; and other publicly available information and

4   data concerning AMD, its securities, and the markets therefor.  *Id.*

5         In connection with formal merits discovery, Class Counsel engaged in an extremely labor

6   intensive meet and confer process with Defendants on the scope of discovery, and ultimately

7   obtained and analyzed approximately 2.5 million pages of documents from Defendants and non-

8   parties, and took or defended 34 depositions (18 merits depositions, including each of the

9   Individual Defendants, seven expert depositions, seven confidential witness depositions, and two

10   Class Representative depositions).  *Id.* §IV.A-E.  Class Counsel also worked with experts on

11   issues related to loss causation and damages, accounting, and the semiconductor industry.  *Id.*

12   §IV.F.  Class Counsel also understood Defendants' defenses to the claims through the extensive

13   briefing on their motion to dismiss the complaint, the class certification motion, summary

14   judgment, *Daubert* challenges, and the positions taken by Defendants in the course of settlement

15   negotiations.  *Id.* §V.

16         In sum, the Class Representatives had a full understanding of the likelihood of success

17   and the potential recovery at trial at the time the Settlement was entered into.  *See Portal*

18   *Software*, 2007 WL 4171201, at *4 ("The settlement reflects three and a half years of completed

19   work including pre-filing investigation, locating and interviewing over twenty-one witnesses, . . .

20   and plaintiff's analysis of defendants' motion for summary judgment. . . . As a result, the true

21   value of the class's claims [were] well-known."); *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-

22   cv-09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement

23   when record established that "all counsel had ample information and opportunity to assess the

24   strengths and weaknesses of their claims and defenses").  This factor strongly supports final

25   approval of the Settlement.

26         **6.**    **The Experience and Views of Counsel**

27         Experienced counsel, negotiating at arm's-length, have weighed the factors discussed

28   above and endorse the Settlement.  As the Ninth Circuit observed in *Rodriquez v. West*

1   *Publishing Corporation,* "[t]his circuit has long deferred to the private consensual decision of the

2   parties" and their counsel in settling an action.  563 F.3d 948, 965 (9th Cir. 2009).  The views of

3   the attorneys actively conducting the litigation and who are most closely acquainted with the

4   facts of the underlying litigation, are entitled to "great weight."  *Nat'l Rural Telecomm. Coop. v.*

5   *DirectTV Inc,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ; *see also Zynga,* 2016 WL 537946, at *13

6   ("A district court is entitled to give consideration to the opinion of competent counsel that the

7   settlement is fair, reasonable, and adequate.") (internal quotation omitted).

8          Class Counsel firmly believe that the Settlement is fair, adequate, and reasonable, and

9   particularly so in view of the risks, burdens, and expense of continued litigation.  Further, it is

10  respectfully submitted that Class Counsel are experienced and able lawyers in this area of

11  practice (*see* Joint Decl. ¶¶130-31 and Exs. 4-H and 5-H) and "[t]here is nothing to counter the

12  presumption that Lead Counsel's recommendation is reasonable."  *Omnivision,* 559 F. Supp. 2d

13  at 1043.  Accordingly, this factor strongly favors approval of the Settlement.

## 7.        The Presence of a Governmental Participant

15         With respect to the seventh factor, there was no governmental investigation or proceeding

16  that assisted with the investigation or prosecution of the Action – no "roadmap" to be followed,

17  or criminal convictions that have aided the Class Representatives in proving certain elements of

18  the case, like materiality, falsity, and scienter.  There was also no restatement of AMD's

19  financial results.

20         Accordingly, this factor supports approval of the Settlement.

## 8.        Reaction of the Class to Date

22         Pursuant to this Court's Preliminary Approval Order, the Court-approved Settlement

23  Notice and Claim Form were mailed to potential Class Members who could be identified with

24  reasonable effort.  *See* Ex. 3 ¶¶3-9.  The Summary Notice was transmitted over the *PRNewswire*

25  on November 20, 2017 and published in *Investor's Business Daily* on November 20, 2017 as

26  well.  *Id.* ¶11.  Additionally, the Stipulation, Settlement Notice, Claim Form, and Preliminary

27  Approval Order were posted to a website dedicated to the Action

28  (www.AMDSecuritiesLitigation.com).

The Settlement Notice advised the Class of the terms of the Settlement, the Plan of Allocation, and the maximum amount of Class Counsel's request for an award of attorneys' fees and expenses, as well as the procedure and deadline for filing objections, opting out of the Class, and opting back in. *See generally* Ex. 3-A.  The Settlement Notice also stated that the motions in support of approval of the Settlement and the request for attorneys' fees and expenses would be filed with the Court on January 23, 2018, and available to the public through the website, Class Counsel's websites, or request to Epiq.  Ex. 3-A at 10.

To date, 222,130 Claim Packets have been mailed to potential Class Members and nominees.  Ex. 3 ¶9.  While the objection/exclusion deadline – February 6, 2018 – has not yet passed, to date, only two objections and six new exclusion requests have been received.[5]  *Id.* ¶¶19-21.  As discussed below, neither objection has merit.[6]

### (a)    The Lackey Objection

Attorney John Lackey, who previously unsuccessfully moved to intervene in the Action (ECF Nos. 232, 250) served and filed an objection to the Settlement on or about December 26, 2017.  ECF No. 347, Ex. 3-E.[7]  His objection has two prongs, neither of which have merit.

First, Mr. Lackey states that he objects to the Settlement because it is "insufficient."  He provides no information about why he thinks the $29.5 million Settlement should, or could, be larger.  As discussed above, the Settlement is well within the range of approval and is, in fact, a very favorable Settlement.  *See also* Joint Decl. ¶5.

Second, he argues that the parties, "have given no accounting to this objecting party about the sums payable to the named plaintiffs[8] or their attorneys or for the costs of the

---

[5]    In connection with the previously issued Class Notice, Epiq received 15 valid and timely exclusion requests.  ECF No. 239-3.  Investors who requested exclusion in connection with the Class Notice were not required to request exclusion in response to the Settlement Notice.  However, some submitted duplicate exclusion requests.  A full report on the additional exclusion requests will be submitted with the Class Representatives' February 13, 2018 reply papers.

[6]    Two documents were also filed with the Court in December, 2017, ECF Nos. 345 and 346; however, neither are objections.  Labaton Sucharow has written to their author, and the estate of the author's deceased husband, to offer assistance with perfecting a claim.

[7]    Mr. Lackey also served interrogatories on Class Counsel that mirror his objection.

[8]    There is no requirement that class representatives disclose their recognized losses in a proposed settlement, but in the interest of transparency, Epiq has calculated both KBC and ATRS's settlement claims and recognized loss amounts.  KBC's recognized loss under the

CASE NO. 4:14-CV-00226-YGR (JSC)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

*(continued)*

18

1   litigation" and that the "motion to approve the Settlement is not timely until the abovementioned

2   information has been provided."  However, the Settlement Notice explained the maximum

3   amounts that would be sought in attorneys' fees and expenses, and Mr. Lackey objected before

4   the instant motion, and the accompanying motion requesting fees and expenses, was filed.  The

5   Settlement Notice clearly stated that this additional information would be forthcoming (*see* Ex.

6   3-A at 10) and the timetable followed in this case fully meets due process requirements, *see*

7   *Mercury*, 618 F.3d at 988.

8        Labaton Sucharow has been communicating with Mr. Lackey about his objection, and

9   interrogatories, and will provide him with copies of all the motion papers once they are filed.

10  We respectfully submit that the extensive detail provided in the instant motions satisfies all of

11  the standards for a court's, and class members', consideration of the approval of a proposed class

12  action settlement and motion for attorneys' fees and expenses.

13            **(b)     The Hutcheson Objection**

14       Mr. Hutcheson submitted an e-mail to Epiq objecting to the proposed Settlement.  *See*

15  Ex. 3-E.  The objection was not provided to Counsel or filed with the Court, and he does not

16  provide information indicating that he is a Class Member.  It should be rejected on those bases

17  alone.

18       The objection itself is difficult to make sense of, but it appears that as a purported long-

19  term shareholder, Mr. Hutcheson objects to the Settlement because he believes it will negatively

20  impact AMD's business prospects and competitive prospects.  "In my opinion this settlement

21  plays into the hands of AMD's competition and is unfair to its minority shareholders and their

22  long term support of AMDs."  *Id*.  To the extent Mr. Hutcheson is complaining that the payment

23  of the Settlement Amount will harm AMD, that is really an argument that the Settlement should

24

25  *(continued)*

    proposed Plan of Allocation is $89,888.67 and ATRS's is $101,056.  *See* Ex. 3 ¶18.  They will

26  recover their *pro rata* share of the Net Settlement Fund based on these losses, as would any other
    eligible claimant.  As explained in the Fee Brief, in addition to their *pro rata* recoveries, KBC is

27  seeking $14,875 and ATRS is seeking $8,348.25 as reimbursement for their representation of the
    Class, pursuant to §21D(a)(4) of the PSLRA, 15 U.S.C. §78u-4(a)(4).  The Class Representatives

28  will receive no other payments from the Settlement.

1    be smaller and an argument against the enforcement of the federal securities laws.  Congress and

2    the courts would disagree.  Accordingly, Mr. Hutcheson's objection is not a basis for rejecting

3    this Settlement.

4    **II.    THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND IS FAIR,
          ADEQUATE, AND REASONABLE AND SHOULD BE APPROVED**

5

6         The standard for approval of a plan of allocation in a class action under Rule 23 of the

7    Federal Rules of Civil Procedure is the same as the standard applicable to the settlement as a

8    whole – the plan must be fair, reasonable, and adequate.  *Class Plaintiffs*, 955 F.2d at 1284;

9    *Omnivision*, 559 F. Supp. 2d at 1045.  An allocation formula need only have a reasonable basis,

10   particularly if recommended by experienced class counsel.  *In re Heritage Bond Litig.*, No. 02-

11   ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).

12        Here, the Class Representatives' damages expert, Chad Coffman, prepared the Plan of

13   Allocation after careful consideration of the Class Representatives' theories of liability and

14   damages.  Joint Decl. ¶¶97-100.  The Plan of Allocation was fully described in the Settlement

15   Notice and, to date, there has been no objection to the proposed plan.  *See* Ex. 3-A at 11-13.

16        "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to

17   every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter

18   alia, the relative strengths and weaknesses of class members' individual claims and the timing of

19   purchases of the securities at issue." *Redwen v. Sino Clean Energy, Inc.*, No. 11-3936, 2013 U.S.

20   Dist. LEXIS 100275, at *29 (C.D. Cal. July 9, 2013)(citation and internal quotation marks

21   omitted).  Here, the Plan of Allocation provides for distribution of the Net Settlement Fund

22   among Authorized Claimants on a *pro rata* basis based on "Recognized Loss" formulas tied to

23   liability and damages.  These formulas consider the amount of alleged artificial inflation in the

24   prices of AMD's publicly traded common stock, as quantified by Mr. Coffman.  *See* Joint Decl.

25   ¶99.  Mr. Coffman analyzed the movement in the prices of AMD's stock and took into account

26   the portion of the price drops attributable to the alleged fraud.  *Id.*  Claimants will be eligible for

27   a payment based on when they purchased, held, or sold their AMD stock.

28

1    The Claims Administrator will calculate claimants' Recognized Losses using the

2  transactional information provided by claimants in their Claim Forms.  Because most securities

3  are held in "street name" by the brokers that buy them on behalf of clients, the Claims

4  Administrator, Class Counsel, and Defendants do not have class members' transactional data.

5    Once the Claims Administrator has processed all submitted claims, distributions will be

6  made to eligible Authorized Claimants.  After an initial distribution of the Net Settlement Fund,

7  if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds,

8  uncashed checks or otherwise) after at least six (6) months from the date of initial distribution,

9  Class Counsel will, if feasible and economical, re-distribute the balance among Authorized

10  Claimants who have cashed their checks.  Re-distributions will be repeated until the balance in

11  the Net Settlement Fund is no longer economically feasible to distribute to Authorized

12  Claimants.  The Stipulation provides that any balance that still remains in the Net Settlement

13  Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of

14  any outstanding Notice and Administration Expenses or Taxes, will be donated in equal amounts

15  to Bay Area Legal Aid and Consumer Federation of America—both of which have programs that

16  assist consumers facing financial fraud.  *See* Stipulation ¶25; Joint Decl. ¶¶101-03.

17    Bay Area Legal Aid (BayLegal) is a non-profit organization that provides free legal

18  assistance to low income residents of the San Francisco Bay Area through offices in Santa Clara,

19  San Mateo, San Francisco, Napa, Marin, Contra Costa, and Alameda Counties. *See*

20  https://baylegal.org/who-we-are/our-mission/.  BayLegal has a Consumer Protection project that

21  advocates on behalf of allegedly wronged consumers by providing them with direct legal

22  representation in cases concerning, among other things, fair credit reporting, fair debt collection

23  practices, and unfair and deceptive advertising of financial products and services. *See*

24  https://baylegal.org/what-we-do/stability/consumer-protections/.  *Cy pres* funds from the

25  Settlement can be earmarked for the Consumer Protection project so that they directly assist

26  victims of financial fraud.  BayLegal has been approved as a *cy pres* beneficiary in several

27  securities cases in California, including *In re Celera Corp. Sec. Litig.*, No. 10-cv-02604-EJD

28

1    (N.D. Cal.), *Westley, et al. v. Oclaro, Inc., et al.*, No. 11-cv-02448-EMC (N.D. Cal.), and *In re*

2    *Ubiquiti Networks, Inc. Sec. Litig.*, No. 12-cv-04677-YGR (N.D. Cal.).  Joint Decl. ¶102.

3           Consumer Federation of America (CFA) is a non-profit, consumer advocacy organization

4    established in 1968 to advance consumer interests through policy research, advocacy, and

5    education before the judiciary, Congress, the White House, federal and state regulatory agencies,

6    and state legislatures.  *See generally* www.consumerfed.org.  With respect to victims of financial

7    fraud, CFA has an Investor Protection program that works nationwide to promote consumer-

8    oriented policies that safeguard investors against fraud through: (i) the development of

9    educational material for investors; (ii) drafting policies and legislation; (iii) and providing

10   testimony and comments on legislation and regulations. *See*

11   www.consumerfed.org/issues/investor-protection.  CFA has been approved as a cy pres

12   beneficiary in several securities cases in California, including *In re Vocera Commc'ns, Inc. Sec.*

13   *Litig.*, No. 13-CV-03567-EMC (N.D. Cal.), *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-00275-

14   MLR (C.D. Cal.), and *In re Ubiquiti Networks, Inc. Sec. Litig.*, No. 12-cv-04677-YGR (N.D.

15   Cal.).  Joint Decl. ¶103.

16          Accordingly, for all of the reasons set forth herein and in the Joint Declaration, the Plan

17   of Allocation is fair, reasonable and adequate and should be approved.

18                                    **CONCLUSION**

19          For all the foregoing reasons, the Class Representatives respectfully request that the

20   Court:  (i) grant final approval of the Settlement; and (ii) approve the Plan of Allocation as fair,

21   reasonable, and adequate.

22   Dated: January 23, 2018                    Respectfully submitted,

23
                                               *s/ Jonathan Gardner*
24                                             **LABATON SUCHAROW LLP**
                                               Jonathan Gardner (*pro hac vice*)
25                                             Carol C. Villegas (*pro hac vice*)
                                               Alec T. Coquin (*pro hac vice*)
26                                             140 Broadway
                                               New York, NY  10005
27                                             Telephone:  (212) 907-0700
                                               Facsimile:  (212) 818-0477
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTLEY RICE LLC**
James M. Hughes (*pro hac vice*)
William S. Norton (*pro hac vice*)
Max N. Gruetzmacher (*pro hac vice*)
Michael J. Pendell (*pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  (843) 216-9000
Facsimile:   (843) 216-9450

*Co-Lead Counsel for Class Representatives
and the Class*

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
Katherine C. Lubin (State Bar No. 259826)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Liaison Counsel*

CASE NO. 4:14-CV-00226-YGR (JSC)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

23

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on January 23, 2018, I authorized the electronic filing of the

3   foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4   such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I

5   hereby certify that I have mailed the foregoing document or paper via the United States Postal

6   Service to the non-CM/ECF participants indicated on the attached Service List.

7       I certify under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct.

9       Executed on January 23, 2018

10                                              /s/ *Jonathan Gardner*
                                              JONATHAN GARDNER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   **Mailing Information for a Case 4:14-cv-00226-YGR**

2   *Hatamian et al v. Advanced Micro Devices, Inc. et al*

3   **Electronic Mail Notice List**

4   The following are those who are currently on the list to receive e-mail notices for this case.

5   - **Melanie Marilyn Blunschi**
6     melanie.blunschi@lw.com,christina.teeter@lw.com,#sflitigationservices@lw.com,
      sf-litigation-services-4917@ecf.pacerpro.com,melanie-blunschi-5434@ecf.pacerpro.com
7   - **Alec T. Coquin**
      acoquin@labaton.com,kgutierrez@labaton.com,electroniccasefiling@labaton.com
8   - **Jonathan Gardner**
      jgardner@labaton.com,kgutierrez@labaton.com,jjohnson@labaton.com,
9     cvillegas@labaton.com,tdubbs@labaton.com,ryamada@labaton.com,cboria@labaton.
      com,acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,
10    agreenbaum@labaton.com
11  - **Patrick Edward Gibbs**
      pgibbs@cooley.com,bgiovannoni@cooley.com
12  - **Michael M. Goldberg**
      michael@goldberglawpc.com
13  - **Max Nikolaus Gruetzmacher**
      mgruetzmacher@motleyrice.com,wtinkler@motleyrice.com
14  - **Jason C. Hegt**
15    jason.hegt@lw.com,jason-hegt-2094@ecf.pacerpro.com
    - **James Michael Hughes**
16    jhughes@motleyrice.com,mgruetzmacher@motleyrice.com,erichards@motleyrice.com,
      kweil@motleyrice.com
17  - **Willem F. Jonckheer**
      wjonckheer@schubertlawfirm.com,kmessinger@schubertlawfirm.com,
18    epawson@schubertlawfirm.com,paralegal@schubertlawfirm.com
19  - **Joy Ann Kruse**
      jakruse@lchb.com,kbenson@lchb.com
20  - **Nicole Catherine Lavallee**
      nlavallee@bermantabacco.com,ysoboleva@bermantabacco.com
21  - **Sharon Maine Lee**
      slee@lchb.com
22  - **Katherine Collinge Lubin**
23    klubin@lchb.com,rtexier@lchb.com
    - **Meredith B. Miller**
24    mbmiller@motleyrice.com
    - **William H. Narwold**
25    bnarwold@motleyrice.com,mjasinski@motleyrice.com,kweil@motleyrice.com,
      ajanelle@motleyrice.com
26  - **William S. Norton**
      bnorton@motleyrice.com
27  - **Michael J. Pendell**
      mpendell@motleyrice.com
28

- **Matthew Rawlinson**
  matt.rawlinson@lw.com,zoila.aurora@lw.com,
  matthew-rawlinson3894@ecf.pacerpro.com,jenny.duckworth@lw.com,
  #SVLitigationServices@lw.com
- **Paul J. Scarlato**
  pscarlato@labaton.com
- **Carol C. Villegas**
  cvillegas@labaton.com,kgutierrez@labaton.com,thoffman@labaton.com,
  jchristie@labaton.com,mpenrhyn@labaton.com,acoquin@labaton.com,
  fmalonzo@labaton.com,acarpio@labaton.com,electroniccasefiling@labaton.com
- **Avraham Noam Wagner**
  avi@thewagnerfirm.com
- **Kara M. Wolke**
  kwolke@glancylaw.com
- **Roger W. Yamada**
  ryamada@labaton.com,kgutierrez@labaton.com,fmalonzo@labaton.com,
  acarpio@labaton.com,electroniccasefiling@labaton.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

(No manual recipients)