1

**LIEFF CABRASER HEIMANN &**
**BERNSTEIN, LLP**
Katherine C. Lubin (State Bar No. 259826)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Liaison Counsel*

| | |
|---|---|
| **LABATON SUCHAROW LLP** | **MOTLEY RICE LLC** |
| Jonathan Gardner (*pro hac vice*) | James M. Hughes (*pro hac vice*) |
| Carol C. Villegas (*pro hac vice*) | William S. Norton (*pro hac vice*) |
| Alec T. Coquin (*pro hac vice*) | Max N. Gruetzmacher (*pro hac vice*) |
| 140 Broadway | Michael J. Pendell (*pro hac vice*) |
| New York, NY  10005 | 28 Bridgeside Blvd. |
| Telephone: (212) 907-0700 | Mt. Pleasant, SC  29464 |
| Facsimile: (212) 818-0477 | Telephone: (843) 216-9000 |
| | Facsimile: (843) 216-9450 |
| | |
| *Co-Lead Counsel for the Class* | *Co-Lead Counsel for the Class* |

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| BABAK HATAMIAN and LUSSA DENNJ SALVATORE, individually and on behalf of all others similarly situated, | CASE NO. 4:14-cv-00226-YGR (JSC) |
| | **CLASS ACTION** |
| Plaintiffs, | **CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND PAYMENT OF EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| ADVANCED MICRO DEVICES, INC., RORY P. READ, THOMAS J. SEIFERT, RICHARD A. BERGMAN, AND LISA T. SU, | Date:   February 27, 2018 |
| | Time:   2:00 p.m. |
| Defendants. | Place:  Courtroom 1, 4th Floor |
| | Judge:  The Hon. Yvonne Gonzalez Rogers |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................ 1

PRELIMINARY STATEMENT ......................................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE
COMMON FUND SHOULD BE APPROVED ........................................................ 3

     A.    Counsel Are Entitled to an Award of Attorneys' Fees
from the Common Fund.............................................................................. 3

     B.    A Reasonable Percentage of the Fund Recovered Is the Appropriate Method
for Awarding Attorneys' Fees in Common Fund Cases.............................. 4

     C.    Analysis Under the Percentage Method and the *Vizcaino* Factors Justify a
Fee Award of 25% in this Case .................................................................. 5

          1.    The Result Achieved ...................................................................... 6

          2.    The Risks of Litigation................................................................... 7

          3.    The Skill Required and the Quality of Work ............................... 10

          4.    The Contingent Nature of the Fee and the Financial Burden Carried
by Plaintiffs' Counsel................................................................... 12

          5.    A 25% Fee Award Is the Ninth Circuit's Benchmark and Is
Comparable with Awards in Similar Cases................................... 14

          6.    Reaction of the Class.................................................................... 15

          7.    Lodestar Cross-Check ................................................................... 15

II.    PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE
NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ................................. 17

III.   CLASS REPRESENTATIVES' REQUEST FOR PSLRA REIMBURSEMENT ........... 19

CONCLUSION.................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Amgen Inc. Sec. Litig.*,
   Case No. CV 7-2536 PSG, 2016 WL 10571773 (C.D. Cal. Oct 25, 2016) ...........................16

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ..................................................................................13

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985) ...........................................................................................12, 14

*In re Biolase, Inc. Sec. Litig.*,
   Case No. SACV 13-1300-JLS, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ...................16

*Blum v. Stenson*,
   465 U.S. 886 (1984) ...................................................................................................4

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ...................................................................................................3

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
   109 F.3d 602 (9th Cir. 1997) ....................................................................................15

*Destefano v. Zynga Inc.*,
   No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................ *passim*

*In re Equity Funding Corp. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ...........................................................................11

*Franco v. Ruiz Food Prods., Inc.*,
   No. 1:10-cv-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .............................18

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015) ....................................................................................13

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ........................................................................................17

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...................................................................................................6

*In re Heritage Bond Litig.*,
   No. 02-ML-1475-DT (RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) .......10, 11, 14, 15

*Hicks v. Stanley*,
   No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...............................20

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........................................................................18, 19

*Janus Capital Grp. Inc. v. First Derivative Traders*,
    131 S. Ct. 2296 (2011)..................................................................................................13

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ......................7, 19, 20

*In re Merrill Lynch & Co., Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)..................................7

*Missouri v. Jenkins*,
    491 U.S. 274 (1989).......................................................................................................16

*Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) .....................................9

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) .....................................................................7, 9, 12

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009),
    *aff'd*, 627 F.3d 376 (9th Cir. 2010).................................................................................12

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...........................................................................................2, 7

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ..............................................................................................5

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)..................................16

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ........................................................................................5, 14

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ........................................................................................13

*Rutti v. Lojack Corp. Inc.*,
    No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) ......................16

*Steiner v. Am. Broad. Co.*,
    248 F. App'x. 780 (9th Cir. 2007) ....................................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................................12

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................5

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977) ..........................................................3, 4

*Vincent v. Reser*,
   No. C-11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .................................3, 17

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ...................................................... *passim*

*Ward v. Succession of Freeman*,
   854 F.2d 780 (5th Cir. 1998) ...............................................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*,
   19 F.3d 1291 (9th Cir. 1994), *aff'd in part, Class Plaintiffs v. Jaffe*
   *Schlesinger P.A.* 19 F.3d 1306 (9th Cir. 1994)................................................4, 5

*In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) .....................................................13

**Statutes**

15 U.S.C. § 78u-4(a)(6) ......................................................................5

15 U.S.C. § 78u-4(a)(4) ................................................................1, 2, 19

**Other Authorities**

Charles Silver, Class Actions In The Gulf South Symposium,
   *Due Process and the Lodestar Method: You Can't Get There From Here*,
   74 Tul. L. Rev. 1809 (2000) ..............................................................4, 5

CASE NO. 4:14-cv-00226-YGR (JSC)
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

iv

1

2

## NOTICE OF MOTION

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 27, 2018, at 2:00 p.m., or as soon thereafter as they may be heard, Labaton Sucharow LLP ("Labaton Sucharow") and Motley Rice LLC ("Motley Rice," and collectively with Labaton Sucharow, "Class Counsel"), on behalf of themselves and all plaintiffs' counsel, will move for an order: (i) awarding attorneys' fees of 25% of the Settlement Fund; (ii) awarding payment of their litigation expenses; and (iii) approving Class Representatives' request for payment of their costs and expenses related to their representation of the Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

This motion is based upon the following Memorandum in support thereof; the Joint Declaration of Jonathan Gardner and James M. Hughes in Support of Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses ("Joint Declaration" or "Joint Decl."), dated January 23, 2018, with annexed exhibits; the Stipulation and Agreement of Settlement, dated as of October 9, 2017 (ECF No. 333-1) ("Stipulation"); all of the prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

A proposed order will be submitted with Class Counsel's reply submission on February 13, 2018, after the February 6, 2018 deadline for requesting exclusion or objecting has passed.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court should approve Class Counsel's application for an award of attorneys' fees;

2.     Whether the Court should approve Class Counsel's application for payment of expenses; and

3.     Whether the Court should approve Class Representatives' requests for payment of their reasonable costs and expenses related to their representation of the Class, pursuant to the

PSLRA, 15 U.S.C. § 78u-4(a)(4).

## MEMORANDUM OF POINTS AND AUTHORITIES

Class Counsel respectfully submit this memorandum of points and authorities in support of their application, on behalf of all plaintiffs' counsel, for: (i) an award of attorneys' fees of 25% of the Settlement Fund; (ii) payment of their litigation expenses in the amount of $2,812,817.52; and (iii) reimbursement in the aggregate amount of $23,223.25 to the Class Representatives, for their representation of the Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).[1]

## PRELIMINARY STATEMENT

As detailed in the Stipulation, Advanced Micro Devices, Inc. ("AMD" or the "Company"), Rory P. Read, Thomas J. Seifert, Richard A. Bergman, and Lisa T. Su (collectively, the "Individual Defendants" and, with AMD, the "Defendants") have agreed to pay or cause to be paid $29,500,000 to secure a settlement of the claims in this class action (the "Settlement"). This recovery is a very good result for the Class when evaluated in light of all the relevant circumstances – most notably the complicated nature of the claims and the risks of pursuing the Action through a decision on summary judgment and trial.

Class Counsel have not received any compensation for their successful prosecution of this case, which required four years of vigorous advocacy and approximately 62,765 hours of time. Class Counsel respectfully request that plaintiffs' counsel be awarded an attorneys' fee of 25% of the Settlement Fund, which will include any accrued interest, and that they be paid out of the Settlement Fund for litigation expenses in the amount of $2,812,817.52. This 25% fee request is consistent with the Ninth Circuit's "benchmark" for contingent fees and, as discussed below, would provide no multiplier of plaintiffs' counsel's lodestar. *See, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that district courts should award in common fund cases.").

---

[1]    All capitalized terms not otherwise defined herein shall have the same meanings as those set forth in the Stipulation.

CASE NO. 4:14-cv-00226-YGR (JSC)
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

2

1    The requested fee has been approved by the Class Representatives, Arkansas Teacher

2  Retirement System ("ATRS") and KBC Asset Management NV ("KBC").  *See* Ex. 1 ¶6, 13; Ex.

3  2 ¶¶6, 10.[2]  The Class Representatives were actively involved in the litigation and believe that

4  the Settlement represents a very good recovery for the Class.  Ex. 1 ¶¶4-5, 13; Ex. 2 ¶¶4-5, 10.

5    As discussed herein, as well as in the Joint Declaration, it is respectfully submitted that

6  the requested fee is fair and reasonable when considered under the applicable standards in the

7  Ninth Circuit and is well within the range of awards in class actions in the Ninth Circuit and

8  courts nationwide, particularly in view of the substantial risks of pursuing the Action, the

9  considerable litigation efforts, and the results achieved for the Class.  Moreover, the expenses

10  requested are reasonable in amount and were necessarily incurred for the successful prosecution

11  of the Action.   As such, the requested fees and expenses should be awarded in full.

12                                    **ARGUMENT**

13  **I.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 25% OF THE
        COMMON FUND SHOULD BE APPROVED**

14
15          **A.    Counsel Are Entitled to an Award of Attorneys' Fees
                from the Common Fund**

16    It is well settled that attorneys who represent a class and achieve a benefit for class

17  members are entitled to a reasonable fee as compensation for their services.  The Supreme Court

18  has recognized that "a lawyer who recovers a common fund for the benefit of persons other than

19  himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing*

20  *Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Vincent v. Reser*, No. C-11-03572 CRB,

21

22  ─────────────────────
   [2]    All exhibits referenced herein are annexed to the Joint Declaration of Jonathan Gardner

23  and James M. Hughes in Support of Class Representatives' Motion for Final Approval of Class
   Action Settlement and Plan of Allocation and Class Counsel's Motion for an Award of

24  Attorneys' Fees and Payment of Expenses ("Joint Declaration" or "Joint Decl.").  For clarity,
   citations to exhibits that themselves have attached exhibits, will be referenced herein as "Ex.__-
   __."  The first numerical reference is to the designation of the entire exhibit attached to the Joint

25  Declaration and the second alphabetical reference is to the exhibit designation within the exhibit
   itself.

26          The Joint Declaration is an integral part of this motion and is incorporated herein by
   reference.  For the sake of brevity, the Court is respectfully referred to the Joint Declaration for,

27  *inter alia*, a detailed description of the allegations and claims, the procedural history of the
   Action, the risks faced by the Class in pursuing litigation, the negotiations that led to a

28  settlement, and a description of the services provided by plaintiffs' counsel.

2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478).  Indeed, the Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."  *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."  *In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS*), 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part, Class Plaintiffs v. Jaffe Schlesinger P.A.* 19 F.3d 1306 (9th Cir. 1994).

### B.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class. . . ."  *Id.* at 900 n.16.  In this Circuit, a district court has discretion to award fees in common fund cases based on either the so-called lodestar/multiplier method or the percentage-of-the-fund method.  *WPPSS*, 19 F.3d at 1296.  However, the percentage-of-recovery method has become the prevailing method in the Ninth Circuit.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).  Other circuits have similarly endorsed the percentage-of-recovery method.

The rationale for compensating counsel in common fund cases on a percentage basis is sound.  Principally, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time.  Indeed, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage method of awarding fees is the only method of fee awards that is consistent with class members' due process rights.  Professor Silver notes:

> ***The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.***  It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force.  Indeed, it is difficult to find anyone who contends

1     otherwise.  No one writing in the field today is defending the lodestar on the ground that

2     it minimizes conflicts between class counsel and absent claimants.

      ***In view of this, it is as clear as it possibly can be that judges should not apply the***

3     ***lodestar method in common fund class actions.***  The Due Process Clause requires them

      to minimize conflicts between absent claimants and their representatives.  The contingent

4     percentage approach accomplishes this.

5    Charles Silver, Class Actions In The Gulf South Symposium, *Due Process and the Lodestar*

6    *Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809, 1819-20 (2000) (emphasis

7    added and footnotes omitted).  This is particularly appropriate in cases under the PSLRA where

8    Congress recognized the propriety of the percentage method of fee awards.  *See* 15 U.S.C. § 78u-

9    4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff

10   class shall not exceed a reasonable percentage of the amount of any damages and prejudgment

11   interest actually paid to the class".).

12       **C.**     **Analysis Under the Percentage Method and the *Vizcaino* Factors**
             **Justify a Fee Award of 25% in this Case**

13

14        In *Paul, Johnson*, *Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989), the Ninth

15   Circuit established 25% of a common fund as the "benchmark" award for attorneys' fees.  *See*

16   *also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993) (reaffirming 25%

17   benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same); *see also Destefano*

18   *v. Zynga Inc.,* No. 12-cv-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) (citing

19   *Vizcaino,* 290 F.3d at 1047) ("In common fund cases, the 'benchmark' percentage award is 25

20   percent of the recovery obtained, with 20 to 30 percent as the usual range.")

21        The guiding principle in this Circuit is that a fee award be "reasonable under the

22   circumstances."  *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted).  In employing the

23   percentage method, courts may perform a lodestar cross-check to confirm the reasonableness of

24   the requested fee.  *Vizcaino*, 290 F.3d at 1047 (affirming use of percentage method and applying

25   the lodestar method as a cross-check).  Here, as discussed in detail below, counsel have

26   dedicated 62,765.80 hours to the prosecution of the case over the past four years, with a lodestar

27   value of $31,122,958.75.  *See* Ex. 8.  Accordingly the requested fee, if granted, would be a

28   fraction of counsel's lodestar in the case.  Overall, in view of the substantial amount of work

1   dedicated to the case, the excellent result obtained, the contingent fee risk, the lodestar cross-

2   check, and other relevant factors, an award of 25% of the recovery obtained for the Class would

3   be appropriate under circumstances here.

4         The fee request readily satisfies the five *Vizcaino* factors that are often used by courts

5   within the Ninth Circuit to evaluate the reasonableness of a requested fee:  (1) the result

6   achieved; (2) the risk of litigation; (3) the skill required and quality of the work; (4) awards made

7   in similar cases; and (5) the contingent nature of the fee and financial burden carried by counsel.

8   *Vizcaino*, 290 F.3d at 1048-50.  The Ninth Circuit has explained that these factors should not be

9   used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the

10  totality of the circumstances.  *Id*.  As set forth below, all of the *Vizcaino* factors militate in favor

11  of approving the requested fee.

12         **1.      The Result Achieved**

13        Courts have consistently recognized that the result achieved is an important factor to be

14  considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting 'the

15  most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048 n.7 (noting

16  "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees).  Class Counsel

17  submit that the $29.5 million proposed Settlement is an excellent result for the Class, both

18  quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded

19  through a decision on summary judgment and trial.

20        The $29.5 million Settlement compares very favorably to other securities fraud

21  settlements.  As reported by Cornerstone, the median settlement amount in securities fraud cases

22  in 2016 was $8.6 million and $8.3 million from 1996 to 2015.  *See* Laarni T. Bulan, Ellen M.

23  Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2016 Review and Analysis*

24  (Cornerstone Research 2017), (Ex. 10) at 1.

25        In terms of potentially recoverable damages, the Settlement represents a recovery of

26  approximately 7% of the Class Representatives' damages expert's estimate of maximum

27  recoverable damages ($430 million), assuming that the Class Representatives' prevailed on all

28  claims, including all five alleged corrective disclosures.  *See* Joint Decl. ¶¶5, 82.  This

Case No. 4:14-cv-00226-YGR (JSC)                                                                                      6
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

1  percentage of recovery compares well to recoveries in other securities class actions within the

2  Ninth Circuit.  *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal.

3  2008) (noting $13.75 million settlement yielding 6% of potential damages after deducting fees

4  and costs was "higher than the median percentage of investor losses recovered in recent

5  shareholder class action settlements") (citation omitted); *McPhail v. First Command Fin.*

6  *Planning, Inc.*, No. 05cv179-IEG- JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009)

7  (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate).

8  The recovery also compares favorably to recoveries achieved in cases in other Circuits.

9  *See, e.g., In re Merrill Lynch & Co., Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK),

10  2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The Settlement Fund is approximately $40.3

11  million.  The settlement thus represents a recovery of approximately 6.25% of estimated

12  damages.  This is at the higher end of the range of reasonableness of recovery in class actions

13  securities litigations.") (citation omitted).  The Settlement also presents a superior recovery when

14  compared to the median percentage of estimated damages recovered in securities class action

15  settlements in 2016, as calculated by Cornerstone Research, which was reported to be 2.5% in

16  2016.  *See* Ex. 10 at 7, Figure 6.

17  The Settlement Amount thus provides a very favorable percentage of recovery for the

18  Class.

19  ### 2.     The Risks of Litigation

20  The risk of further litigation is also an important factor in determining a fair fee award.

21  *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys'

22  fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d  at 379 (finding that attorneys' fees were justified

23  "because of the complexity of the issues and the risks"); *see also Zynga*, 2016 WL 537946, at

24  *17 (approving requested fee and noting that "as to the second factor . . . the risks associated

25  with the case were substantial given the challenges of obtaining class certification and

26  establishing the falsity of the misrepresentations and loss causation").  As set forth in detail in

27  Section V. of the Joint Declaration, there is no question that the Class Representatives faced, and

28  Class Counsel resisted, formidable defenses to liability and damages.  Although the Class

Case No. 4:14-cv-00226-YGR (JSC)
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

7

1    Representatives have prevailed at several stages of the litigation, including the motion to dismiss

2    and class certification, Defendants vehemently denied liability and there was no assurance that

3    Class Representatives' claims would survive Defendants' motion for summary judgment and

4    *Daubert* motions, let alone trial.

5          For instance, the Class Representatives faced substantial risks in ultimately proving that

6    Defendants' statements and omissions were false and misleading at the time that they were

7    made.  Joint Decl. ¶¶71-73.  Throughout the litigation, Class Counsel vigorously countered

8    Defendants' argument that the majority of the alleged false statements were inactionable puffery

9    or forward-looking statements protected by the PSLRA safe harbor.  Defendants argued that

10   there is no objective standard by which to measure whether Llano yield was "good" and whether

11   demand for Llano was "strong" and that courts have consistently rejected claims based on similar

12   statements.  Defendants would also point the jury to "cautionary language" in AMD's public

13   statements that warned of the risks of investing in AMD stock and of the risks associated with

14   AMD's financial projections.  *Id.* ¶71.

15         The Class Representatives also faced challenges in proving that Defendants' alleged

16   misstatements were made with scienter, as required by the federal securities laws.  *Id.* ¶¶74-76.

17   Defendants denied that the Class Representatives could prove that there was an intentional or

18   severely reckless violation of the Exchange Act.  Among other things, Defendants would have

19   continued to argue that they did not know what would ultimately occur in late 2011 regarding

20   Llano supply, and, in particular, about the supply shortage that would emerge in 3Q11.  Class

21   Counsel skillfully marshalled evidence that Defendants had information concerning the Llano

22   issues and that Defendants received reports, attended meetings, sent emails, and generally knew

23   about the issues with Llano, and that given the amount of information Defendants actually

24   reviewed and had access to that was contrary to public statements, Class Representatives would

25   ultimately be able to prove their claims.  *Id.*

26         Class Counsel worked closely with their three testifying experts in the areas of loss

27   causation, materiality, damages, accounting, and the semiconductor industry.  The Class

28   Representatives intended to rely heavily on their expert witnesses, to present opinions on

Case No. 4:14-cv-00226-YGR (JSC)
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof                                      8

1   whether Defendants' statements were contrary to internal Company data and internal statements

2   as they relate to Llano yield and demand, among other things.  *Id.*, *e.g.*, ¶48.  Had Defendants

3   prevailed in excluding any of the experts' opinions or had the jury discounted certain opinions,

4   the presentation of many aspects of the Class Representatives' case would have been more

5   difficult.  Moreover, presenting this complex evidence persuasively to a jury created its own

6   significant challenges, in addition to the risks inherently present in any "battle of the experts"

7   that would have ensued.

8          In addition, the Parties have asserted significantly different positions regarding loss

9   causation and damages.  *Id.* ¶¶77-83.  Defendants would principally have asserted that the

10   "corrective" disclosures do not correct the allegedly false statements.  For example, Defendants

11   would argue that the only thing "corrected" by the statement on September 28, 2011 (the first

12   alleged corrective disclosure) announcing that AMD would fall short of its previously issued

13   guidance is AMD's 3Q11 earnings guidance, which plaintiffs do not challenge.  *Id.* ¶¶78.

14   Moreover, Defendants' were adamant in their arguments that the opinions of Class

15   Representatives' damages and loss causation expert, Mr. Coffman must be excluded.  If the

16   Court agreed with Defendants' motion, presenting Class Representative's arguments on these

17   issues would be exceptionally challenging.  *See Nguyen v. Radient Pharms. Corp.*, No. SACV

18   11-00406 DOC (MLGx), 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving

19   requested attorneys' fee and nothing the particular challenges of proving and calculating

20   damages).

21          Overall, the Class Representatives faced the significant possibility that the Court or a jury

22   would agree with Defendants' experts and, regardless of who would ultimately be successful at

23   trial, there is no doubt that both sides would have had to present complex and nuanced

24   information to a jury with no certainty as to the outcome.  *See In re Omnivision*, 559 F. Supp. 2d

25   at 1047 (noting that the risk of litigation, including the ability to prove loss causation and the risk

26   that Defendants prevail on damages support the requested fee).

27          If not settled, the Class in this case faced the considerable risk of years of additional

28   litigation with no guarantee of a greater recovery.  Class Counsel worked tirelessly to achieve a

1    significant result for the Class in the face of very real risks.  Under these circumstances, the

2    requested fee is fully appropriate.

3              **3.      The Skill Required and the Quality of Work**

4              Courts have recognized that the "prosecution and management of a complex national

5    class action requires unique legal skills and abilities."  *In re Heritage Bond Litig.*, No. 02-ML-

6    1475-DT (RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) (citation omitted); *see*

7    *also Vizcaino,* 290 F.3d at 1048.  "'This is particularly true in securities cases because the Private

8    Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past

9    a motion to dismiss.'"  *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at

10   1047).

11             Here, in addition to the complexities of securities cases, the claims centered on the launch

12   of AMD's "Llano" microprocessor, a processor that combined a Central Processing Unit with a

13   Graphics Processing Unit onto a single computer chip.  Class Counsel worked very hard to

14   investigate, develop, and prove the claims that Defendants made materially false and misleading

15   statements and omissions concerning Llano's production, launch, demand, sales, and margins,

16   among other things, allegedly in violation of the Securities and Exchange Act of 1934 and to the

17   detriment of the Class.

18             Class Counsel conducted its own proprietary investigation without the benefit of any

19   government investigation or admission to formulate their theory of the case and develop

20   sufficient facts to ultimately defeat Defendants' motion to dismiss the CAC.  As set forth in the

21   Joint Declaration, the investigation included, *inter alia*, reviewing and analyzing an extensive

22   amount of publicly available information and data concerning Defendants, including press

23   releases, news articles, transcripts, research reports, reports filed with the U.S. Securities and

24   Exchange Commission, publications concerning the microprocessor technology industry and

25   markets.  The investigation also included the review of information provided by a consultant

26   with expertise in microprocessor fabrication, and the microprocessor market and Class Counsel's

27   in-house investigators' interviews of 64 former employees of AMD, GF, and AMD's customers.

28   Joint Decl. ¶13.

1    Additionally, plaintiffs' counsel:  (i) successfully moved for class certification; (ii)

2    engaged in extensive and diligent fact discovery, including (a) an extremely labor intensive meet

3    and confer process with Defendants on the scope of discovery which led to the production and

4    review of approximately 2.5 million pages of documents; and (b) participating in 34 depositions

5    (18 merits depositions (including each of the Individual Defendants), seven expert depositions,

6    seven confidential witness depositions, and two Class Representative depositions); (iii) engaged

7    in extensive and diligent expert discovery, including submission of expert and rebuttal reports

8    from three experts as well as the review and analysis of reports from Defendants' four experts;

9    (iv) opposed Defendants' motion for summary judgment and moved for partial summary

10   judgment as to certain statements; (v) exchanged *Daubert* motions with Defendants; and (vi)

11   engaged in thorough mediation efforts, which included the exchange of comprehensive

12   mediation statements, and two separate full-day mediation sessions.  *Id*. §§III.E through V.

13   Class Counsel have extensive and significant experience in the highly specialized field of

14   securities class action litigation and are known leaders in the field.  *See* Exs. 4-H & 5-H.  Class

15   Counsel have not only used their knowledge and skill from prior cases but also developed

16   specific expertise in the issues presented here to overcome the obstacles presented by

17   Defendants.  The favorable Settlement is attributable in large part to the diligence, determination,

18   hard work, and skill of Class Counsel, who developed, litigated, and successfully settled the

19   Action.

20   The quality of opposing counsel is also important in evaluating the quality of the work

21   done by Class Counsel.  *See, e.g.*, *Heritage Bond*, 2005 WL 1594389, at *12; *In re Equity*

22   *Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Class Counsel were

23   opposed in this Action by very skilled and highly respected lawyers from Latham & Watkins

24   LLP and Cooley LLP, with well-deserved reputations for vigorous advocacy in the defense of

25   complex civil cases such as this.  In the face of this formidable opposition, Class Counsel were

26   able to develop Class Representatives' case so as to persuade Defendants to settle the Action on

27   terms favorable to the Class.

28

Case No. 4:14-cv-00226-YGR (JSC)                                                           11
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

4.    **The Contingent Nature of the Fee and the Financial
Burden Carried by Plaintiffs' Counsel**

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee."); *see also Zynga,* 2016 WL 537946, at *18 (noting that "when counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award").  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).[3]

Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise.  *See, e.g.*, *In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million).  Class Counsel are aware of many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was

---

[3]     Additionally, vigorous private enforcement of the federal securities laws and state corporation laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to large corporate defendants.  If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

1    commenced, changes in the law during the pendency of the case, or a decision of a judge or jury

2    following a trial on the merits, excellent professional efforts by members of the plaintiff's bar

3    produced no fee for counsel.  *See, e.g.*, *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir.

4    1998) (reversing plaintiffs' jury verdict for securities fraud); *Robbins v. Koger Props., Inc.*, 116

5    F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with

6    prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning

7    plaintiffs' verdict obtained after two decades of litigation); Joint Decl. ¶¶117-19.  As the court in

8    *In re Xcel Energy, Inc. Securities, Derivative & ERISA Litigation,* 364 F. Supp. 2d 980 (D. Minn.

9    2005) recognized, "[p]recedent is replete with situations in which attorneys representing a class

10    have devoted substantial resources in terms of time and advanced costs yet have lost the case

11    despite their advocacy." *Id.* at 994 (citation omitted).  Even plaintiffs who get past summary

12    judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a

13    post-trial motion.  *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir.

14    2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss

15    causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative*

16    *Traders*, 131 S.Ct. 2296 (2011)).

17         Here, because plaintiffs' counsel's fee was entirely contingent, the only certainty was that

18    there would be no fee without a successful result and that such result would only be realized after

19    significant amounts of time, effort, and expense had been expended.  Unlike counsel for the

20    Defendants, who were paid substantial hourly rates and reimbursed for their out-of-pocket

21    expenses on a current basis, plaintiffs' counsel have received no compensation for their efforts

22    during the course of the Action.  Indeed, absent this Settlement, there was a sizeable risk that, at

23    the end of the day, Class Members, as well as their counsel, would obtain no recovery.

24    Plaintiffs' counsel have risked non-payment of $2,812,817.52 in expenses and $31,122,958.75 in

25    time worked on this matter, knowing that if their efforts were not successful, no fee would be

26    paid.

27

28

Case No. 4:14-cv-00226-YGR (JSC)
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

13

**5.      A 25% Fee Award Is the Ninth Circuit's Benchmark and Is Comparable with Awards in Similar Cases**

In requesting a 25% fee, Class Counsel seek the benchmark that has been established by the Ninth Circuit.  *Eichen*, 229 F.3d at 1256 ("We have also established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach.") (citation omitted); *Zynga,* 2016 WL 537946, at *18 ("As to the fifth factor and awards in similar cases, several other courts—including courts in this District—have concluded that a 25 percent award was appropriate in complex securities class actions.") (citation omitted).

Fee awards of 25% or more have been awarded in numerous securities settlements with comparable or even greater settlements, in district courts throughout the Ninth Circuit.  *See*, *e.g.*, *Zynga*, 2016 WL 537946, at *17 (awarding 25% fee of $23 million settlement); *Heritage Bond*, 2005 WL 1594403, at *18 (awarding 33.33% fee of $27,783,000 settlement); *In re Hewlett-Packard Co. Sec. Litig.*, Case No. SACV 11-1404-AG (RNBx), slip op. at 2-3 (C.D. Cal. Sept. 15, 2014) (awarding 25% fee of $57 million settlement) (Ex. 11); *In re PETCO Corp. Sec. Litig.*, No. 05-CV-0823 H (RBB), slip op. at 5-7 (S.D. Cal. Sept. 2, 2008) (awarding 25% fee of $20.25 million settlement) (Ex. 11); *Grasso v. Vitesse Semiconductor Corp.*, No. 06-CV-02639-R, slip op. at 3 (C.D. Cal. Nov. 17, 2008) (awarding 25% fee of approximately $20 million settlement (cash and stock)) (Ex. 11); *In re Sunpower Sec. Litig.*, Case No. CV 09-5473-RS, slip op. at 1 (N.D. Cal. July 3, 2013) (awarding 25% fee of $19.7 million settlement) (Ex. 11); *In re Amazon.com, Inc. Sec. Litig.*, No. C-01-0358-L, slip op. at 2 (W.D. Wash. Nov. 11, 2005) (awarding 25% fee of $27.7 million settlement) (Ex. 11).[4]

An examination of fee decisions in other federal jurisdictions in securities class actions with comparable settlements also shows that an award of 25% would be reasonable.  *See, e.g., Weston v. RCS Capital Corp. et al.,* No. 1:14-CV-10136-GBD, slip op. at 2 (S.D.N.Y. Sept. 28, 2017) (awarding 30% fee of $31 million settlement) (Ex. 11); *In re NII Holdings Inc. Sec. Litig.*, Civ. No. 1:14-cv-00227-LMB-JFA, slip op. at 2 (E.D. Va. Sept. 16, 2016) (awarding 25% fee of

---

[4]      A compendium of unreported slip opinions is submitted as Exhibit 11 to the Joint Declaration.

1   $41.5 million settlement) (Ex. 11); *In re Celestica Inc. Sec. Litig.*, No. 07-cv-00312-GBD, slip

2   op. at 2 (S.D.N.Y. July 28, 2015) (awarding 30% fee of $30 million settlement) (Ex. 11); *In re*

3   *OSG Sec. Litig.,* No. 1:12-cv-07948-SAS, slip op. at 1 (S.D.N.Y. Dec. 2, 2015) (awarding 30%

4   fee of $31.6 million settlement) (Ex. 11).

5        Accordingly, it is respectfully submitted that the attorneys' fee requested here is well

6   within the range of fees awarded by district courts within the Ninth Circuit and in comparable

7   securities settlements nationwide.

8              **6.**      **Reaction of the Class**

9        Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also

10   consider the reaction of the class when deciding whether to award the requested fee.  *See*

11   *Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a

12   factor in determining the proper fee award.").  A total of 222,130 copies of the Settlement Notice

13   and Claim Form have been sent to potential Class Members and the Court-approved Summary

14   Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire*.  *See* Joint

15   Decl. ¶¶92, 145; Ex. 3 ¶¶9, 11.  In addition, the Stipulation and Settlement Notice, among other

16   documents, were posted to a website dedicated to the Action

17   (www.AMDSecuritiesLitigation.com).  *Id.* ¶17.  Although the objection deadline will not run

18   until February 6, 2018, to date no objections to the requested amount of attorneys' fees and

19   expenses have been received.[5]

20              **7.**      **Lodestar Cross-Check**

21        Although an analysis of counsel's lodestar is not required for an award of attorneys' fees

22   in the Ninth Circuit, a cross-check of the fee request with plaintiffs' counsel's lodestar

23   demonstrates its reasonableness.  *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Coordinated*

24   *Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997)

25   (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's

26   reasonableness).

27

28   
---
[5]     Class Counsel will address any future objections to the request for attorneys' fees and expenses in their reply papers, which will be filed with the Court by February 13, 2018.

1    Plaintiffs' counsel's combined "lodestar" is $31,122,958.75 for work through January 12,

2    2018, meaning that the requested fee, if awarded, would represent a significant negative

3    "multiplier" of 0.24, or be just 24% of plaintiffs' counsel's combined lodestar.  *See* Exs. 4-A; 5-

4    A; 6-A; 7-A; and 8.[6]  The Ninth Circuit has recognized that attorneys in common fund cases are

5    frequently awarded a ***multiple*** of their lodestar, rewarding them "for taking the risk of

6    nonpayment by paying them a premium over their normal hourly rates for winning contingency

7    cases."  *Vizcaino,* 290 F.3d at 1051 (citation omitted).  For example, the district court in *Vizcaino*

8    approved a fee that reflected a multiple of 3.65 times counsel's lodestar.  *Id.*  The Ninth Circuit

9    affirmed, holding that the district court correctly considered the range of multiples applied in

10   common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently

11   awarded.  *Id.*; *see also Steiner v. Am. Broad. Co.,* 248 F. App'x. 780, 783 (9th Cir. 2007) ("this

12   multiplier [of 6.85] falls well within the range of multipliers that courts have allowed").

13   Courts have noted that a percentage fee that falls ***below*** counsel's lodestar supports the

14   reasonableness of the award.  *See, e.g., In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138

15   VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("negative multiplier suggest[s] that

16   the requested percentage based fee is fair and reasonable"); *In re Amgen Inc. Sec. Litig.*, Case

17   No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *9 (C.D. Cal. Oct 25, 2016) (same); *In re*

18   *Biolase, Inc. Sec. Litig.*, Case No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318, at *8 (C.D.

19   Cal. Oct. 13, 2015) (same).  Moreover, a negative multiplier, like the negative multiplier here,

20   means that Class Counsel are seeking to be paid "for only a portion of the hours that they

21   expended on the action."  *Amgen*, 2016 WL 10571773, at *9.

22   Plaintiffs' counsel's lodestar represents 62,765.80 hours of work at counsel's 2017 hourly

23   rates.[7]  With respect to these rates, which range from $510 to $1050 per hour for partners, $675

24

25   [6]    Plaintiffs' counsel's lodestar is also reported according to the category of work conducted.  *See* Exs. 4-B; 5-B; 6-B; and 7-B.

26   [7]    The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds.  *See Missouri v. Jenkins*, 491

27   U.S. 274, 283-84 (1989); *Rutti v. Lojack Corp. Inc.*, No. SACV 06-350 DOC JCX, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to

28   current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

1   to $995 per hour for of counsels or senior counsels, and $275 to $800 per hour for other

2   attorneys, Class Counsel submit that they are comparable or less than those used by peer

3   defense-side law firms litigating matters of similar magnitude.  Sample defense firm rates in

4   2017, gathered by Labaton Sucharow from bankruptcy court filings nationwide, often exceed

5   these rates.  *See* Joint Decl. ¶127; Ex. 9.

6        Additional work will also be required of Class Counsel on an ongoing basis, including:

7   correspondence with Class Members; preparation for, and participation in, the final approval

8   hearing; supervising the claims administration process being conducted by the Claims

9   Administrator; moving for leave of the Court to distribute the Net Settlement Fund in accordance

10   with the recommendation of the Claims Administrator; and supervising the distribution of the

11   Net Settlement Fund to Class Members who have submitted valid Claim Forms.  However, Class

12   Counsel will not seek payment for this additional work.

13   **II.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE**
     **NECESSARY TO ACHIEVE THE BENEFIT OBTAINED**
14

15        Plaintiffs' counsel have incurred expenses in the aggregate amount of $2,812,817.52 in

16   prosecuting the Action.  Ex. 8.  These expenses are outlined in counsel's declarations submitted

17   to the Court concurrently herewith.  Exs. 4-C through G; 5-C through G; 6-C through D; and 7-

     C.
18

19        As the *Vincent* court noted, "[a]ttorneys who created a common fund are entitled to the

20   reimbursement of expenses they advanced for the benefit of the class."  *Vincent v. Reser*, No. 11-

21   03572 (CRB), 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (citation omitted).  In assessing

22   whether counsel's expenses are compensable in a common fund case, courts look to whether the

23   particular costs are of the type typically billed by attorneys to paying clients in the marketplace.

     *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of
24

25   attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying

     client.'") (citation omitted).
26

27        Here, the expenses sought by plaintiffs' counsel are of the type that are charged to hourly

28   paying clients and, therefore, should be paid out of the common fund.  The main expense here

Case No. 4:14-cv-00226-YGR (JSC)                                                   17
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

1  relates to work performed by Class Representatives' experts ($1,680,536.26 or approximately

2  60% of total expenses).  As discussed in the Joint Declaration, in addition to the expert report

3  prepared and utilized at the class certification stage (*see* Joint Decl. ¶¶27-29), Class

4  Representatives employed experts to opine and consult in areas concerning materiality, market

5  efficiency, causation, damages, forensic and technical accounting, as well as microprocessor chip

6  manufacturing, supply, and demand (*id*. ¶¶48-51, 53, 134).  Class Counsel received crucial

7  advice and assistance from these experts throughout the course of the Action, from drafting the

8  CAC through discovery, the prolonged mediation process, and summary judgment.  Class

9  Counsel utilized these experts in order to efficiently frame the issues, gather relevant evidence,

10  make a realistic assessment of provable damages, and structure a resolution of the Action.  *Id* .

11    As explained above and in the Joint Declaration, a vast amount of fact discovery was

12  taken in the case, in addition to expert discovery.  Class Counsel seek $323,093.85 (11% of total

13  expenses) relating to litigation support services, such as the costs associated with electronic

14  discovery and adding hyperlinks to court filings.  Expenses totaling $133,871 (5% of total

15  expenses) were incurred in connection with the 34 depositions taken in the case, and in retaining

16  independent counsel for the confidential witnesses in the case ($56,990.09).  *Id*. ¶135.

17    Class Counsel was also required to work late hours and travel in connection with court

18  appearances, witness meetings, depositions, two mediations, and settlement-related hearings

19  ($248,431 or 9% of aggregate expenses).  *Id*. ¶136.  Such expenses are reimbursable.  *See In re*

20  *Immune Response Sec. Litig*, 497 F. Supp. 2d 1166, 1177(S.D. Cal. 2007) (reimbursement for

21  travel expenses . . . is within the broad discretion of the Court).

22    Courts also routinely approve expenses associated with mediation (here $35,147.23 for

23  Class Counsel's share).  *See, e.g.*, *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-cv-02354-SKO,

24  2012 WL 5941801, at *22 (E.D. Cal. Nov. 27, 2012) (noting that mediation fees are among the

25  "types of fees" that are "routinely reimbursed.  The work done by the mediators was crucial to

26  the resolution of the Action.  *See* Joint Decl. ¶138.

27    The expenses here also include the costs of factual and legal research ($73,218 or 3% of

28  total expenses).  *Id*. ¶137.  These are the charges for primarily computerized factual and legal

CASE NO. 4:14-CV-00226-YGR (JSC)
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

18

1    research services such as LEXIS/Nexis and Westlaw.  It is standard practice for attorneys to use

2    LEXIS/Nexis and Westlaw to assist them in researching legal and factual issues and

3    reimbursement is proper.  *See Immune Response*, 497 F. Supp. 2d at 1177.

4         In sum, plaintiffs' counsel's expenses, in an aggregate amount of $2,812,817.52, were

5    reasonable and necessary to the prosecution of the Action and should be approved.[8]

6    **III.    CLASS REPRESENTATIVES' REQUEST FOR PSLRA REIMBURSEMENT**

7         The PSLRA, 15 U.S.C. § 78u-4(a)(4), limits a class representative's recovery to an

8    amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to

9    all other members of the class," but also provides that "[n]othing in this paragraph shall be

10   construed to limit the award of reasonable costs and expenses (including lost wages) directly

11   relating to the representation of the class to any representative party serving on behalf of a class."

12   Here, as detailed in their respective declarations, attached as Exhibits 1 and 2 to the Joint

13   Declaration, Class Representatives are seeking the aggregate amount of $23,223.25 in expenses

14   related to their active participation in the Action.[9]  Each Class Representative assisted with

15   discovery efforts, produced documents, had a representative be deposed, and ATRS attended

16   both mediation sessions.

17        Many cases have approved reasonable payments to compensate class representatives for

18   the time, effort, and expenses devoted by them on behalf of a class.  *See, e.g.*, *Hewlett-Packard*,

19   Case No. SACV 11-1404-AG (RNBx), slip op. at 2-3 (awarding costs and expenses to four class

20   representatives in the amount of $5,654.61, $2,922.24; $4,970.00; $6,570.00, respectively) (Ex.

21   11); *In re Broadcom Corp. Class Action Litig.*, No. CV-06-5036-R (CWx) (C.D. Cal. Dec. 4,

22   2012), slip op. at 2 (awarding costs and expenses to class representative in the amount of

23   $21,087 (Ex. 11); *McPhail*, 2009 WL 839841, at *8 (approving awards to six class

24   _____

25   [8]    At the October 24, 2017 preliminary approval hearing, the Court indicated that it would
     like additional information about the Claims Administrator's estimate of its fees and costs in
26   connection with the Settlement.  That information is provided in Exhibit 3 (¶¶22-24) submitted
     herewith.  Such fees and costs are payable from the Settlement Fund pursuant to ¶¶19-20 of the
     Stipulation.
27   [9]    This total is broken down as follows: (i) ATRS - $8,348.25 based on 104 hours dedicated
     to the case at rates ranging from $41.75 per hour to $108.91 per hour; and (ii) KBC - $14,875
28   based on 106.25 hours dedicated to the case at $140 per hour.

1    representatives ranging from $923.20 to $10,422.30 and noting that "the requested

2    reimbursement is consistent with payments in similar securities cases").  As explained in one

3    decision, courts "award such costs and expenses to both reimburse named plaintiffs for expenses

4    incurred through their involvement with the action and lost wages, as well as provide an

5    incentive for such plaintiffs to remain involved in the litigation and incur such expenses in the

6    first place."  *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y.

7    Oct. 24, 2005).

8         Class Counsel and the Class Representatives respectfully submit that the amounts sought

9    here are eminently reasonable based on the requesting parties' active involvement in the Action

10   from inception to settlement.  *See* Exs. 1 and 2.

11                                   **CONCLUSION**

12        For all the foregoing reasons, Class Counsel respectfully request that the Court award

13   attorneys' fees of 25% of the Settlement Fund, litigation expenses in the amount of

14   $2,812,817.52, and PSLRA reimbursement to KBC in the amount of $14,875 and ATRS in the

15   amount of $8,348.25.

16   Dated: January 23, 2018                    Respectfully submitted,

17

18                                              *s/ Jonathan Gardner*
                                                **LABATON SUCHAROW LLP**
19                                              Jonathan Gardner (*pro hac vice*)
                                                Carol C. Villegas (*pro hac vice*)
20                                              Alec T. Coquin (*pro hac vice*)
                                                140 Broadway
21                                              New York, NY  10005
                                                Telephone:  (212) 907-0700
22                                              Facsimile:   (212) 818-0477

23                                              **MOTLEY RICE LLC**
                                                James M. Hughes (*pro hac vice*)
24                                              William S. Norton (*pro hac vice*)
                                                Max N. Gruetzmacher (*pro hac vice*)
25                                              Michael J. Pendell (*pro hac vice*)
                                                28 Bridgeside Blvd.
26                                              Mt. Pleasant, SC  29464
                                                Telephone:  (843) 216-9000
27                                              Facsimile:   (843) 216-9450

28

*Co-Lead Counsel for Class Representatives and the Class*

**LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
Katherine C. Lubin (State Bar No. 259826)
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:   (415) 956-1008

*Liaison Counsel*

CASE NO. 4:14-CV-00226-YGR (JSC)
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

21

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on January 23, 2018, I authorized the electronic filing of the

3   foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4   such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I

5   hereby certify that I have mailed the foregoing document or paper via the United States Postal

6   Service to the non-CM/ECF participants indicated on the attached Service List.

7      I certify under penalty of perjury under the laws of the United States of America that the

8   foregoing is true and correct.

9      Executed on January 23, 2018

10                                    /s/ Jonathan Gardner
                                     JONATHAN GARDNER
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Mailing Information for a Case 4:14-cv-00226-YGR**

*Hatamian et al. v. Advanced Micro Devices, Inc. et al.*

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Melanie Marilyn Blunschi**
  melanie.blunschi@lw.com,christina.teeter@lw.com,#sflitigationservices@lw.com,
  sf-litigation-services-4917@ecf.pacerpro.com,melanie-blunschi-5434@ecf.pacerpro.com

- **Alec T. Coquin**
  acoquin@labaton.com,kgutierrez@labaton.com,electroniccasefiling@labaton.com

- **Jonathan Gardner**
  jgardner@labaton.com,kgutierrez@labaton.com,jjohnson@labaton.com,
  cvillegas@labaton.com,tdubbs@labaton.com,ryamada@labaton.com,cboria@labaton.
  com,acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,
  agreenbaum@labaton.com

- **Patrick Edward Gibbs**
  pgibbs@cooley.com,bgiovannoni@cooley.com

- **Michael M. Goldberg**
  michael@goldberglawpc.com

- **Max Nikolaus Gruetzmacher**
  mgruetzmacher@motleyrice.com,wtinkler@motleyrice.com

- **Jason C. Hegt**
  jason.hegt@lw.com,jason-hegt-2094@ecf.pacerpro.com

- **James Michael Hughes**
  jhughes@motleyrice.com,mgruetzmacher@motleyrice.com,erichards@motleyrice.com,
  kweil@motleyrice.com

- **Willem F. Jonckheer**
  wjonckheer@schubertlawfirm.com,kmessinger@schubertlawfirm.com,
  epawson@schubertlawfirm.com,paralegal@schubertlawfirm.com

- **Joy Ann Kruse**
  jakruse@lchb.com,kbenson@lchb.com

- **Nicole Catherine Lavallee**
  nlavallee@bermantabacco.com,ysoboleva@bermantabacco.com

- **Sharon Maine Lee**
  slee@lchb.com

- **Katherine Collinge Lubin**
  klubin@lchb.com,rtexier@lchb.com

- **Meredith B. Miller**
  mbmiller@motleyrice.com

- **William H. Narwold**
  bnarwold@motleyrice.com,mjasinski@motleyrice.com,kweil@motleyrice.com,
  ajanelle@motleyrice.com

- **William S. Norton**
  bnorton@motleyrice.com

- **Michael J. Pendell**
  mpendell@motleyrice.com

- **Matthew Rawlinson**
  matt.rawlinson@lw.com,zoila.aurora@lw.com,
  matthew-rawlinson3894@ecf.pacerpro.com,jenny.duckworth@lw.com,
  #SVLitigationServices@lw.com

- **Paul J. Scarlato**
  pscarlato@labaton.com

- **Carol C. Villegas**
  cvillegas@labaton.com,kgutierrez@labaton.com,thoffman@labaton.com,
  jchristie@labaton.com,mpenrhyn@labaton.com,acoquin@labaton.com,
  fmalonzo@labaton.com,acarpio@labaton.com,electroniccasefiling@labaton.com

- **Avraham Noam Wagner**
  avi@thewagnerfirm.com

- **Kara M. Wolke**
  kwolke@glancylaw.com

- **Roger W. Yamada**
  ryamada@labaton.com,kgutierrez@labaton.com,fmalonzo@labaton.com,
  acarpio@labaton.com,electroniccasefiling@labaton.com

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing).

   (No manual recipients)